**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DVL, INC. AND DVL KEARNY HOLDINGS, LLC,** | |
| **Plaintiffs,** | |
| | **No. _____** |
| **vs.** | |
| **CONGOLEUM CORPORATION** | |
| **Defendant.** | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, DVL, Inc. ("DVLI") and DVL Kearny Holdings, LLC ("DVLK"), by and through their attorneys, Zarwin Baum DeVito Kaplan Schaer, Toddy P.C., bring this Complaint against defendant, Congoleum Corporation, and state as follows:

### Jurisdiction and Venue

1.     This Court has jurisdiction over this matter pursuant to 42 U.S. Code § 9613(b).

2.     This Court is the appropriate venue pursuant to 42 U.S. Code § 9613(b) as the release and damages alleged herein occurred in New Jersey, and the Defendant has its principal office in New Jersey.

3.     Contemporaneous with the filing of this action, Plaintiffs are providing a copy of the Complaint to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency, pursuant to 42 U.S. Code § 9613(l).

### Introduction

4.     This is an action by DVLI and DVLK (together, "DVL") to recover damages suffered as a result of contamination attributable to the processes Congoleum Corporation and its

predecessors (collectively, "Congoleum") employed over decades of manufacturing flooring and war products in multiple buildings throughout a property (the "Property") now owned by DVLI's subsidiary, DVLK.

5.    Congoleum's contamination of the environment was prolonged and widespread, resulting in the discharge of polychlorinated biphenyls ("PCBs") and other hazardous substances into the air, soils and groundwater in and around the Property.

6.    DVL spent $19,348,981.52 to remediate Congoleum's contamination of the air, soils and groundwater in and around the Property and seeks to recover that amount from Congoleum by this action.

## The Parties

7.    DVLI and DVLK are businesses incorporated in the State of Delaware and authorized to do business in the State of New Jersey, with business addresses of 70 E 55th St., New York, NY 10022.

8.    Upon information and belief, Congoleum is a corporation formed in the State of Delaware with a principal place of business of 3500 Quakerbridge Road, P.O. Box 3127, Mercerville, NJ 08619-0127.

## Property Ownership and Operations

9.    DVLK owns the Property, located at160-194 Passaic Avenue in Kearny, NJ and currently known as Block 15, Lot 7.01.

10.    Congoleum built, owned and operated the Property from the late 1880s through at least 1959.

11.    During World War II, Congoleum manufactured products at the Property for the U.S. military; at other times, it manufactured products for commercial sale.

12.     Congoleum also maintained a research and development laboratory at the Property in which it tested materials and products for potential future use in manufacturing and for potential sale.

13.     Congoleum manufactured a variety of commercial products at the Property, including linoleum, straight line (plain, printed and inlaid) linoleum flooring, vinyl asbestos tile, battleship linoleum, linoleum/vinyl wall coverings, vinyl desk tops, vinyl operating room flooring, pastes, waxes, and adhesives.

14.     Congoleum also manufactured adhesives and waxes at the Property until about the mid to late 1960s.

15.     Products manufactured by Congoleum at the Property for military use included tent cloth, aerial torpedo parts, grenades, mildew proof sandbags, battleship linoleum, camouflage netting, and synthetic leather.

16.     Vinyl resins, plasticizers, stabilizers, lime, stone, pigments, oils, and fillers were among the raw materials used by Congoleum at the Property.

17.     Congoleum used contact cooling water to cool finished product at the Property. The water may have contained trace amounts of plasticizer, dirt and contaminants as a result of being washed over the finished flooring product.

18.     During the years of Congoleum's operations at the Property, there were floor drains and open trenches in the buildings, which connected to the sanitary sewer system.

19.     During the years of Congoleum's operations at the Property, there were floor drains and an outdoor drainage trench, which flowed into sumps.

20.     Contact cooling water from spraying of finished product was collected in open trenches in the floor of some buildings at the Property, and was discharged to the sewer system and/or Passaic River in the 1940s and 1950s.

21.     Some of the materials and products Congoleum used and manufactured at the Property contained PCBs.

22.     One of the patents held by Congoleum, issued in 1947 and entitled "Fire-Resistant Linoleum Product," called for the use of PCBs in the manufacturing process.

