**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| DVL, INC. and DVL KEARNY HOLDINGS, LLC, | : : : | Civil Action No. 17-4261 (KM) (JBC) |
| Plaintiffs, | : : | |
| v. | : : | |
| CONGOLEUM CORPORATION and BATH IRON WORKS CORPORATION, | : : : | **Motion Returnable:  February 5, 2018** |
| Defendants. | : : : | **ORAL ARGUMENT REQUESTED** |

---

**BATH IRON WORKS CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT AND DEFENDANT CONGOLEUM CORPORATION'S CROSS-CLAIM**

---

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
Morristown, NJ 07962-1991
(973) 292-1700

Catherine Steege
John VanDeventer
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Defendant
Bath Iron Works Corporation*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ................................................................................................3

    A.  The Parties And Their Relationship To The Kearny Property. ...............................4

    B.  Congoleum's Chapter 11 Filing And Its Confirmation Order. ............................5

    C.  Congoleum's Plan Becomes Effective And As A Result, The Century Settlement Is Consummated And BIW Is Stripped Of Its Interests In The Century Insurance Policies.........................................................................................................9

    D.  Plaintiffs' Complaint, Amended Complaint And The Cross-Claim. ..................9

ARGUMENT .....................................................................................................................10

I.   The Court Should Dismiss Congoleum's Cross-Claim. ........................................10

    A.  Judicial Estoppel Bars Congoleum's Cross-Claim Against BIW.....................10

    B.  *Res Judicata* Bars Congoleum's Cross-Claim Against BIW............................14

    C.  Equitable Estoppel Bars Congoleum's Cross-Claim Against BIW..................15

II.  The Court Should Dismiss Plaintiffs' Amended Complaint As To BIW. .............16

CONCLUSION..................................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Butler v. Vill. of Round Lake Police Dept.*,
    585 F.3d 1020 (7th Cir. 2009) ..........................................................................2, 10, 14

*Delgrosso v. Spang & Co.*,
    903 F.2d 234 (3d Cir. 1990).....................................................................................11, 13

*Gecker v. Flynn (In re Emerald Casino, Inc.)*,
    459 B.R. 298 (Bankr. N.D. Ill. 2011) ..........................................................1, 2, 10

*In re G-I Holdings, Inc.*,
    514 B.R. 720 (Bankr. D.N.J. 2014), *subsequently aff'd sub nom.*, *N.Y. City
    Hous. Auth. v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 654 F. App'x 571
    (3d Cir. 2016)..........................................................................................................16

*In re Midstate Mortg. Inv'rs, Inc.*,
    105 F. App'x 420 (3d Cir. 2004) ..............................................................................17

*In re Szostek*,
    886 F.2d 1405 (3d Cir. 1989)....................................................................................14

*In re Vencor, Inc.*,
    284 B.R. 79 (Bankr. D. Del. 2002) ..........................................................................17

*Metal Foundations Acquisition, LLC v. Reinert (In re Reinert)*,
    597 F. App'x 139 (3d Cir. 2015) ..............................................................................15

*Murray v. Siberstein*,
    882 F.2d 61 (3d Cir. 1989).......................................................................................11, 13

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..................................................................................................1, 11

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
    848 F.2d 414 (3d Cir. 1988).....................................................................................15, 16

*Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*,
    989 F.2d 570 (1st Cir. 1993).....................................................................................10, 13

*Rosen v. Hotel & Rest. Emp. & Bartenders Union of Phila., Bucks, Montgomery
    & Del. Ctys., Pa.*,
    637 F.2d 592 (3d Cir. 1981), *cert. denied*, 454 U.S. 898 (1981)...................................3, 15, 16

ii

*Sands v. McCormick*,
    502 F.3d 263 (3d Cir. 2007)...........................................................................4

*Scarano v. Cent. R. Co. of N.J.*,
    203 F.2d 510 (3d Cir. 1953)...................................................................10, 13

*Stoll v. Gottlieb*,
    305 U.S. 165 (1938)...............................................................................3, 14

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)...............................................................................3, 14

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010)...............................................................................3, 14

*Wheeling-Pittsburgh Steel Corp. v. McCune*,
    836 F.2d 153 (3d Cir. 1987)..................................................................3, 15

STATUTES

11 U.S.C. § 1141(a) .................................................................................3, 14

OTHER AUTHORITIES

8 KING, COLLIER ON BANKRUPTCY ¶ 1141.02 (16th ed. 2017)......................................17

Bath Iron Works Corporation ("**BIW**") respectfully submits its Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiffs' Amended Complaint and Congoleum Corporation's Cross-Claim (the "**Motion**").

