## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DVL, INC. and DVL KEARNY HOLDINGS, LLC, | : : : | Civil Action No. 17-4261 (KM) (JBC) |
| Plaintiffs, | : : | |
| v. | : : | |
| CONGOLEUM CORPORATION and BATH IRON WORKS CORPORATION, | : : : | **Motion Returnable:  February 5, 2018** |
| Defendants. | : : : | **ORAL ARGUMENT REQUESTED** |

**BATH IRON WORKS CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND DEFENDANT CONGOLEUM CORPORATION'S CROSS-CLAIM**

Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
Morristown, NJ 07962-1991
(973) 292-1700

Catherine Steege
John VanDeventer
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Defendant*
*Bath Iron Works Corporation*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT ......................................................................................2

I.   The Court Can And Should Take Judicial Notice Of Its Own Records. ..............2

II.  Res Judicata Bars All Of The Claims Against BIW. ............................................4

    A. The Confirmation Order Was A Final Judgment On The Merits. .................4

    B. Congoleum, BIW, And Plaintiffs Were All Parties To Congoleum's
    Bankruptcy Case. ...........................................................................5

        1. BIW Was A Party To Congoleum's Bankruptcy Case. ............................5

        2. Plaintiffs Were Contingent Creditors And Therefore Parties To
        Congoleum's Bankruptcy Case. ................................................7

    C. Congoleum's Cross-Claims And DVL's Amended Complaint Arise
    From The Same Issue Resolved In Congoleum's Bankruptcy Case...............9

        1. There Is Meaningful Overlap Between The Issues. ..................................10

        2. The Plan Did Not Preserve Congoleum's Or Plaintiffs' Right To
        Bring Suit Against BIW. .........................................................11

        3. The District Court's Finding Covers Any War Time Production At
        The Kearny Property. .............................................................11

III. Judicial Estoppel Bars Congoleum's Cross-Claim. ...........................................12

    A. Courts Routinely Employ Judicial Estoppel At The Motion To
    Dismiss Stage To Avoid the Type of Injustice Evident Here. ......................13

    B. Congoleum's Statements Are Irreconcilably Inconsistent. ...........................14

        1. The Plain Meaning of Congoleum's Prior Representations Includes
        The Environmental Liabilities At Issue Here...........................................14

        2. The Terms Of The 1986 Resilient Assignment And Century
        Settlement Demonstrate That Congoleum's Testimony And This
        Court's Finding Included Environmental Liabilities. ..............................14

3.  The Policies Included BIW's Environmental Liabilities. ........................17

4.  Congoleum's "Context" Argument Fails. ..................................................19

C. Congoleum Changed Positions In Bad Faith. .................................................20

IV.  Equitable Estoppel Bars Congoleum's Cross-Claim. ......................................23

A. The Legal Test For Equitable Estoppel Is Met Here. ....................................23

B. BIW's Detrimental Reliance Was Reasonable. ..............................................24

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Astro Pak Co. v. Fireman's Fund Insurance Co.*,
284 N.J. Super. 491 (App. Div. 1995) ...............................................................18

*Bos. & Me. Corp. v. Mass. Bay Transp. Auth.*,
587 F.3d 89 (1st Cir. 2009) .................................................................................9

*Chao v. Roy's Constr., Inc.*,
517 F.3d 180 (3d Cir. 2008) ..............................................................................20

*Cleveland v. Policy Management Systems Corp.*,
526 U.S. 795 (1999) ...........................................................................................19

*Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*,
881 F.2d 436 (7th Cir. 1989) ....................................................................4, 8, 10

*Danise v. Saxon Mortg. Servs., Inc.*,
No. CV 15-06062 (JLL), 2016 WL 7340287 (D.N.J. Dec. 19,
2016), *reconsideration denied*, 2017 WL 838799 (D.N.J. Mar. 3,
2017) .............................................................................................................13, 22

*DePasquale v. Morgan Stanley Smith Barney LLC*,
No. 10-6828, 2011 WL 3703110 (D.N.J. Aug. 23, 2011) ....................13, 20, 22

*Eubanks v. F.D.I.C.*,
977 F.2d 166 (5th Cir. 1992) ...............................................................................5

*In re Armstrong World Indus., Inc.*,
432 F.3d 507 (3d Cir. 2005) ..............................................................................20

*In re Burlington Coat Factory Securities Litigation*,
114 F.3d 1410 (3d Cir. 1997) ..............................................................................3

*In re Congoleum Corp.*,
414 B.R. 44 (D.N.J. 2009) .................................................................................3, 6

*In re Hensler*,
  248 B.R. 488 (Bankr. D.N.J. 2000) .............................................................4, 10

*In re Kane*,
  628 F.3d 631 (3d. Cir. 2010) ...............................................................................22

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017) ................................................................................14

*In re Rodriguez*,
  629 F.3d 136 (3d Cir. 2010) ..................................................................................9

*In re Ruitenberg*,
  745 F.3d 647 (3d Cir. 2014) ..................................................................................8

*In re Safety-Kleen Corp.*,
  380 B.R. 716 (Bankr. D. Del. 2008) ...................................................................15

*In re W.R. Grace & Co.*,
  729 F.3d 311 (3d Cir. 2013) ..................................................................................8

*Int'l Union United Auto., et al. v. Skinner Engine Co.*,
  188 F.3d 130 (3d Cir. 1999) .............................................................................23n

*J.H. Grp., LLC v. Royal Rolling Chairs, LLC*,
  No. 11-1595, 2012 WL 3185933 (D.N.J. Aug. 2, 2012),
  *aff'd*, 523 F. App'x 922 (3d Cir. 2013).......................................................13, 22

*Johnson v. Home State Bank*,
  501 U.S. 78 (1991)................................................................................................6