23.     Other patents held by Congoleum called for the use of PCBs as "modifying agents" in adhesives.

24.     Congoleum used chlorinated solvents including tetrachloroethene ("perchloroethene" or "PCE") and trichloroethene ("TCE") at the Property, including for cleaning machinery and other elements of the improvements at the Property.

25.     Congoleum also used poly-aromatic hydrocarbons ("PAH") and materials containing PAHs at the Property.

### Congoleum's Contamination of the Property

26.     During its operations at the Property, Congoleum dispersed dust laden with PCBs and PAHs into the air and soil at the Property.

27.     The very type of PCBs and other hazardous substances identified in Congoleum's patents were discovered in soil which Congoleum later covered with the concrete floor slab of a building Congoleum constructed between 1945 and 1946 ("Building 114").

28.     The very type of PCBs and other hazardous substances identified in Congoleum's patents were discovered on the roof of Building 114, where they had settled after being emitted into the ambient air.

29.     Surface soils south of Building 114 were found to contain PAHs from Congoleum's operations at the Property.

30.     During its operations, Congoleum spilled hazardous substances including PCBs, PAHs, and chlorinated solvents such as PCE and TCE onto the floors and walls of buildings at the Property.

31.     In some buildings, Congoleum covered up spilled PCB-containing material, rather than remove it. The very type of PCBs and other hazardous substances identified in Congoleum's patents were found in tarry material sandwiched between a double layer floor slab in another building Congoleum restored after fire damage, also in or around 1945 ("Building 31").

32.     In some buildings, the spilled PCB-containing material remained uncovered and was later abraded by ongoing activities, repeatedly causing PCB-laden dust to be emitted into the ambient air and to settle in soils at the Property and at other properties.

33.     During and after Congoleum's ownership and operation of the Property, hazardous substances, including PCBs, PAHs, PCE and TCE, collected in floor drains, in an outdoor drainage trench surrounding Building 114, in sumps, and in other collection features, and from these areas they leached, leaked, flowed or were otherwise released into the soil and groundwater at the Property.

34.     Materials containing hazardous substances resulting from Congoleum's operations at the Property, including PCBs, metals, and PAHs, were found at the bottom of reservoirs at the Property, including immersed within groundwater.

35.     Chlorinated solvents from Congoleum's operations, including PCE, TCE, and their breakdown products, were discovered in groundwater throughout the Property.

5

36.     The Property-wide distribution of the hazardous substances clearly indicates that the responsible party is one that made use of the entire Property.

37.     The only entity to have used the entire Property is Congoleum.

38.     During and after Congoleum's ownership and operation of the Property, hazardous substances, including PCBs, PAHs, PCE and TCE, were emitted into the atmosphere and spread into the air, soil and groundwater at the Property and at other properties.

39.     Congoleum discharged, caused or contributed to the discharge of, and/or is otherwise responsible for, the hazardous substances at the Property, including PCBs, PAHs, PCE, and TCE.

**Congoleum's Knowledge and Failure to Warn or Clean Up the Contamination**

40.     After operating and contaminating the Property, Congoleum later conveyed it to an unsuspecting buyer which, approximately two years later, conveyed the Property to DVL's predecessor, which was equally unsuspecting.

41.     The toxic effects of PCBs are unquestionable and significant. For that reason, they have been banned from sale in the United States for decades.

42.     The toxic effects of PCBs were recognized as early as 1936, when the Senior Surgeon with the United States Public Health Service, Dr. Lewis Schwartz, wrote a paper warning about the dangers of PCBs.  And at about the same time, major manufacturers realized the dangers as well.

43.     Congoleum knew, or should have known, of the risks of PCBs by the time it resumed its post-war production at the Property, and most certainly by the time it sold the Property in around 1960.

6

44.     Yet, neither when it sold the Property, nor later, did Congoleum reveal to any of the subsequent owners that Congoleum had left PCBs and other contamination at the Property.

45.     At no time after selling the Property did Congoleum make any effort to investigate or clean up the contamination for which it was responsible at the Property.

### DVL's Discovery of the Contamination, and DVL's Damages

46.     It wasn't until years later, during the course of redevelopment in 2015, that DVL encountered the PCBs and other hazardous substances at the Property and had to remediate them at a monumental cost.

47.     In order to preserve its investment in the Property, which otherwise was greatly diminished in value due to the hazardous substances, DVL was required to expend substantial sums to address the hazardous substances for which Congoleum was responsible. Together, DVL's damages amount to over $19 million.