## INTRODUCTION

The doctrine of judicial estoppel exists "to protect the integrity of the judicial process" and prevent parties from "playing 'fast and loose' with the courts." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). In its Cross-Claim (Dkt. No. 19 at 28-39), Congoleum Corporation ("**Congoleum**") has engaged in exactly the "sort of argumentative about-face" that justifies dismissal of its Cross-Claim under the doctrine of judicial estoppel. *See Gecker v. Flynn (In re Emerald Casino, Inc.)*, 459 B.R. 298, 304 (Bankr. N.D. Ill. 2011).

Today, Congoleum alleges that any liabilities associated with any alleged environmental contamination at the property commonly known as 160-194 Passaic Avenue, Kearny, New Jersey (the "**Kearny Property**") "were wholly assumed by BIW following a series of corporate transactions" that it alleges took place in *1986*. (Dkt. No. 19 at 29 and 31-32, ¶¶ 10, 25-29.) But in *2006*, twenty years *after* this alleged assumption of liabilities, Congoleum's Chief Financial Officer testified under oath that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business," including any of those related to the Kearny Property. (*In re Congoleum Corp.*, Bankr. Case No. 03-51524(KCF) ("**Congoleum Bankr. Dkt.**") No. 4439 at Ex. A, § I.J (iv) (emphasis added) (App. Ex. 1).)[1] Based on this testimony, in 2010 this Court entered an order confirming Congoleum's plan of reorganization, explicitly finding *that BIW was not responsible for any liabilities of the flooring operations at the Kearny Property*. (*In re*

---

[1] For the Court's convenience, BIW has filed an Appendix containing the relevant filings from the Congoleum District Court and Bankruptcy Court Dockets.

*Congoleum Corp.*, Case No. 09-4371(JAP) ("**Congoleum Dist. Dkt**.") No. 664 at 47, ¶ 104 (App. Ex. 2).

Congoleum benefitted greatly as a result of the positions it took to obtain this Court's 2010 confirmation order. Congoleum successfully emerged from its fiercely contested chapter 11 bankruptcy case and remained in business while discharging over $300 million in asbestos-related liabilities. (Congoleum Dist. Dkt. No. 435 at 12 (App. Ex. 3); App. Ex. 2 at 18-19, ¶ 29(iv).) The District Court's finding that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business" enabled Congoleum to strip BIW of its interests as a named insured in certain insurance policies and obtain $16,950,000 from the insurance company to fund its plan of reorganization. (App. Ex. 2 at 46-47, ¶¶ 103-04 (emphasis added).)

But today, when Congoleum's interests are no longer served by advancing the position that BIW was *not* responsible for liabilities associated with the Kearny Property, Congoleum flip flops. It takes the exact opposite position in its Cross-Claim, failing to even mention its prior bankruptcy case or this Court's finding that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business." (*Id*. at 47, ¶ 104 (emphasis added).) Simply put, Congoleum is not entitled to prevail "'twice on opposite theories.'" *See Gecker*, 459 B.R. at 304 (*quoting Butler v. Vill. of Round Lake Police Dept.*, 585 F.3d 1020, 1022 (7th Cir. 2009)). The integrity of the judicial process demands that this Court dismiss Congoleum's Cross-Claim.[2]

This Court's order confirming Congoleum's plan of reorganization also compels dismissal of Congoleum's Cross-Claim and the Plaintiffs' Amended Complaint (Dkt. No. 18) against BIW because long-established precedent holds that confirmation orders are entitled to *res*

---

[2] Congoleum's failure to even mention its bankruptcy and this Court's prior confirmation order is particularly troubling given that BIW brought all of these matters to Congoleum's attention before Congoleum filed its initial Third-Party Complaint (Dkt. No. 13) against BIW—a filing that predictably led to the Plaintiffs naming BIW as an additional defendant.

*judicata* effect and are binding on Congoleum and all of its creditors, including the Plaintiffs. *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152-53 (2009); *Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938); *see also* 11 U.S.C. § 1141(a). Because Plaintiffs' Amended Complaint and Congoleum's Cross-Claim are defeated by this Court's finding that BIW has "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business"—which includes liabilities associated with the Kearny Property—both must be dismissed. (App. Ex. 2 at 47, ¶ 104 (emphasis added).)