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003) ..................................................................12, 21, 22

*Lewis v. Eberle & BCI Servs., LLC*,
  No. 11-4661, 2013 WL 4483529 (D.N.J. Aug. 19, 2013).................................13

*Lime Tree Assocs., LLC v. Burlington Ins. Co.*,
  No. 13-6017 (KSH), 2014 WL 6685414 (D.N.J. Nov. 25, 2014) .....................17

*Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*,
  134 N.J. 1 (1993) ................................................................................................18

iv

*Motley v. N.J. State Police*,
  196 F.3d 160 (3d Cir. 1999) ........................................................................13, 19

*New Hampshire v. Maine*,
  532 U.S. 742 (2001).....................................................................................10, 20

*Owens-Ill., Inc. v. United Ins. Co.*,
  138 N.J. 437 (1994) ...........................................................................................18

*Palan v. Inovio Pharmacy, Inc.*,
  653 F. App'x 97 (3d Cir. 2016) .........................................................................24

*Palcesz v. Midland Mut. Life Insc. Co.*,
  87 F. Supp. 2d 409 (D.N.J. 2000).....................................................................20

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ..............................................................................2

*Rivet v. Office Depot, Inc.*,
  No. 2:12-02992 (WJM), 2015 WL 9308246 (D.N.J. Dec. 22, 2015) ..........13, 22

*Sanders Confectionary Prod., Inc. v. Heller Fin., Inc.*,
  973 F.2d 474 (6th Cir. 1992) ...........................................................................5, 6

*Sands v. McCormick*,
  502 F.3d 263 (3d Cir. 2007) ................................................................................2

*Scarano* v. *Cent. R. Co. of N.J.*,
  203 F.2d 510 (3d Cir. 1953) ..............................................................................20

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*,
  181 F.3d 410 (3d Cir. 1999) ................................................................................3

*Tenn. Student Assistance Corp. v. Hood*,
  541 U.S. 440 (2004)..........................................................................................7, 8

*Toscano v. Conn. Gen. Life Ins. Co.*,
  288 F. App'x 36 (3d Cir. 2008) ...........................................................................3

*United Student Aid Funds, Inc. v. Espinosa*,
  559 U.S. 260 (2010)..............................................................................................5

*Werner v. Werner*,
 267 F.3d 288 (3d Cir. 2001) ............................................................................2

*Willekes v. Serengeti Trading Co.*,
 No. 13-7498, 2016 WL 5334522 (D.N.J. Sept. 22, 2016)...............................23n.

*Wright v. Corning*,
 679 F.3d 101 (3d Cir. 2012) ............................................................................8

STATUTES

11 U.S.C. §101(5) ...............................................................................6, 8, 9

11 U.S.C. §101(10) ...........................................................................................6

11 U.S.C. § 363(e) ...........................................................................................16

11 U.S.C. §1108 ...............................................................................................6

11 U.S.C. §1141 ...............................................................................................7

11 U.S.C. §1141(a) ...........................................................................................5

OTHER AUTHORITIES

MERRIAM-WEBSTER DICTIONARY (11th ed 2017), *available at*
 https://www.merriam-webster.com/dictionary/any ............................................14

16 J. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶108.70[1] (3d ed.
 2004) ...............................................................................................................7

Bath Iron Works Corporation ("**BIW**") respectfully submits its Reply In Support Of Its Motion To Dismiss DVL, Inc. and DVL Kearny Holdings, LLC's ("**Plaintiffs'**") Amended Complaint And Congoleum Corporation's ("**Congoleum's**") Cross-Claim.

## INTRODUCTION

Plaintiffs and Congoleum both contend that BIW should be held responsible for the clean-up of the property where Congoleum previously operated its flooring business ("**Kearny Property**"). But in 2010, a judge of this Court found that BIW had "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business." (Appendix ("**App.**") Ex. 2 at 47, ¶104 (emphasis added).) As set forth herein and in BIW's opening brief, that finding, which Congoleum actively sought and which on its face contained *no* exceptions, ends the inquiry here and compels dismissal of all claims against BIW as a matter of law.

In response, Congoleum continues to play "fast and loose" with this Court. Eleven different times, Congoleum asserts *without equivocation* that insurance policies issued in 1965 and 1966 could not possibly cover environmental contamination that occurred before 1960. (Dkt. 33 at 2, 6-7, 9-12, 16, 19-21, 23, 24-26, 28-29.) In doing so, Congoleum *ignores* over twenty years of New Jersey law holding the exact opposite. And Congoleum's failure to face facts does not end there. It repeatedly asserts that BIW, rather than Congoleum, assumed the historic

liabilities of the Congoleum Flooring Business, by selectively quoting, and *leaving out* a provision from, a 1986 agreement where Congoleum assumed *all* liabilities of *both* the flooring business *and* the assets that transferred to it in 1986. (Dkt. 33 at 5.)

Courts in this jurisdiction *routinely* grant motions to dismiss under the same theories (estoppel and/or claim preclusion) under less flagrant circumstances. The *only* appropriate remedy is for this Court to grant BIW's motion to dismiss with prejudice.

## ARGUMENT

## I.   The Court Can And Should Take Judicial Notice Of Its Own Records.

Tacitly conceding that their claims against BIW are doomed if this Court notices its prior finding that BIW has "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business" (App.Ex. 2 at 47, ¶104 (emphasis added)), Plaintiffs urge this Court to avoid noticing its own docket (Dkt. 32 at 10-11).[1] Yet, courts "may take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute." *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001). Orders entered in judicial proceedings and other court filings are "undisputedly authentic" and may be noticed on motions to dismiss. *See Sands v. McCormick,* 502 F.3d 263, 268 (3d Cir. 2007); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.,*

---

[1] BIW's Appendix mistakenly included an incomplete version of the Confirmation Order. BIW attaches a corrected version of Appendix Exhibit 2.

*Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In fact, two of the cases Plaintiffs cite hold the same. (*See* Dkt. 32 at 10 (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd*, 181 F.3d 410, 426-27 (3d Cir. 1999), and *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).) Here, no party disputes the authenticity of Congoleum's affidavit or this Court's prior order confirming Congoleum's plan of reorganization ("**Confirmation Order**"). The Court should therefore notice these filings "insofar as they are relevant" to the issues before the Court. *See In re Congoleum Corp.*, 414 B.R. 44, 48 n.5 (D.N.J. 2009).

   In response, Plaintiffs contend a court may not notice a docket if the complaint does "not refer to or rely upon the prior proceeding," or the prior case "did not involve the same parties." (Dkt. 32 at 10.) Plaintiff's own case law refutes the first point: *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426-27, 1435 (3d Cir. 1997), holds that a plaintiff cannot bar judicial notice of a document integral to a dispute by failing to reference it in its complaint. As to the second point, whether Plaintiffs were parties in the bankruptcy case (which they were) does not affect the authenticity of the Confirmation Order or docket. Finally, Plaintiffs' contention that justice would not be furthered if the Court noticed the large bankruptcy docket (Dkt. 32 at 11) overlooks the fact that BIW's exoneration

in this case far outweighs the review of a few, relevant documents. The Court can and should notice these documents.

## II.   Res Judicata Bars All Of The Claims Against BIW.

In its Response, Congoleum warns the Court of the perils of applying res judicata in the bankruptcy context—a purportedly complicated and unique circumstance requiring narrow application. (Dkt. 33 at 15.) But just the opposite is true. Res judicata is particularly important and prevalent in the bankruptcy context. Indeed, "'[t]he numerous and substantial reasons for the doctrine of *res judicata* are … all the more compelling today, *especially for bankruptcy, and related proceedings.*'" *In re Hensler*, 248 B.R. 488, 491 (Bankr. D.N.J. 2000) (emphasis added) (quotations omitted). Given the potential for myriad and costly claims arising from a bankruptcy action, it is "'more imperative than ever that the doctrine of res judicata be applied with unceasing vigilance.'" *Id.*; *accord, Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881 F.2d 436, 440 (7th Cir. 1989) ("Public policy supports res judicata generally, but in the bankruptcy context in particular.").

The allegations of the complaint and judicially-noticeable documents demonstrate that each of the three elements of res judicata is present here.

### A. The Confirmation Order Was A Final Judgment On The Merits.

Congoleum does not dispute, nor could it, that the first element of res

judicata is met. (Dkt. 33 at 14.) Plaintiffs, however, contend—without relevant legal authority—that the Confirmation Order was not a final judgment on the merits. (Dkt. 32 at 12-13.) Plaintiffs are wrong. "Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionary Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). Indeed "[i]t has long been recognized that a bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes." *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992); *accord United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010); *see also* 11 U.S.C. §1141(a) (a confirmed plan binds the debtor and any creditor).

### B. Congoleum, BIW, And Plaintiffs Were All Parties To Congoleum's Bankruptcy Case.

BIW also has satisfied res judicata's second element. Congoleum obviously was a party to the bankruptcy case and the Bankruptcy Code makes clear that a confirmation order "bind[s] the debtor." 11 U.S.C. §1141(a). It also binds all creditors and parties in interest, *id.*, and both BIW and Plaintiffs fit that definition.

### 1.   BIW Was A Party To Congoleum's Bankruptcy Case.

Congoleum misconstrues basic bankruptcy law when it contends that BIW was not a party because "BIW never formally appeared in the Bankruptcy." (Dkt. 33 at 14 n.5.) As this Court previously held in Congoleum's bankruptcy case, a

"party in interest" "has been construed broadly to encompass anyone with a 'practical stake in the outcome of the proceedings.'" *Congoleum*, 414 B.R. at 56 (quoting *In re Amatex Corp.*, 775 F.2d 1034, 1041-42 (3d Cir. 1985)).

The broad definition of a "party" to a bankruptcy case comes directly from the Bankruptcy Code. The Code defines a party in interest to include a debtor's creditors. *See* 11 U.S.C. §1108 ("A party in interest, including the debtor … [or] *a creditor* … may raise and may appear and be heard on any issue in a case under this chapter." (emphasis added)). The Code further defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §101(10). And a "claim" is likewise broadly defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured …." 11 U.S.C. §101(5). The net result is an intentionally expansive definition of a "party in interest." "Congress intended by this language to adopt the broadest definition of 'claim'" to sweep any parties who may be impacted by a debtor's bankruptcy within the ambit of the bankruptcy court's jurisdiction. *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). In fact, interpreting a party narrowly would "run counter to the provisions in the Code." *Sanders Confectionary,* 973 F.2d at 480.

6

A party's decision not to file an appearance does not strip it of its party status nor does it allow a *debtor* to sidestep the preclusive nature of a court's orders, as Congoleum tries to do here. The Supreme Court has long held that *all* parties to a bankruptcy proceeding are bound by the orders of a bankruptcy court "whether or not they choose to participate in the proceeding." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004) (collecting cases). The strength of the bankruptcy system as a whole hinges on a court's ability to "determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is 'one against the world.'" 16 J. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶108.70[1] (3d ed. 2004). Accordingly, a creditor is a creditor whether it chooses to appear or not, and it is a party bound by the court's orders. In particular, the Bankruptcy Code explicitly holds that "the provisions of a confirmed plan bind the debtor … [and] any creditor …, whether or not the claim or interest of such creditor … is impaired under the plan and whether or not such creditor … has accepted the plan." 11 U.S.C. §1141. Accordingly, the fact that BIW did not appear in the bankruptcy case did not change its party status. BIW is both bound by and entitled to rely upon the Court's Confirmation Order.