48.     DVL's costs include, but are not limited to, investigating, monitoring, and removing the hazardous substances at the Property.

49.     As the entity responsible for the contamination and later failing to warn of it, Congoleum is liable to DVL for these damages.

50.     DVL has suffered consequential damages due to contamination by hazardous substances, including PCBs, PAHs, PCE, and TCE.

### COUNT I – CERCLA

51.     DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

52.     Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et. seq*. ("CERCLA"), provides that any person who at the

7

time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of shall be strictly liable for costs of response incurred by any other person consistent with the national contingency plan ("NCP"). 42 U.S.C. § 9607(a).

53.     PCBs, PAHs, PCE, TCE and their breakdown products, and the other hazardous substances described herein, are "hazardous substances" as defined under CERCLA Section 101, 42 U.S.C. § 9601.

54.     Congoleum and DVL are "persons" as defined at CERCLA Section 101, 42 U.S.C. § 9601.

55.     The Property is a "facility" as defined at CERCLA Section 101, 42 U.S.C. § 9601.

56.     Congoleum is a past "owner or operator" of the Property, as defined at CERCLA Section 101, 42 U.S.C. § 9601.

57.     Congoleum "disposed of" and "released" the hazardous substances to the environment at the Property and/or owned or operated the Property during the "disposal" and "release" of hazardous substances, as those terms are defined at CERCLA Section 101, 42 U.S.C. § 9601.

58.     The hazardous substances described herein have resulted in the "release" of hazardous substance into the environment and the threat of "release" of hazardous substances into the environment, as that term is defined at CERCLA Section 101, 42 U.S.C. § 9601.

59.     DVL has performed monitoring, evaluation, and other "responses" due to the release or threatened release of hazardous substances and petroleum at the Property, as defined at CERCLA Section 101, 42 U.S.C. § 9601.

60.     The monitoring, assessment and response costs DVL incurred as a result of Congoleum's release of hazardous substances were reasonable and necessary to comply with CERCLA, and were consistent with the NCP.

61.     Congoleum is a person responsible for the releases of hazardous substances to the environment at the Property, pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

62.     Congoleum is strictly liable to DVL for its monitoring, assessment and response costs incurred with respect to the hazardous substances at the Property, pursuant to CERCLA Section 107, 42 U.S.C. § 9607.

**WHEREFORE**, plaintiff, DVL, demands judgment against Congoleum for the following relief:

a)      Reimbursement of all costs, fees and expenses associated with the investigation, monitoring, evaluation, response, and cleanup of hazardous substances at the Property;

b)      Reimbursement of all litigation costs and fees, including reasonable attorneys' fees;

c)      Prejudgment interest;

d)      an Order declaring that Congoleum is liable for all past, present, and future costs, fees, and expenses associated with the continued evaluation, monitoring, and cleanup of hazardous substances as the Property, including interest, and for other damages resulting from such contamination; and

e)      Such other relief as the Court may deem just and appropriate.

## COUNT II – NEW JERSEY SPILL ACT

63.     DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

64.     PCBs, PAHs, PCE, TCE and their breakdown products, and the other hazardous substances found at the Property as alleged herein, are hazardous substances as defined at Section 58:10-23.11b of the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J. Stat. § 58:10-23.11b.

65.     The Spill Act provide that:

Except as provided in section 2 of P.L.2005, c.43 (C.58:10-23.11g12), any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.

N.J.S.A. 58:10-23.11g(c)(1).

66.     A "discharge," as defined by the Spill Act, is "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State." N.J.S.A. § 58:10-23.11b.

67.     Congoleum's acts and/or omissions have resulted in the releasing, spilling, leaking, pumping, pouring, emitting, emptying, and/or dumping of hazardous substances into the waters and onto the lands of the State.

68.     Congoleum "discharged" hazardous substances at the Property, as that term is defined at Section 58:10-23.11b of the Spill Act, N.J.S.A. § 58:10-23.11b.

69.     Congoleum is a person "in any way responsible" for the PCB, PAHs, PCE, TCE and other hazardous substances at the Property.

10

70.     As a result of the hazardous substances at the Property which Congoleum discharged and for which it is responsible, DVL has incurred "clean up and removal" costs, as those terms are defined at Section 58:10-23.11b of the Spill Act, § 58:10-23.11b, which includes but is not limited to "reasonable measures to prevent or mitigate damage to the public health, safety, or welfare."