Finally, the doctrine of equitable estoppel also compels dismissal of Congoleum's Cross-Claim. Congoleum's representations that BIW had "no responsibility for *any* of the liabilities of the Congoleum Flooring Business" allowed Congoleum to eliminate BIW's valuable insurance rights as a named insured under various insurance policies. (*Id.* at 46-47, ¶¶ 103-04 (emphasis added); Congoleum Bankr. Dkt. No. 4572 (App. Ex. 4).) BIW relied on these statements and did not object to the release of those policies understanding that Congoleum had responsibility for liabilities of the Flooring Business. Principles of equitable estoppel therefore bar Congoleum from changing its position today. *See, e.g.*, *Rosen v. Hotel & Rest. Emp. & Bartenders Union of Phila., Bucks, Montgomery & Del. Ctys., Pa.*, 637 F.2d 592, 597 (3d Cir. 1981), *cert. denied*, 454 U.S. 898 (1981); *see also Wheeling-Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 162-63 (3d Cir. 1987).

For these reasons, as explained more fully herein, this Court should dismiss with prejudice Plaintiffs' Amended Complaint against BIW and Congoleum's Cross-Claim.

## STATEMENT OF FACTS

Solely for the purposes of the Motion, BIW accepts the facts alleged in the Amended Complaint and Cross-Claim as true. BIW further supports its Motion with facts obtained from public records, including court proceedings. "Generally, in ruling on a motion to dismiss, a

district court relies on the complaint, attached exhibits and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). "[J]udicial proceedings constitute public records and [] courts may take judicial notice of another court's opinions." *Id.* Here judicial notice is particularly appropriate because the relevant orders in Congoleum's chapter 11 case were entered by a judge of this Court.

### A.  The Parties And Their Relationship To The Kearny Property.

As set forth more fully in the Amended Complaint, this action stems from environmental contamination allegedly associated with Congoleum's flooring operations at the Kearny Property. Plaintiffs allege that Congoleum's flooring operations at the Kearny Property during the first half of the 20th century caused environmental contamination of the Kearny Property (Dkt. No. 18 at 5-6, ¶¶ 27-40), before Congoleum sold the Kearny Property to Plaintiffs in or about 1960 (Dkt. No. 19 at 19, ¶ 8). Although Congoleum's corporate history is complex, the allegations of the Cross-Claim allow one to trace Congoleum's flooring operations at the Kearny Property back to those conducted by Congoleum-Nairn Inc., an entity that formed in 1924 from merging "Congoleum Corporation . . . with Nairn Linoleum Company." (Dkt. No. 19 at 30, ¶¶ 12-15.)  Congoleum-Nairn owned the Property until around 1959. (*Id.* at 30, ¶ 16.) Only after that sale, in 1968, did Congoleum-Nairn merge with an affiliate of BIW. (*Id.* at 30, ¶ 17.) BIW, a shipbuilder, never operated Congoleum's Flooring Business or its own business at the Kearny Property and was not yet an affiliated entity when Congoleum's predecessor, Congoleum-Nairn, owned the Kearny Property. (*Id.* at 25, ¶¶ 12-16.) Congoleum nonetheless alleges that BIW became responsible for the liabilities associated with the Kearny Property as a result of a 1986 transaction that spun off Congoleum's Flooring Business into a new entity. (*Id.* at 30-32, ¶¶ 12-30.)

**B.  Congoleum's Chapter 11 Filing And Its Confirmation Order.**

As a result of asbestos litigation pending against it, on December 31, 2003, Congoleum and its subsidiaries filed for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. (App. Ex. 2 at 6-7 and 11, ¶¶ 3-6, 17.) During the first six years of these chapter 11 cases Congoleum filed a number of different plans of reorganization, but the Bankruptcy Court declined to confirm any of them. (Congoleum Bankr. Dkt. No. 7218 at 21 (App. Ex. 5).) Frustrated with Congoleum's inability to confirm a plan of reorganization, the Bankruptcy Court ordered the dismissal of Congoleum's chapter 11 case, but stayed its order pending an appeal. (*Id.*; Congoleum Bankr. Dkt. No. 7244 (App. Ex. 6).) On August 17, 2009, the District Court reversed, holding that that the Bankruptcy Court had abused its discretion when it dismissed Congoleum's chapter 11 case. (Congoleum Bankr. Dkt. No. 7620 (App. Ex. 7).)  On August 27, 2017, the District Court withdrew the reference. (Congoleum Bankr. Dkt. No. 7635 (App. Ex. 8).)