> **2.    Plaintiffs Were Contingent Creditors And Therefore Parties To Congoleum's Bankruptcy Case.**

Plaintiffs also argue they lack party status because they "did not participate in the proceeding" and allegedly "were unaware of the environmental contamination that forms the basis for this action." (Dkt. 32 at 3, 13-16.) Both arguments fail.

*First*, as discussed above, creditors are still parties to a bankruptcy case "whether or not they choose to participate in the proceedings." *See Tenn. Student Assistance Corp.*, 541 U.S. at 448. Indeed, this is a fundamental principle of bankruptcy law that allows courts "to provide the debtor a fresh start … *despite the lack of participation of all his creditors*." *Id.* at 447 (emphasis added). Courts recognize that "[s]ometimes the results are harsh," but a creditor's failure to appear in a debtor's bankruptcy case "whether strategic or inadvertent, will not enable [it] to escape the res judicata net." *Crop-Maker Soil Servs.*, 881 F.2d at 439.

*Second*, Plaintiffs *were* creditors of Congoleum. Plaintiffs argue that they had not yet discovered Congoleum's alleged environmental contamination (Dkt. 32 at 3, 13-16), but this only means they had a *contingent* claim. The Bankruptcy Code broadly defines claims to include a "contingent" right to payment. 11 U.S.C. §101(5). "[B]oth Congress and the Supreme Court have instructed that a 'claim' under the Bankruptcy Code be given the broadest possible definition." *In re Ruitenberg*, 745 F.3d 647, 651 (3d Cir. 2014).

"[A] claim arises when an individual is exposed pre-confirmation to a product or other conduct giving rise to an injury that underlies a 'right to payment' under the Code…. A 'claim' can therefore exist before a right to payment exists…." *In re W.R. Grace & Co.*, 729 F.3d 311, 321-22 (3d Cir. 2013) (internal citations and quotations omitted). Thus, a creditor may hold a claim prepetition "even if no damage is then evident." *Wright v. Corning*, 679 F.3d 101, 106 (3d Cir. 2012). "[T]he contingent nature of the right to payment does not change the fact that the right to payment exists, even if it is remote, and thereby constitutes a 'claim' for the purposes of § 101(5)." *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010). So too for purchasers of real property who later discover environmental contamination on the land. *See, e.g.*, *Bos. & Me. Corp. v. Mass. Bay Transp. Auth.*, 587 F.3d 89, 100 (1st Cir. 2009) (noting that "actual knowledge by the creditor of the claim is not necessary; constructive knowledge suffices"). Accordingly, Plaintiffs were creditors, and thus parties to the bankruptcy case.

### C. Congoleum's Cross-Claims And DVL's Amended Complaint Arise From The Same Issue Resolved In Congoleum's Bankruptcy Case.

Both Congoleum and Plaintiffs dispute res judicata's third element. Congoleum argues there is "no meaningful overlap" (Dkt. 33 at 15-16), while both parties argue that (1) the Plan preserved environmental claims (*Id.* at 17-18; Dkt. 32 at 18-19) and (2) the Confirmation Order does not preclude claims arising out

of Defendants' war product manufacturing (Dkt. 32 at 19-20; Dkt. 33 at 30-31). These arguments fail.

### 1.    There Is Meaningful Overlap Between The Issues.

There is a 100% overlap between: (1) this Court's finding that BIW has "*no responsibility for any* of the liabilities of the Congoleum Flooring Business" conducted at the Kearny Property (App, Ex. 2 at 47, ¶104); and (2) the opposite finding that Congoleum (the debtor) and Plaintiffs (creditors) seek here, alleging that BIW is liable for the contamination of the Kearny Property (*see* Dkt. 18 at 5-6 ¶¶27-40; *and* Dkt. 19 at 32 ¶30 (same)). And because of that complete overlap, res judicata applies to bar Congoleum and Plaintiffs from re-litigating a fact which this Court *actually decided* in the first case. *See, e.g., Crop-Maker Soil Servs.*, 881 F.2d at 439 ("The preclusive effect of the federal res judicata doctrine bars not only those issues which actually were decided in a prior action but also any issues which could have been raised."); *Hensler*, 248 B.R. at 490 ("*Res judicata* bars relitigation of issues actually litigated …." (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)). A finding of res judicata is particularly appropriate here because that finding of fact was made *at Congoleum's urging* and it should therefore be bound by it. *See Crop-Maker Soil Servs.*, 881 F.2d at 440 (agreed order had res judicata effect in subsequent civil action); *cf. New Hampshire v. Maine*, 532 U.S. 742, 756 (2001) (prior consent decree given preclusive effect).

### 2.   The Plan Did Not Preserve Congoleum's Or Plaintiffs' Right To Bring Suit Against BIW.

Both Congoleum and Plaintiffs argue that the scope of the District Court's finding is limited by §11.9 of the Plan. (Dkt. 32 at 18-19; Dkt. 33 at 11-12.) This argument fails for at least two reasons. ***First***, that reading of the Plan would be contrary to the first ordering paragraph of the Confirmation Order, which ruled that "[i]f there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of the Confirmation Order shall control," with *the only exception* being §11.12 of the Plan, which is inapplicable here. (App. Ex. 2 at 59, ¶1.) Thus, having failed to carve out §11.9, the Court could not have more clearly expressed its intent that the Confirmation Order govern over §11.9 of the Plan. ***Second****,* the Court's finding and §11.9 of the Plan do not in fact conflict. A judicial finding of no liability is different and distinct from a release of otherwise enforceable claims. Indeed, because of the judicial finding, BIW had no liabilities to preserve and there were no liabilities to release. Thus, §11.9 does not apply to BIW.