71.     The cleanup and removal costs DVL incurred as a result of Congoleum's release of hazardous substances were reasonable and necessary to comply with the Spill Act.

72.     As a result of Congoleum's discharge of hazardous substances to the environment at the Property, DVL has suffered additional and ongoing damages.

73.     Congoleum is liable to DVL for its cleanup costs and other damages pursuant to N.J.S.A. § 58:10-23.11g(c).

74.     The Spill Act provides that:

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.

N.J.S.A. § 58:10-23.11f(a)(2)(a).

75.     The investigation, monitoring, assessment and cleanup costs DVL incurred as a result release of hazardous substances which Congoleum discharged and for which it is responsible were reasonable and necessary.

76.     Congoleum is liable to DVL for its cleanup and removal costs and other damages pursuant to N.J.S.A. § 58:10-23.11f(a)(2)(a).

*WHEREFORE*, plaintiff, DVL, demands judgment against Congoleum for the following

relief:

a)      Reimbursement of all costs, fees and expenses associated with the investigation, monitoring, evaluation, and cleanup and removal of hazardous substances at the Property;

b)      Reimbursement of all litigation costs and fees, including reasonable attorneys fees;

c)      Prejudgment interest;

d)      an Order declaring that Congoleum is liable for all past, present, and future costs, fees, and expenses associated with the continued evaluation, monitoring, and cleanup of hazardous substances as the Property, including interest, and for other damages resulting from such contamination; and

e)      Such other relief as the Court may deem just and appropriate.

## COUNT III – PUBLIC NUISANCE

77.     DVL repeats and incorporates the above paragraphs by reference as fully as though the same were set forth herein at length.

78.     The public has a right to uncontaminated air, soil and groundwater.

79.     The discharge and presence of hazardous substances at the Property interferes with the public's right to uncontaminated air, soil and groundwater.

80.     As a result of the discharge and presence of hazardous substances, DVL has suffered, and is suffering, special injury by being deprived of the use and enjoyment of soil and groundwater beneath the Property, by incurring costs to assess and respond to the hazardous substances, and by suffering a diminished value of the Property.

81.     Congoleum is liable to DVL for its damages resulting from the discharge and presence of hazardous substances at the Property.

*WHEREFORE*, plaintiff, DVL, demands judgment against Congoleum for the following relief:

a)     Reimbursement of all costs, fees and expenses associated with the investigation, monitoring, evaluation, and cleanup of hazardous substances at the Property;

b)     Reimbursement of all litigation costs and fees, including reasonable attorneys fees;

c)     Prejudgment interest;

d)     an Order declaring that Congoleum is liable for all past, present, and future costs, fees, and expenses associated with the continued evaluation, monitoring, and cleanup of hazardous substances as the Property, including interest, and for other damages resulting from such contamination; and

e)     Such other relief as the Court may deem just and appropriate.

## COUNT IV - NEGLIGENCE

82.     DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

83.     Congoleum had a duty to act with reasonable care with respect to the handling, use and disposal of PCBs, PAHs, PCE, TCE, and other hazardous materials at the Property.

84.     Congoleum failed to act with reasonable care with respect to the handling, use and disposal of PCBs, PAHs, PCE, TCE, and other hazardous materials at the Property.

85.     Congoleum's handling, use and disposal of hazardous substances at the Property created a dangerous condition at the Property.

86.     Congoleum failed to clean up the dangerous condition it created at the Property.

87.     Congoleum knew, or should have known, of the toxic effects of PCBs, PAHs, PCE, TCE, and other hazardous materials which it handled, used, and disposed at the Property, and of the resultant dangerous condition for which Congoleum was responsible.

88.     Congoleum had a duty to warn subsequent owners and operators of the Property, including DVL, concerning the past handling, use, and disposal of hazardous substances and the resultant dangerous conditions existing at the Property.

89.     Congoleum failed to warn subsequent owners and operators of the Property, including DVL, concerning the hazardous substances and the resultant dangerous conditions existing at the Property.