After the chapter 11 case was withdrawn to the District Court, between October 22, 2009 and March 11, 2010, Congoleum filed three different amendments to its prior plan of reorganization attempting to resolve various parties' objections. (Congoleum Dist. Dkt. No. 133, 340, 434 (App. Exs. 9, 10, 11).) Congoleum eventually proceeded to confirmation on its "Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of the Debtors, the Official Committee of Bondholders for Congoleum Corporation, et al. and the Futures Representative Dated as of March 11, 2010" (the "**Plan**"). (App. Ex. 11.) Congoleum published notice of the confirmation hearing in *USA Today*. (Congoleum Bankr. Dkt. No. 6432 (App. Ex. 12).)

On June 7, 2010, the District Court entered an 86-page "Order Confirming Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of the Debtors,

the Official Committee of Bondholders for Congoleum Corporation, et al. and the Futures Representative Dated as of March 11, 2010 (Modified)" (the "**Confirmation Order**"), which contained detailed findings of fact and conclusions of law. (App. Ex. 2.) Congoleum's Plan satisfied Congoleum's asbestos liabilities by creating a "Plan Trust" that was funded, in part, with $235 million of settlements from insurance carriers that made payments to the trust in exchange for a release of all claims under their policies. (*Id*. at 18, ¶ 29.) At the same time, the Plan expressly preserved any rights and claims under applicable environmental laws. (App. Ex. 11 at 40, § 11.9.)

Relevant to this litigation is the settlement that Congoleum made with Century Indemnity Company ("**Century**") that became effective as a result of the District Court's Confirmation Order. (*Id*. at 46-47, ¶¶ 103-04.) On August 24, 2006 (before the District Court withdrew the reference), Congoleum filed a motion in the Bankruptcy Court asking for approval to enter into a Settlement and Policy Buyback Agreement with Century (the "**Century Settlement**"). (*Id*. at 46, ¶ 103; *see also* App. Ex. 1.)

The Century Settlement provided that Century would pay $16,950,000 to a plan trust to be established in a plan of reorganization in exchange for a complete release of all asbestos *and non-asbestos* claims that could be made under the Century insurance policies. (App. Ex. 1 at 22, ¶ 52.) Because BIW (and other entities) were also named insureds under the Century policies, the settlement agreement required Congoleum to obtain two key findings in any confirmation order that would confirm a plan of reorganization for Congoleum: (1) that Congoleum had full authority to negotiate and sell the Century policies; and (2) that BIW (and those other entities) "have no responsibility for any of the liabilities of the Congoleum Flooring Business." (*Id*. at Ex. A, § I.J (iv).)

Significantly, the Century Settlement defined the "Congoleum Flooring Business" to mean:

> the business involved in the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity involving in any way flooring, vinyl sheeting flooring or floor tile products of any kind (including, but not limited to, battleship linoleum, resilient sheet vinyl flooring and tile flooring) as *such activities may have been engaged in by any one or more of the Congoleum Entities*; provided, however, that Congoleum Flooring Business does not include carpets within its definition or the definition of flooring and does not include the shipbuilding operations of Bath Iron Works Corp., or of Bath Industries, Inc., if any, (it being understood that such operations exclude the products of the Congoleum Flooring Business). Solely for informational purposes and to assist the parties, but not to restrict or limit the definition of the term "Congoleum Flooring Business," *the Debtors represent that the above defined business was headquartered continuously in Kearny, New Jersey, from before 1965 to 1987 and none of the Congoleum Entities conducted a Congoleum Flooring Business from a headquarters other than in Kearny, New Jersey, during this period.*

(*Id.* at Ex. A, § I.L (emphasis added).) The term "Congoleum Entities" was defined to include Congoleum-Nairn, Inc. (*Id.* at Ex. A, § I.K.) The proposed finding that BIW was not responsible for "any liabilities" of the "Congoleum Flooring Business" was not limited in any way and was consistent with the fact that, as Congoleum alleges in its Cross-Claim, BIW was not even an affiliated entity when Congoleum's predecessor Congoleum-Nairn owned and operated the Flooring Business at the Kearny Property. (Dkt. No. 19 at 30-32, ¶¶ 12-30.)