### 3.   The District Court's Finding Covers Any War Time Production At The Kearny Property.

Congoleum and Plaintiffs argue that wartime products fall outside of the "Congoleum Flooring Business" and thus the Court's finding does not bar its environmental claims related to that work. (Dkt. 32 at 19-20; Dkt. 33 at 30-31.)

This sleight-of-hand inserts "products" (rather than "Business") into the definition of "Congoleum Flooring Business." The "Congoleum Flooring Business" is an umbrella term for Congoleum's historic business "headquartered continuously" in Kearny, New Jersey, regardless of the name of the particular corporate entity operating the business in a given year. (App. Ex. 1 at Ex. A, § I.L.) Based on Congoleum's cross-complaint against BIW, the *only* corporate entity operating Congoleum's business between 1924 and 1968 was Congoleum-Nairn. (Dkt. 19 at 30, ¶¶12-17.) Accordingly, as it relates to the Complaint's allegations, the scope of the Court's finding could not be clearer: BIW has no responsibility for any liabilities of Congoleum-Nairn, headquartered continuously in Kearny, New Jersey. Thus, even if Congoleum-Nairn manufactured wartime products, BIW has no responsibility for liabilities associated with those products.

BIW has established each element of res judicata as a matter of law, and thus the Court should grant BIW's Motion.

## III.    Judicial Estoppel Bars Congoleum's Cross-Claim.

BIW has established that Congoleum is attempting to prevail twice on inconsistent theories, and under controlling Supreme Court and Third Circuit precedent this Court therefore must dismiss Congoleum's Cross-Claim. (Dkt. 24-1 at 10-14.) In response, Congoleum argues: (1) such a finding is premature (Dkt. 33

at 22); (2) there is no irreconcilably inconsistency (*id*. at 19-21); and (3) it had no

bad faith (*id*. at 21-24). Each of these arguments is without merit.

### A. Courts Routinely Employ Judicial Estoppel At The Motion To Dismiss Stage To Avoid the Type of Injustice Evident Here.

Contrary to Congoleum's contention (Dkt. 33 at 22), the Third Circuit has

"recognized the intrinsic ability of courts to dismiss an offending litigant's

complaint without considering the merits of the underlying claims when such

dismissal is necessary to prevent a litigant from 'playing fast and loose with the

courts.'" *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp*., 337

F.3d 314, 319 (3d Cir. 2003) (citation omitted). The New Jersey District Court

*routinely* grants motions to dismiss on estoppel grounds with less damning

contradiction.[2] The Court need only conclude that Congoleum's present position is

inconsistent with a position formerly asserted and that "*either or both* of the

inconsistent positions [was] asserted in bad faith with the intent to play 'fast and

---

[2] The following recent judicial estoppel cases dismiss a complaint (some without even oral argument) due to bankruptcy *omissions*. *See Danise v. Saxon Mortg. Servs., Inc.*, No. CV 15-06062 (JLL), 2016 WL 7340287, at *6 (D.N.J. Dec. 19, 2016), *reconsideration denied*, 2017 WL 838799 (D.N.J. Mar. 3, 2017); *Rivet v. Office Depot, Inc.*, No. 2:12-02992 (WJM), 2015 WL 9308246, at *3 (D.N.J. Dec. 22, 2015); *Lewis v. Eberle & BCI Servs., LLC*, No. 11-4661, 2013 WL 4483529, at *1 (D.N.J. Aug. 19, 2013); *J.H. Grp., LLC v. Royal Rolling Chairs, LLC*, No. 11-1595, 2012 WL 3185933, at *1 (D.N.J. Aug. 2, 2012), *aff'd*, 523 F. App'x 922 (3d Cir. 2013); *DePasquale v. Morgan Stanley Smith Barney LLC*, No. 10-6828 (WJM-MF), 2011 WL 3703110, at *7 (D.N.J. Aug. 23, 2011). Congoleum's conduct is more egregious, as it *commissioned* the Court's finding as to BIW's lack of liability, rather than merely *omitting* a claim. *See infra* Section IV.C.

loose with the court.'" *Motley v. N.J. State Police*, 196 F.3d 160, 163-64 (3d Cir. 1999) (emphasis added). Both are present here.

**B. Congoleum's Statements Are Irreconcilably Inconsistent.**

Congoleum's illogical interpretation of its prior statements should be rejected for at least four different reasons. (Dkt. 33 at 19.)

### 1. The Plain Meaning of Congoleum's Prior Representations Includes The Environmental Liabilities At Issue Here.

Congoleum's argument ignores what Congoleum actually said and what the District Court actually found. The District Court made an explicit finding that BIW had "*no* responsibility for *any* liabilities of the Congoleum Flooring Business." (App. Ex. 2 at 47, ¶104 (emphases added).) The District Court made this very broad finding based on equally broad testimony from Congoleum's Chief Financial Officer. (App.Ex. 1, Ex. B at 6-7, ¶14(A).) The definition of "any" means "all" or "every," not "some but not all" liabilities, as Congoleum now argues. *See* "*any*," MERRIAM-WEBSTER DICTIONARY (11th ed. 2017), *available at* https://www.merriam-webster.com/dictionary/any. Congoleum should not be allowed to twist or contort the meaning of its words, *especially when understood in context*.

### 2. The Terms Of The 1986 Resilient Assignment And Century Settlement Demonstrate That Congoleum's Testimony And This Court's Finding Included Environmental Liabilities.