90.     As a direct and proximate result of Congoleum's negligence, DVL has suffered and continues to suffer damages.

91.     The above actions by Congoleum constitute negligence.

*WHEREFORE*, plaintiff, DVL, demands judgment against Congoleum for the following relief:

a)     Reimbursement of all costs, fees and expenses associated with the investigation, monitoring, evaluation, and cleanup of hazardous substances at the Property;

b)     Reimbursement of all litigation costs and fees, including reasonable attorneys fees;

c)     Prejudgment interest;

d)     an Order declaring that Congoleum is liable for all past, present, and future costs, fees, and expenses associated with the continued evaluation, monitoring, and

14

cleanup of hazardous substances as the Property, including interest, and for other

damages resulting from such contamination; and

e)    Such other relief as the Court may deem just and appropriate.

## COUNT V – STRICT LIABILITY/ABNORMALLY DANGEROUS ACTIVITY

92.    DVL repeats and incorporates the above paragraphs by reference as if fully set

forth herein.

93.    The above actions by Congoleum constitute abnormally dangerous activity.

94.    As a direct and proximate result of Congoleum's abnormally dangerous activity,

DVL has suffered and continues to suffer damages.

*WHEREFORE*, plaintiff, DVL, demands judgment against Congoleum for the following

relief:

a)    Reimbursement of all costs, fees and expenses associated with the monitoring,

evaluation, and cleanup of hazardous substances at the Property;

b)    Reimbursement of all litigation costs and fees, including reasonable attorneys

fees;

c)    Prejudgment interest;

d)    an Order declaring that Congoleum is liable for all past, present, and future costs,

fees, and expenses associated with the continued evaluation, monitoring, and

cleanup of hazardous substances as the Property, including interest, and for other

damages resulting from such contamination; and

e)    Such other relief as the Court may deem just and appropriate.

## COUNT VI – UNJUST ENRICHMENT

95.     DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

96.     Congoleum has been unjustly enriched in that it enjoyed profits in its sale of the Property, while neglecting to incur the necessary costs to clean up hazardous substances for which it was responsible, leaving those hazardous substances and costs to unsuspecting subsequent owners.

97.     DVL is entitled to recover from Congoleum DVL's costs for all past, present and future damages resulting from the release and discharge of hazardous substances at the Property.

**WHEREFORE**, plaintiff, DVL, demands judgment against Congoleum for the following relief:

a)      Reimbursement of all costs, fees and expenses associated with the investigation, monitoring, evaluation, and cleanup of hazardous substances at the Property;

b)      Reimbursement of all litigation costs and fees, including reasonable attorneys fees;

c)      Prejudgment interest;

d)      an Order declaring that Congoleum is liable for all past, present, and future costs, fees, and expenses associated with the continued evaluation, monitoring, and cleanup of hazardous substances as the Property, including interest, and for other damages resulting from such contamination; and

e)      Such other relief as the Court may deem just and appropriate.

Respectfully submitted,

**ZARWIN BAUM DeVITO KAPLAN
SCHAER, TODDY P.C.**

By:     /s/ Paul M. Schmidt
Paul M. Schmidt, Esquire
Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA  19103
Phone: (215) 569-2800
Fax: (215) 569-1606
***Attorneys for Plaintiffs, DVL, Inc. and DVL
Kearny Holdings, Inc.***

Dated: June 12, 2017

## JURY DEMAND

DVL, Inc. and DVL Kearny Holdings, LLC hereby demand that the trial of all issues be

heard by a Judge sitting with jury in accordance with the Federal Rules of Civil Procedure.

Respectfully,

**ZARWIN BAUM DeVITO KAPLAN
SCHAER, TODDY P.C.**


By:   /s/ Paul M. Schmidt
       Paul M. Schmidt, Esquire
       Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.
       1818 Market Street, 13th Floor
       Philadelphia, PA  19103
       Phone: (215) 569-2800
       Fax: (215) 569-1606
       ***Attorneys for Plaintiffs, DVL, Inc. and DVL
       Kearny Holdings, LLC***

Dated: June 12, 2017

## <u>TRIAL ATTORNEY DESIGNATION</u>

Paul M. Schmidt, Esquire, is hereby designated as trial attorney for Plaintiff.

**ZARWIN BAUM DeVITO KAPLAN
SCHAER, TODDY P.C.**

By:     /s/ Paul M. Schmidt
Paul M. Schmidt, Esquire
Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 19103
Phone: (215) 569-2800
Fax: (215) 569-1606
***Attorneys for Plaintiffs, DVL, Inc. and DVL
Kearny Holdings, Inc.***

Dated: June 12, 2017