The Century Settlement further provided that the settlement would only be effective on both approval of the settlement motion *and* subsequent confirmation of a plan of reorganization and the creation of a Plan Trust. (App. Ex. 1 at Ex. A, §§ II.A & II.D.) But once the Century Settlement motion was approved, BIW no longer had any ability to object to the elimination of its rights in the Century insurance policies. (*Id.*)

Congoleum published notice of the hearing on its proposed settlement with Century in *USA Today*. (Congoleum Bankr. Dkt. 4521 (App. Ex. 13).) To obtain approval of the settlement and provide an evidentiary basis for the requested findings, Congoleum's Chief Financial Officer submitted a Declaration under oath. First, he testified that "Congoleum is the successor in interest to the entity Congoleum-Nairn, Inc. named in policies XBC-1838 and XBC-40971" and that "with respect the Congoleum Flooring Business, [Congoleum] is the sole successor in all respects with regard to coverage, and that [Congoleum] . . . owns the rights to coverage under the [Century Policies] identified on Exhibit C to the Settlement and Buyback Agreement as may ever have been held by such entities with and in all respects to the Congoleum Flooring Business." (App. Ex. 1, Ex. B at 6-7, ¶ 14(A).)  Second, he testified that BIW and the other insureds had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business." (*Id.* at 7, ¶ 14(B) (emphasis added).) He further testified that

> [t]he flooring operations of the Congoleum Entities [defined to include Congoleum-Nairn] to which they succeeded, including the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity involving in any flooring, vinyl sheeting flooring or floor tile products of any kind were headquartered in Kearney [sic], New Jersey, continuously from before 1965 to 1987.

(*Id.* at 7, ¶ 14(C).)

On September 20, 2006, the Bankruptcy Court approved the Century Settlement. (App. Ex. 4.) As contemplated in the Century Settlement, the District Court's Confirmation Order made an explicit finding that BIW was not responsible for any of the liabilities of the flooring operations at the Kearny Property. (App. Ex. 2 at 47, ¶ 104.)

The Confirmation Order found that:

> In support of the Century Settlement and the Century Approval Order, the Court finds that the following Century Additional Named Insureds *have no responsibility for any of the liabilities of the Congoleum Flooring Business (as*

8

*defined in the Century Settlement)*: Relax-o-Lounger, Inc., Kinder Manufacturing Company, Inc., Lewis Carpet Mills, Inc., Lewis Carpet Mills, Inc., Pennsylvania Crusher Corporation, Mersman Brothers Division, Webb Furniture Corporation, Coronet Manufacturing Co., Inc., Howard Parlor Furniture Co., Howard Parlor Furniture Co. of Texas, Inc., Howard Frame Co., Edson, Incorporated, J. Isenberg & Son, Inc. *and Bath Iron Works Corp.*

(*Id.* (emphasis added).) The District Court did not limit its finding that BIW and others were not responsible for any of the liabilities of the Congoleum Flooring Business in any way. (*Id.*) The Confirmation Order further provided that in the event of any direct conflict between the Plan and the Confirmation Order, the Confirmation Order controlled. (*Id.* at 59, ¶ 1.)

### C. Congoleum's Plan Becomes Effective, And As A Result The Century Settlement Is Consummated And BIW Is Stripped Of Its Interests In The Century Insurance Policies.

Thereafter, on July 1, 2011, the transactions contemplated under Congoleum's Plan were implemented, including the Century Settlement. (Congoleum Dist. Dkt. No. 703 (App. Ex. 14.) As a result, Congoleum emerged from bankruptcy and was able to discharge over $300 million in asbestos liabilities using the $16,950,000 it obtained from Century to fund its Plan. Also as a result of the Plan becoming effective, BIW lost its interests in the Century insurance policies. The *quid pro quo* that BIW received for this loss of rights was the District Court's judicial finding that BIW had no responsibility for any liabilities of the Congoleum Flooring Business.

### D.  Plaintiffs' Complaint, Amended Complaint And The Cross-Claim.

Plaintiffs filed the instant action against Congoleum on June 12, 2017. (Dkt. No. 1.) Plaintiffs initially sued only Congoleum, alleging its flooring operations contaminated the Kearny Property and Congoleum was therefore responsible to pay for the costs associated with remediating this contamination. (*Id.*)

On October 6, 2017, Congoleum filed its Answer to Plaintiffs' Complaint, which included a Third-Party Complaint against BIW. (Dkt. No. 13.) The Third-Party Complaint made

no mention of Congoleum's bankruptcy or the finding contained in this Court's Confirmation Order. Instead, it alleged that BIW was responsible for the liabilities associated with the operation of the Flooring Business at the Kearny Property. (*Id.*)

Plaintiffs then filed their Amended Complaint, adding BIW as a direct defendant. (Dkt. No. 18.) Plaintiffs too failed to mention Congoleum's bankruptcy and this Court's Confirmation Order. (*Id.*)  Congoleum's Answer to the Amended Complaint (Dkt. No. 19) included a Cross-Claim against BIW that was essentially identical to its Third-Party Complaint. Here again Congoleum made no mention of its prior bankruptcy or this Court's Confirmation Order.