Congoleum argues that because asbestos liabilities supposedly "were at the heart of its Bankruptcy," when its CFO testified that BIW had "*no* responsibility

*for any* liabilities" he did not intend to include environmental liabilities. (Dkt. 33 at 19.) In support of this strained argument, Congoleum selectively and misleadingly quotes the 1986 Resilient Assignment to assert that Resilco (Congoleum's predecessor) "only assumed those liabilities 'directly related to the [Resilient] Transferred Assets as of [April 18, 1986]." (Dkt. 33 at 5 (Att.1 at 2-3).)[3] But this after-the-fact attempt to change history fails when viewed in the context of the 1986 Resilient Assignment and the Century Settlement.

**First**, when read *in full*, the 1986 Resilient Assignment provides greater— not less—certainty that the CFO's statements were as broad as the Court and BIW understood them to be. The Resilient Assignment states that Resilco (and thereby Congoleum) had "assume[d] *all liabilities* … of [Old] Congoleum … directly related to … *the business* conducted by [Old] Congoleum's Resilient Flooring Division on the date hereof, whether asserted *before* or *after* such time … known or unknown and whether absolute, accrued, contingent or otherwise." (Att.1 at 2-3 (emphasis added).) *See In re Safety-Kleen Corp.*, 380 B.R. 716, 736 (Bankr. D. Del. 2008) (where purchaser of business division assumed liabilities "with respect to **both** the Business **and** the Acquired Assets," purchaser was liable for any

---

[3] We attach the relevant Instrument of Assignment and Assumption ("**1986 Resilient Assignment**"), which Congoleum references in its Response to BIW's Motion to Dismiss and its Cross Claim. *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (documents "integral to or explicitly referred to in the complaint" may be considered on a motion to dismiss).

environmental liabilities arising from past conduct of business, even though the contaminated property was not an asset that the purchaser acquired) (emphasis added). In other words, in 1986, Congoleum acknowledged contractually exactly what its CFO later testified to and what this Court previously found in the bankruptcy: that BIW has "*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business." (App. Ex. 2 at 47, ¶104.)

*Second*, the CFO's statement must also be understood within the context of Century Insurance Company's ("**Century's**") settlement with Congoleum (the "**Settlement**"). There, Congoleum asserted that the Century policies provided coverage for: (1) asbestos Claims and (2) non-asbestos Claims "such as *environmental* and other general liability claims." (App. Ex. 1 at 4, ¶8 (emphasis added).) The Settlement required "certainty" that Century would be "released fully from … all Claims, *including non-asbestos claims*, that may be based on, or derive from, the Subject Policies." (*Id*. at 22, ¶52 (emphasis added).) In particular, the Settlement effected "the full and complete release of [Century] from any and all liability of any kind from the Congoleum Flooring Business." (*Id*., Ex. A at 2.) The unlimited scope of Century's release meant the Court could only approve the Settlement if each holder of an interest in the Century polices, including BIW, received adequate protection. *See* 11 U.S.C. §363(e). To grant that protection to BIW, Congoleum warranted to Century that BIW had "no responsibility for *any* of

16

the liabilities of the Congoleum Flooring Business" *and* importantly made that same representation to this Court. (App. Ex. 1, Ex. A at 24 (emphasis added); App. Ex. 1, Ex. B at 6-7, ¶14(A).) In this context, Congoleum's testimony cannot reasonably be interpreted as excluding environmental liabilities.

### 3.      The Policies Included BIW's Environmental Liabilities.

Casting about for ways to avoid the plain meaning of "any liabilities," Congoleum now suggests that "any liabilities" should be restricted to mean just those liabilities covered by the Century policies. (Dkt. 33 at 10, 19.) In addition, Congoleum repeatedly asserts that the Century policies would have provided no environmental coverage to BIW. Congoleum's bald assertions are contradicted by both Congoleum's admissions and the law.

*First*, although Congoleum admits that BIW had a property interest in policies where it was a named insured (Dkt. 33 at 7 n.1), it contends that BIW had no property interest in the 1965 and 1966 Comprehensive General Liability ("**CGL**") policies (*see* App.Ex. 1 at 7, ¶17) because the named insured on those polices was Congoleum-Nairn, not BIW. (Dkt. 33 at 9-10, 20.) But a court "will not deprive the surviving corporation of the protection bargained for and paid for by the [predecessor] corporation." *Lime Tree Assocs., LLC v. Burlington Ins. Co.*, No. 13-6017 (KSH), 2014 WL 6685414, at *4-5 (D.N.J. Nov. 25, 2014) (quotation omitted) ("[T]he merger here caused all rights and benefits under the [insurance]

17

Policy to be transferred to [the corporate successor]."). For this reason, the legal consequences of Congoleum's allegations—that BIW is the corporate successor to Congoleum-Nairn—is that BIW would have obtained ownership rights in *all* of the insurance policies in Congoleum-Nairn's name. (Dkt. 19 at 30, ¶17.) Thus, Congoleum's own assertion of BIW's successor liability eviscerates its argument that the relevant insurance policies had no value to BIW.

**Second**, contrary to Congoleum's contentions (Dkt. 33 at 7, 20), the 1965 and 1966 CGL policies *would have provided* coverage for pre-1960 contaminated property as alleged in Plaintiffs' Complaint (Dkt. 18 at 3-7, ¶¶10-46). The New Jersey Supreme Court has long endorsed the "continuous trigger" theory to property damage claims under CGL polices as a result of long-term environmental contamination. *Owens-Ill., Inc. v. United Ins. Co.*, 138 N.J. 437, 478-79 (1994). Under that doctrine, as explained in in *Astro Pak Co. v. Fireman's Fund Insurance Co.*, 284 N.J. Super. 491, 500-02 (App. Div. 1995), policies issued after the insured had stopped depositing waste were triggered because "the slow progression of these contaminants into the surrounding land and water *continued well after"* the landfill closed and *"[t]his exposure implicates The Hartford's policies ... even though* [the insured's] … *deposit of the pollutants may have preceded The Hartford's policies." Id.* (emphasis added).