## ARGUMENT

## I.   The Court Should Dismiss Congoleum's Cross-Claim.

Congoleum's Cross-Claim against BIW is barred as a matter of law by the doctrines of judicial estoppel, res judicata, and equitable estoppel, and therefore must be dismissed.

### A.  Judicial Estoppel Bars Congoleum's Cross-Claim Against BIW.

The doctrine of judicial estoppel provides that a party who obtains relief by successfully taking one position in one matter may not be heard to later contradict itself in a second case "in an effort to establish against the same adversary a second claim inconsistent with [its] earlier contention." *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953). "Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate." *Id.*; *accord Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) (obtaining judicial relief in two cases on the basis of inconsistent positions "is an unacceptable abuse of judicial proceedings"). Put simply, the doctrine's purpose '"is to prevent a litigant from prevailing 'twice on opposite theories.'" *Gecker*, 459 B.R. at 304 (*quoting Butler*, 585 F.3d at 1022). Courts deem the application of judicial estoppel to be "particularly appropriate . . . where

the party benefited from its original position." *Delgrosso v. Spang & Co.*, 903 F.2d 234, 242 (3d Cir. 1990); *accord Murray v. Siberstein*, 882 F.2d 61, 66 (3d Cir. 1989) (same).

The Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. 742 (2001), is instructive. In that case, the State of New Hampshire had previously litigated a boundary dispute with Maine. *Id.* at 746. In the earlier case, the two states eventually agreed to a consent decree in which the boundary line would be drawn through the middle of the Piscataqua River. *Id.* at 747. Twenty-five years later, the states once again feuded over their shared boundary. *Id.* at 751. This time New Hampshire asserted that the boundary should be drawn at the high-water mark of the river and not in its middle. *Id.* In a unanimous decision, the Supreme Court held that the doctrine of judicial estoppel barred New Hampshire from changing its position. *Id.* at 749. The Supreme Court rejected New Hampshire's argument that the prior consent decree did not truly reflect New Hampshire's position on the matter because it was the result of a compromise with Maine. *Id.* at 752. The Supreme Court noted that "that 'compromise' enabled New Hampshire to settle the case" on beneficial terms and that both states had "represented to [the] Court that the proposed judgment was 'in the best interest of each State.'" *Id.* Therefore, the doctrine of judicial estoppel applied to protect the integrity of the judicial process. *Id.* at 756.

Here Congoleum's Cross-Claim against BIW directly contradicts the testimony that Congoleum successfully advanced to obtain benefits crucial to its continued operation: a final Confirmation Order and cash to fund its confirmed Plan. As the public docket of this Court establishes, Congoleum proffered the testimony of its Chief Financial Officer that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business" to secure a finding to this effect in this Court's Confirmation Order. (*Compare* testimony at App. Ex. 1, Ex. B at 7, ¶ 14(B) (emphasis added) *with* Court's identical finding at App. Ex. 2 at 47, ¶ 104.) As a result, the

Century Settlement became effective and Congoleum received close to $17 million that it used to fund its Plan Trust and to thereby obtain a discharge of over $300 million of asbestos liabilities.

Congoleum publicly acknowledged the tremendous benefit it received from its actions by stating that its cash settlements with Century and other insurers were "critical to the success of [its] reorganization." (Congoleum Dist. Dkt. No. 632 at 73 (App. Ex. 15.) Congoleum's successful reorganization depended on the Century Settlement becoming effective—and that settlement depended on Congoleum's testimony and the District Court's finding that BIW was not responsible for "*any* of the liabilities" of Congoleum's Flooring Business. (App. Ex. 1, Ex. A at 9, §§ II.A & II.D.) Only by making this finding in favor of BIW (and other insureds) could Congoleum achieve a successful Century Settlement and the ultimate confirmation of its Plan. Otherwise, the District Court could not have stripped BIW (and the other named insureds) of their contractual entitlements under the Century insurance policies, nor could Century buy back from Congoleum policies that covered BIW and other insureds for potential future claims.