***Third***, Congoleum suggests, incorrectly, that the Century policies had little value in terms of environmental coverage. (Dkt. 33 at 19-21.) Yet Congoleum represented during bankruptcy that the 1965 and 1966 Century policies had combined limits of $80 million. (App. Ex. 1 at 7, ¶17.) In addition, CGL policies issued before 1970 contained no form of exclusion for pollution or contamination events. *Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.,* 134 N.J. 1, 31-34 (1993) ("Foreseeing an impending increase in claims for environmentally-related losses … the insurance industry … began in 1970 the process of drafting and securing regulatory approval for the standard pollution-exclusion clause.") Thus, such policies provided valuable coverage for the costs of cleaning up contaminated waste sites, or other third-party property, and were highly valuable to policyholders. In short, Congoleum's argument that the context of its statements demonstrate that "any liabilities" does not include environmental liabilities is devoid of merit.

### 4. Congoleum's "Context" Argument Fails.

Relying on *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), Congoleum claims that the Court should not apply judicial estoppel here. (Dkt. 33 at 20.) Yet Cleveland "holds simply that where context-related legal conclusions are involved, courts must not apply presumptions [regarding an apparent inconsistency] automatically without first considering whether the …

19

plaintiff can reconcile the two apparently inconsistent *statutory* claims." *Motley*, 196 F.3d at 167 (emphasis added). Unlike *Cleveland*, there is no compelling statutory backdrop that could reconcile Congoleum's inconsistent positions. No reading of *this record* could ever reconcile (1) Congoleum's past declaration that BIW had no responsibility for any liabilities of the Congoleum Flooring Business with (2) its present statement that BIW should be held liable. Based on Congoleum's *sworn testimony*, the Court made *a finding of fact* in its Confirmation Order that is now inconsistent with alleging liability against BIW here. (App.Ex. 1, Ex. B at 6-7, ¶14(A); App.Ex. 2 at 47, ¶104.) Congoleum made irreconcilably inconsistent statements.

### C.  Congoleum Changed Positions In Bad Faith.

Having completely undercut Congoleum's strained interpretation of what it meant when it said BIW had *no* responsibility for *any* liability of the Congoleum Flooring Business, Congoleum's bad faith is readily inferred, as BIW made clear in its Motion.[4] BIW has clearly demonstrated an estoppel-worthy contradiction that

---

[4] Congoleum contends that "BIW makes no argument" about Congoleum's bad faith (Dkt. 33 at 22 & n.9), while also admitting that "BIW asks this Court ... to conclude that Congoleum has taken irreconcilably inconsistent positions in order to gain a tactical advantage." (Dkt. 33 at 21.) BIW has consistently argued that Congoleum's actions represent "exactly the sort of 'unacceptable abuse of judicial proceedings' that courts refuse to tolerate." (Dkt. 24 at 13). Additionally, BIW "need not show direct evidence of bad faith or intentional wrongdoing." *DePasquale*, 2011 WL 3703110, at *5.

entails an "aggravating factor" or "bad faith" as opposed to a "mere inconsistency." *See New Hampshire v. Maine,* 532 U.S. 742 (2001); *accord In re Armstrong World Indus., Inc.,* 432 F.3d 507, 517–18 (3d Cir. 2005); *Chao v. Roy's Constr., Inc.,* 517 F.3d 180, 186 n.5 (3d Cir. 2008). With respect to this aggravating factor (bad faith), the two salient issues are: (1) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled,"[5] and (2) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or *impose an unfair detriment on the opposing party* if not estopped." *New Hampshire,* 532 U.S. at 750-51 (emphasis added).

Here, Congoleum *explicitly asserted that BIW was not liable for the flooring business conducted at the Kearny Property* (App. Ex. 1, Ex. B at 6-7, ¶14), and then reversed course in *this action*. (Dkt. 19 at 29, 31-32, ¶¶10, 25-29.) BIW's loss of insurance rights brought about by Congoleum's statements in its bankruptcy case worked to BIW's detriment, regardless of whether, but especially because, those rights would have applied to the allegations here. BIW may not time-travel

---

[5] The "use of inconsistent positions" is the "evil" courts root out through judicial estoppel. *Scarano* v. *Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953). Statements are taken together and examined for "whether *either or both* of the inconsistent positions were asserted in bad faith." *Palcesz v. Midland Mut. Life Insc. Co.*, 87 F. Supp. 2d 409, 412 (D.N.J. 2000) (emphasis added).

back to those proceedings to make a different choice about releasing its insurance policies. Congoleum's *prior commission*—urging this Court to find that BIW had *no* liability for *any* of the liabilities of the Congoleum Flooring Business to obtain a payment for the insurance policies—and Congoleum's ultimate *success* in that commission, makes its reversal now far more egregious and obvious than cases where a party has merely *omitted* to disclose an asset, or can be said to have "a good excuse" for altering a position, such as for changed circumstances.

An evidentiary hearing would be unnecessary on these facts. *See Krystal*, 337 F.3d at 325; *supra* n.2. Congoleum has fully briefed the matter and offers no reasonable or "good excuse," nor could it. In short, Congoleum's purported eleventh-hour candor about the "true meaning" of its original statements adopted in Congoleum's Confirmation Order should be recognized as a highly suspect account given the present situation of the parties. The Bankruptcy Code requires debtors like Congoleum to file necessary declarations adequately, honestly, and in good faith. *See In re Kane*, 628 F.3d 631, 636 (3d. Cir. 2010) (citing 11 U.S.C. §521(a)(1)). No court would have sanctioned the Century Settlement if premised on something less than what was actually promised and understood in the context of those proceedings. It is only because Congoleum now faces $20 million of potential liability that it tries to disabuse the Court of their correct meaning now.