Congoleum now seeks to upend this Court's prior finding that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business." (App. Ex. 2 at 47, ¶ 104 (emphasis added).) Congoleum makes absolutely no mention of this finding (or even of its bankruptcy case) in its Cross-Claim. Instead, it alleges that as a result of a corporate transaction that took place in 1986, *twenty years* before the bankruptcy, BIW became the party responsible "for any claims, costs or liabilities concerning the [Kearny] Property." (Dkt. No. 19 at 32, ¶ 30.) But *all* of those events were superseded by this Court's Confirmation Order, in which this Court found—at Congoleum's urging—that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business." (App. Ex. 2 at 46-47, ¶¶ 103-04; App. Ex. 1, Ex. B at 7, ¶ 14(B) (emphasis added).)

Congoleum's use of inconsistent positions between this case and its bankruptcy case is exactly the sort of "unacceptable abuse of judicial proceedings" that courts refuse to tolerate. *See Scarano*, 203 F.2d at 513; *Payless*, 989 F.2d at 571. "Moreover, application of the doctrine of judicial estoppel is particularly appropriate in situations like this, where [Congoleum] benefited from its original position." *Delgrosso*, 903 F.2d at 242; *accord Murray*, 882 F.2d at 66. Congoleum only received the benefit of the Century Settlement and its Confirmation Order because of the testimony it advanced that BIW had "*no responsibility for any* of the liabilities of the Congoleum Flooring Business." (App. Ex. 1, Ex. A at 9, § II.A and II.D (conditioning settlement implementation on this finding) (emphasis added).) In these circumstances it is "proper for the District Court to refuse to allow [a] plaintiff to litigate a claim in contradiction of [its] earlier position." *Scarano*, 203 F.2d at 514.

Indeed, it does not even matter whether Congoleum's prior position in its bankruptcy case was correct or not; what matters is that Congoleum prevailed in taking this position. In *Murray*, for example, the Third Circuit applied judicial estoppel to bar a party from reversing positions when that party first successfully obtained a preliminary injunction by arguing money damages were unavailable but then sought monetary relief once injunctive relief was no longer possible. 882 F.2d at 66-67. The Third Circuit applied judicial estoppel, noting that it did not matter whether the prior argument was "correct[] or not" because the litigant had prevailed in making it. *Id*. at 66.

So too here. Congoleum prevailed in obtaining the relief it wanted in its bankruptcy case by advancing the position under *oath* that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business." (App. Ex. 1, Ex. B at 7, ¶ 14(B) (emphasis added); App. Ex. 2 at 47, ¶ 104 (emphasis added).) The fact that Congoleum now alleges that an earlier merger

13

made BIW responsible for some of the liabilities of the Congoleum Flooring Business does not matter, even if this new position is the correct one. The doctrine of judicial estoppel prevents Congoleum from prevailing "twice on opposite theories." *Butler*, 585 F.3d at 1022. Congoleum's Cross-Claim should therefore be dismissed with prejudice.

   **B.   *Res Judicata* Bars Congoleum's Cross-Claim Against BIW.**

   The doctrine of *res judicata* also bars Congoleum's claims against BIW. It is well established that a court's order confirming a plan of reorganization is a final order with preclusive effect. *See, e.g.*, *United Student Aid Funds,* 559 U.S. at 269; *Travelers Indem. Co.,* 557 U.S. at 152-53 (a collateral attack on a final order of a bankruptcy court "cannot be squared with *res judicata* and the practical necessity served by that rule"); *Stoll,* 305 U.S. at 170-71 ("effect as *res judicata* is to be given the Federal order [of a bankruptcy court], if it is concluded it was an effective judgment in the court of its rendition"); *see also* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor . . . and any creditor . . . ."). The preclusive effect of a confirmation order is broad: "a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989).

   Here this Court unambiguously found as part of the Confirmation Order that BIW is not responsible for the liabilities of Congoleum Flooring Business at the Kearny Property. (App. Ex. 2 at 47, ¶ 104.) Not only did Congoleum fail to object to that finding, *Congoleum sought this very finding from the District Court.* (App. Ex. 1, Ex. A at 5, § I.J(iv); App. Ex. 2 at 47, ¶ 104.) The District Court's finding therefore has *res judicata* effect and bars Congoleum's Cross-Claim, which seeks a finding that BIW is responsible for the liabilities of the Congoleum Flooring Business. *See, e.g.*, *United Student Aid Funds,* 559 U.S. at 269; 11 U.S.C. § 1141(a). Because

14

Congoleum is barred from proving its Cross-Claim, its Cross-Claim must be dismissed with prejudice.