The intentional inconsistency between Congoleum's statements during

bankruptcy and its actions now is flagrant, and is exactly the type of duplicitous, "escape hatch" debtor behavior that merits the sanction of judicial estoppel. *Krystal*, 337 F.3d at 319-20. Any lesser sanction would allow Congoleum to avoid the consequences of its representations and result in a miscarriage of justice. *Id.* at 325; *Danise*, 2016 WL 7340287, at *7; *Rivet*, 2015 WL 9308246, at *4; *Royal Rolling Chairs,* 2012 WL 3185933, at *4; *DePasquale*, 2011 WL 3703110, at *6.

## IV. Equitable Estoppel Bars Congoleum's Cross-Claim.

Congoleum contends that BIW got the legal standard for equitable estoppel wrong and cannot show reasonable and detrimental reliance. Neither is true.

### A. The Legal Test For Equitable Estoppel Is Met Here.

Congoleum asserts that BIW "mischaracterizes" the legal standard for equitable estoppel (Dkt. 33 at 26 n.11), but in doing so fails to understand that there is no legal distinction between a *"representation" later denied* and a *"misrepresentation*."[6] Regardless of how the precise test is worded, Congoleum more than meets that test for almost precisely the same reason it does under the

---

[6] In fact, some of Congoleum's cited cases reflect *the same* purportedly objectionable legal standard used by BIW. *See, e.g., Willekes v. Serengeti Trading Co.*, No. 13-7498 (ES (MAH), 2016 WL 5334522, at *12 (D.N.J. Sep. 22, 2016) (for equitable estoppel, a plaintiff "must show that the alleged conduct was done, or *representation* made, intentionally *or* under such circumstances that it was both natural and probable that it would induce action." (quoting *Schweikert v. Baxter Healthcare Corp.*, No. 12-5876, 2015 WL 4578443, at *14 (D.N.J. July 29, 2015) (emphasis added)). Other cited cases apply an apparently ERISA-unique standard that requires "extraordinary circumstances." *See, e.g., Int'l Union United Auto., et al. v. Skinner Engine Co.*, 188 F.3d 130, 151 (3d Cir. 1999).

judicial estoppel inquiry. BIW need only show that Congoleum's statements—that BIW had *no* responsibility for *any* of the liabilities of the Congoleum Flooring Business—had the "both natural and probable" effect of inducing BIW (and the other insureds) to relinquish their rights to the Century insurance policies. As fully discussed in BIW's judicial estoppel arguments, *see supra* Section III.C, Congoleum's statements were *necessary* to secure the Century Settlement and BIW had every reason to believe that if it did not object to the Century Settlement it would be forever clear of *any* liability of the Congoleum Flooring Business, including the environmental liabilities at issue here. Because the "natural and probable" effect of Congoleum's statements is clear, Congoleum must not be permitted to deny them.

### B. BIW's Detrimental Reliance Was Reasonable.

Congoleum asserts several reasons why BIW cannot show detrimental reliance as a matter of law. Congoleum first asserts BIW did not "change positions."[7] That is false. BIW had a property interest in the Century policies. BIW "changed" its position by giving up those rights in exchange for the protection provided by Congoleum's statements and the Court's finding that BIW had no responsibility for any of the liabilities of the Congoleum Flooring Business. BIW's

---

[7] The absence of any true choice in *Palan v. Inovio Pharmacy, Inc.,* 653 F. App'x 97 (3d Cir. 2016), makes that case distinguishable.

*choice was made simple by* Congoleum's representations. BIW must not be faulted because the evidence appears in a nice, neat package founded on Congoleum's own assertions: Congoleum's affidavit, (App. Ex. 1, Ex. B), the Bankruptcy Court's Order Approving the Century Settlement, (App. Ex. 4), and the Confirmation Order, (App. Ex. 2). Far from conclusory assertions, BIW provided the Court with ample support to document BIW's change and the rationale for that change. (*See* Dkt. 24-1 at 6-10, 15-16, and relevant exhibits.)

Congoleum also asserts that BIW's reliance was neither reasonable nor detrimental, and had BIW done its "due diligence" it would have understood that its CFO's statements did not relieve BIW for the environmental liabilities asserted here. (Dkt. 33 at 29.) None of these assertions is correct as we demonstrate in BIW's judicial estoppel arguments. *See supra* Section III.B.  To allow Congoleum to drag BIW into this matter would eviscerate the *protection* granted to BIW upon which BIW reasonably and detrimentally relied.

Accordingly, equitable estoppel bars Congoleum's cross-claims.

## CONCLUSION

For all of the foregoing reasons, BIW respectfully requests that the Court grant its Motion and grant such other relief as may be just.

Dated:  January 29, 2018                    Respectfully submitted,

                                            *s/ Thomas R. Curtin*
                                            Thomas R. Curtin
                                            George C. Jones
                                            GRAHAM CURTIN
                                            A Professional Association
                                            4 Headquarters Plaza
                                            P.O. Box 1991
                                            Morristown, NJ 07962-1991
                                            Telephone:  (973) 292-1700
                                            Facsimile:  (973) 292-1767

                                            Catherine Steege
                                            John VanDeventer
                                            JENNER & BLOCK LLP
                                            353 N. Clark Street
                                            Chicago, IL 60654
                                            Telephone:  (312) 222-9350
                                            Facsimile: (312) 527-0484

                                            *Attorneys for Defendant*
                                            *Bath Iron Works Corporation*

26