### C.  Equitable Estoppel Bars Congoleum's Cross-Claim Against BIW.

Congoleum's Cross-Claim against BIW also is barred under the doctrine of equitable estoppel. Courts in the Third Circuit apply equitable estoppel where: (1) a representation of fact was made to a party, (2) upon which it had a right to rely and did so rely, and (3) the denial of the represented fact by the party making the representation would result in injury to the relying party. *Rosen,* 637 F.2d at 597; *see also Wheeling-Pittsburgh Steel Corp.,* 836 F.2d at 162-63.

Equitable estoppel is appropriate where a litigant's position in an earlier proceeding dictated the outcome of that proceeding and, as a result, another party "acted in reliance upon the assumed finality and integrity of those adjudications." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418 (3d Cir. 1988). Equitable estoppel and judicial estoppel are similar doctrines: "[j]udicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Id.* at 419. Accordingly, where a party relies on a debtor's representations made during the course of the debtor's bankruptcy case, the debtor is estopped from taking contrary positions in a subsequent action involving that same party. *See Metal Foundations Acquisition, LLC v. Reinert (In re Reinert)*, 597 F. App'x 139, 141-42 (3d Cir. 2015).

Here Congoleum represented to BIW (and to this Court) that BIW had no liability for the flooring operations at the Kearny Property to obtain approval of its settlement with Century and eliminate BIW's rights under the Century insurance policies. In turn, BIW reasonably relied on Congoleum's representation. BIW did not object to the Century Settlement or to confirmation of Congoleum's Plan. There was no need; so long as this Court found that BIW had "no responsibility for any liabilities of Congoleum's Flooring Business" there was no risk that BIW

later would be held responsible for liabilities that otherwise might have been covered under the Century insurance policies.

Now Congoleum has changed its tune. Having received BIW's support for the sale of the Century policies in order to restructure, Congoleum is improperly attempting to shift liability for its flooring operations to BIW. If Congoleum is permitted to reverse course now, BIW will suffer significant harm. Congoleum is enjoying the benefits of its successful chapter 11 reorganization *funded in part with proceeds from the sale of the Century policies*. BIW, on the other hand, was induced to allow the Century Settlement to proceed by the finding of this Court that it had no liability for the Congoleum Flooring Business. If Congoleum's Cross-Claim is not dismissed, BIW will be forced to expend its own time and resources to defend against claims for which this Court has already determined BIW is not liable.

This is precisely the sort of harm that the doctrine of equitable estoppel is designed to prevent. Accordingly, this Court should apply the doctrine of equitable estoppel to dismiss Congoleum's Cross-Claim with prejudice. *Oneida*, 848 F.2d at 418; *Rosen*, 637 F.2d at 597.

## II.    The Court Should Dismiss Plaintiffs' Amended Complaint As To BIW.

Plaintiffs' Amended Complaint against BIW also is barred by the doctrine of *res judicata*. A confirmation order's preclusive effect is not limited to the debtor. "Once a plan is confirmed, the plan is binding on a broad list of entities, including creditors." *In re G-I Holdings, Inc.*, 514 B.R. 720, 747-48 (Bankr. D.N.J. 2014), *subsequently aff'd sub nom.*, *N.Y. City Hous. Auth. v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 654 F. App'x 571 (3d Cir. 2016). As explained in the leading treatise on bankruptcy law, "a confirmed plan is binding upon every entity that holds a claim against or interest in the debtor even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan or is

not entitled to retain an interest under the plan." 8 KING, COLLIER ON BANKRUPTCY ¶ 1141.02 (16th ed. 2017)).

Just like Congoleum, Plaintiffs' opportunity to object to the approval of the Century Settlement or to Congoleum's Plan has passed and as a result, Plaintiffs are now bound by the Confirmation Order. *See In re Midstate Mortg. Inv'rs, Inc.*, 105 F. App'x 420, 423 (3d Cir. 2004); *In re Vencor, Inc.*, 284 B.R. 79, 83 (Bankr. D. Del. 2002). Accordingly, this Court's determination that BIW is not responsible for the flooring operations at the Kearny Property is binding on all parties to this action.

## CONCLUSION

For all of the foregoing reasons, BIW respectfully requests that the Court dismiss with prejudice Plaintiff's Amended Complaint against BIW and Congoleum's Cross-Claim against BIW, and that the Court grant such other relief as may be just.

Dated:  December 5, 2017                    Respectfully submitted,

*s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza, P.O. Box 1991
Morristown, NJ 07962-1991
Telephone:  (973) 292-1700
Facsimile:  (973) 292-1767

Catherine Steege
John VanDeventer
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone:  (312) 222-9350
Facsimile: (312) 527-0484

*Attorneys for Defendant*
*Bath Iron Works Corporation*

17