UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DVL, INC. and DVL KEARNY HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CONGOLEUM CORPORATION and BATH IRON WORKS CORPORATION,<br><br>Defendants. | Civ. No. 17-4261 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Defendant Bath Iron Works Corporation ("BIW"), has moved to dismiss the amended complaint of the plaintiffs, DVL, Inc. and DVL Kearny Holdings, LLC (collectively, "DVL"), and the third-party complaint of defendant Congoleum Corporation ("Congoleum"). The claims made against BIW by DVL and Congoleum concern a piece of property in Kearny, New Jersey. That property, over the course of a century and a half, was allegedly subject to serious environmental damage that was recently remediated at a cost of millions of dollars. Earlier, Congoleum had participated in bankruptcy proceedings in which it settled asbestos-related personal injury claims. Based on that settlement in bankruptcy, BIW seeks dismissal of the claims against it on various grounds. All rest, to some extent, on the premise that the issues settled in the bankruptcy case encompass, or are identical to, those presented here. Because, on a motion to dismiss, I cannot conclude that this is so, I will deny BIW's motion to dismiss.

1

## I. Summary[1]

This case concerns a parcel of land located at 160–94 Passaic Avenue in Kearny (also known as Block 15, Lot 7.01). (AC ¶ 10.) DVL purchased the property around 1960. (CC ¶ 6.) It alleges that Congoleum occupied the property from the late 1880s to at least 1959. (AC ¶ 11.) There, Congoleum manufactured products for the United States military, including tent cloth, torpedoes, sandbags, camouflage netting, and synthetic leather; maintained a research and development laboratory; manufactured commercial products including linoleum and vinyl products; manufactured adhesives and waxes; used cooling water to cool finished products; and used a variety of chemicals and other materials that caused environmental damage to the property and its surroundings. (See AC ¶¶ 10–26.) These hazardous substances include polychlorinated biphenyls ("PCBs"), tertrachloroethene/ perchloroethene ("PCE"), trichloroethene ("TCE"), and poly-aromatic hydrocarbons ("PAH"), (AC ¶¶ 5, 25–26.) Congoleum allegedly dispersed contaminated dust into the air and soil of the property, spilled hazardous substances onto the floors and walls of the buildings, and allowed them to collect in floor drains and an outdoor

---

[1] For the purposes of this motion to dismiss, I assume the facts alleged in the amended complaint and the third-party complaint to be true. For ease of reference, commonly cited documents will be referred to as follows:

| | |
|---|---|
| "AC" = | Amended Complaint (ECF no. 18) |
| "CC" = | Cross-Claims [against BIW] (ECF no. 19) |
| "BIW Br." = | Memorandum of Law in Support of Motion to Dismiss Amended Complaint and Cross-Claim (ECF no. 24) |
| "DVL Br." = | Opposition to Motion to Dismiss Amended Complaint and Cross-Claim (ECF no. 32) |
| "Cong. Br." = | Brief in Opposition to Motion to Dismiss (ECF no. 33) |
| "DVL Reply" = | Reply Brief in Support of Motion to Dismiss Amended Complaint and Cross-Claim (ECF no. 36) |
| "Bankr. Order" = | Order Confirming Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of the Debtors, the Official Asbestos Claimants' Committee, the Official Committee of Bondholders for Congoleum Corporation, *et al.* and the Futures (Dated March 11, 2010) |

2

trench. (AC ¶¶ 27, 31, 34.) DVL, when it purchased this property, did not know of the prior environmental damage. (AC ¶ 41.) When DVL discovered the damage in 2015, it spent nearly $20 million in remediation costs to achieve its goal of redeveloping the area. (AC ¶¶ 6, 47.)

DVL seeks to recover damages suffered as a result of the need to remediate contamination that arose while Congoleum occupied the property. (AC ¶ 4.) The contamination includes the discharge of polychlorinated biphenyls, as known as PCBs, and other hazardous substances that have settled into the air, soil, and groundwater in and around the property. (AC ¶ 5.) DVL has brought claims against Congoleum under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, under the New Jersey Spill Compensation and Control Act ("NJ Spill Act"), N.J. Stat. § 58:10-23, *et seq.*, and under the common law for public nuisance, negligence, strict liability for abnormally dangerous activity, and unjust enrichment.

Congoleum contends that it is not the responsible party for the environmental damage at the site. It has filed a third-party complaint alleging that BIW is responsible. (*See* CC, AC.)

The corporate history of Congoleum and its relationship with BIW is quite complicated. Congoleum describes it as follows. Initially, the property had been owned and used by a predecessor of Congoleum, Congoleum-Nairn Inc. (CC ¶¶ 7, 12–16.) In 1968, Congoleum-Nairn Inc. merged with Bath Industries and became the Congoleum Corporation (sometimes referred to as "1968 Congoleum" or "Bath-Congoleum"). (CC ¶ 17.) This company was later involved in a series of transactions with certain affiliates of BIW. (CC ¶ 18.) In 1984, liabilities related to the historic operations at the property were transferred to another Congoleum Corporation (a/k/a "1984 Congoleum"). (CC ¶ 19.) In 1986, the flooring operations were transferred to a newly-formed entity known as Resilco, Inc. The liabilities for the historical operations, however, were separately transferred to Congoleum Industries, Inc. ("CII"). (CC ¶¶ 20, 26.) CII then changed its name to BIW Industries, Inc. and was merged into BIW,

taking with it any and all liabilities associated with the property and any historic operations that were conducted there (according to Congoleum). (CC ¶ 27.) Resilco changed its name to Congoleum Corporation, the entity now named in the amended complaint. (CC ¶¶ 28–29.) Congoleum alleges that, by virtue of these transactions, BIW and not itself is the successor-in-interest to liabilities associated with the property. (*See id.*)

Discussed in the briefs, but not cited in either the amended complaint or the third-party complaint against BIW, is a prior bankruptcy litigation that involved Congoleum.[2] In 2003, Congoleum filed for bankruptcy under Chapter 11. (Congo. Br. at 7.) At the time it was in a coverage dispute with its insurers, including Century, about personal injury claims against Congoleum related to asbestos-containing products. (*Id.*)[3] The insurer initially opposed the Chapter 11 reorganization efforts, but after lengthy negotiations among Congoleum, the insurer, the asbestos creditors' committee, and a future asbestos claims representative, they reached a settlement of the coverage dispute, which made it possible to confirm a plan. (*Id.*) Congoleum received $16,950,000 in cash. (*Id.* at 8.) The insurers required that that the debtors make certain representations, including representations about the responsibility of certain affiliated entities for the obligations of the Congoleum flooring business. (*Id.*) The Chief Financial Officer of Congoleum filed a declaration stating that "Bath Iron Work Corp. [and certain other entities] have no responsibility for any of the liabilities of the Congoleum Flooring Business." (BIW Br. at 8.) The joint plan of reorganization under Chapter 11 was confirmed on June 7, 2010. The order states that "the Court finds that the following Century Additional Named Insureds have no responsibility for any of the liabilities of the Congoleum Flooring Business (as

---

[2] In this overview of Congoleum's bankruptcy proceedings, I rely on the parties' briefs, which contain citations to the record of those voluminous proceedings. In the legal discussion, I will cite specifically to the record as necessary.

[3] In 1965, Congoleum (and its affiliated entities) purchased six insurance policies. (*Id.* at 6.) Those excess insurance policies ended up covering the period between 1965 and 1986. (*Id.* at 7.)

4

defined in the Century Settlement): . . . Bath Iron Works Corp." (BIW Br. at 8–9.)

According to Congoleum, however, the effect of this provision is confined to asbestos personal-injury claims, not environmental matters, and also relates to the period 1965–86. Congoleum also points to a reservation in the Plan with provides that "damages, cost recovery contribution, reimbursement and indemnity . . . under applicable Environmental Laws shall survive the Reorganization cases [and] shall not be discharged, impaired or adversely affected by this Plan." (Congo. Br. at 11.)

BIW now moves to dismiss the amended complaint and the cross-claims. Two of its grounds relate to Congoleum alone, and one relates to both DVL and Congoleum. First, BIW argues that judicial estoppel bars Congoleum's claims, because Congoleum is contradicting a position it took in the prior bankruptcy case. (BIW Br. at 10.) Second, it argues that *res judicata* bars DVL's claims in the amended complaint and BIW's cross-claims, because the bankruptcy court entered a final order with preclusive effect. (*Id.* at 14.) Third, it argues that equitable estoppel prevents Congoleum from pursuing these claims because BIW relied to its detriment on Congoleum's stated legal position in the bankruptcy case. (*Id.* at 15.)

## II. Discussion

### a. Standard of Review

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the

5

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The Court in considering a Rule 12(b)(6) motion is confined to the allegations of the complaint, with narrow exceptions:

> Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any 'undisputably authentic document that a defendant attaches as an exhibit on a motion to dismiss if the plaintiff's claims are based on the document.' *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*In re Asbestos Products Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Schmidt v. Skolas*, 770 F.3d 24, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington*, 114 F.3d at 1426).

### b. Judicial Estoppel

"The basic principle of judicial estoppel is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an

incompatible theory." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 239 (3d Cir. 2011) (quoting *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003)). There is no rigid test for judicial estoppel; instead, courts consider three factors in deciding whether it should apply: there must be (1) irreconcilably inconsistent positions that are (2) adopted in bad faith and (3) a showing that estoppel addresses the harm and lessor sanction is sufficient. *Id.* (quoting *G–I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009)); *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, n.6 (3d. Cir. 2010) ("One of the threshold requirements for judicial estoppel is a finding of bad faith on the part of the party against whom the doctrine is invoked." (citation omitted)). The Third Circuit has emphasized that judicial estoppel is an extreme remedy, "to be used only when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." *Chai v. Roy's Const., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008) (quotation marks omitted) (quoting *Krystal*, 337 F.3d at 324).

BIW argues that Congoleum's position in this case contradicts the theory it advanced in the bankruptcy case. According to BIW, "Congoleum's successful reorganization depended on the [settlement with the insurance policy providers] becoming effective—and that settlement depended on Congoleum's testimony [through the declaration of its CFO] . . . that BIW was not responsible for 'any of the liabilities' of Congoleum's Flooring Business." (BIW Br. at 12.) Congoleum's current position, says BIW, is inconsistent, because Congoleum now alleges that BIW "became the party responsible for any claims, costs or liabilities concerning the [Kearny] property." (*Id.* (quotation marks omitted).)

Whether Congoleum has acted in bad faith by adopting its current position is a fact-bound issue. It cannot be resolved on a motion to dismiss without the benefit of discovery and a developed record. Indeed, to make such a determination without the necessary factual development might constitute

7

reversible error. *See Coast Auto. Grp., Ltd. v. VW Credit Inc.*, 34 Fed. App'x 818, 824–25 (3d Cir. 2002) ("The District Court here failed to engage in the requisite analysis and make necessary findings that [plaintiff] changed its position in bad faith . . . . No finding of culpability, intentional self contradiction, or intentional wrong-doing was made."). Some estoppel issues may be sufficiently clear to permit resolution without further factual development,[4] but this is not such a case.

Here, BIW states that Congoleum has engaged in "estoppel worthy conduct" that goes beyond a "mere inconsistency." (*Id.* at 20–21.) It has not, however, put forward sufficient evidence of such bad faith. Without prejudging the matter, I note that Congoleum has made a reasonable argument that it has not in fact taken inconsistent positions. For example, Congoleum says that its disclaimer of liability in the earlier case encompassed only BIW's liability for asbestos-related personal injury claims—not all possible liability, including environmental damage to the property. Congoleum's reference to "any of the liabilities of the Congoleum Flooring Business" cannot be divorced from its context, which was the adjustment of asbestos-related personal liability claims, and insurance coverage therefor, in the bankruptcy. On this motion to dismiss, I cannot indulge an assumption that Congoleum, in bad faith, was dangling the appearance (but not the reality) of full exculpation in order to bring about the confirmation of the plan in bankruptcy.[5]

---

[4] "We have held that a district court need not always conduct an evidentiary hearing before finding the existence of bad faith for judicial estoppel purposes . . . but two precepts are nevertheless clear. First, a court considering the use of judicial estoppel should ensure that the party to be estopped has been given a meaningful opportunity to provide 'an explanation' for its changed position. Second, though a court may sometimes 'discern' bad faith without holding an evidentiary hearing, it may not do so if the ultimate finding of bad faith cannot be reached without first resolving the genuine disputes as to the underlying facts." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 n.5 (3d Cir. 2001).

[5] Indeed, as discussed in section II.c, *infra*, Congoleum points to an explicit carve-out of environmental liability from the scope of the plan of reorganization. It also claims that the policy coverage dates (1965–86) cut against BIW's position.

Judicial estoppel is an extreme remedy. I cannot conclude as a matter of law that Congoleum has engaged in bad faith that would be "tantamount to a knowing misrepresentation or even fraud on the Court." The motion to dismiss Congoleum's claims on those grounds is denied.

### c. Res Judicata

*Res judicata*, or claim preclusion, bars a party from pursuing a second suit against the same adversary based on the same cause of action. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). "A party seeking to invoke *res judicata* must establish three elements: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *McLaughlin v. Board of Trustees of Nat'l Elevator Indust. Health Benefit Plan*, 686 F. App'x 118, 121 (3d Cir. 2017) (citing *Mullarkey*, 536 F.3d at 225). Although *res judicata* is usually an affirmative defense, it may be considered on a motion to dismiss if its applicability can be determined from the face of the complaint and documents properly considered on a Rule 12(b)(6) motion. *See Ross v. Meyer*, No. 16-3127, 2018 WL 3322260, at *3 (3d Cir. July 6, 2018) (citing *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)).

Confirmation orders in bankruptcy cases, once finalized, raise the *res judicata* bar as to the parties and those in privity with them, "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009). Collateral attacks on such orders are similarly barred. *Barnard v. Verizon Comm'ns, Inc.*, 451 Fed. App'x 80, 86 (3d Cir. 2011) (citing *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 219 (3d Cir. 1999)). The Third Circuit has warned, however, that a bankruptcy case is not like a conventional civil litigation; it may theoretically encompass a plethora of claims, parties, and adversary proceedings. *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120–21 (3d Cir. 2017) (citing *E. Minerals & Chems. Co. v.*

*Mahan*, 225 F.3d 330, 337 (3d Cir. 2000)). Some care, then, must be exercised in applying *res judicata* to a confirmation order. Because "an order confirming a plan of reorganization does not bar every conceivable claim that could have been brought in the context of a bankruptcy case over which the court would have jurisdiction," courts "must look to the individual proceedings within the bankruptcy and ask whether the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." *Id.* (quotation marks omitted).

BIW again interprets the confirmation order as clearing BIW not just of asbestos personal-injury liability, but of all liabilities of the Congoleum Flooring Business. (BIW Br. at 14.) Indeed, BIW argues that this finding is binding not only upon Congoleum, but upon DVL. Congoleum responds that BIW's *res judicata* theory fails on two grounds: First, BIW was never a formal party to the bankruptcy proceedings. (Cong. Br. at 14 n.5.) Second, there is no "meaningful overlap" between the claims in this litigation and the settlement and confirmation order in the prior bankruptcy proceeding. (*Id.* at 16.) DVL similarly argues that it was not a party to the earlier proceedings, that there was no final adjudication on the merits, and that the claims in this case are substantially different from the ones in the bankruptcy proceeding. (DVL Br. at 11–20.)[6]

---

[6]     Both DVL and Congoleum argue that the court cannot consider documents from the bankruptcy case on this motion to dismiss. (BIW Reply at 2–4; DVL Br. at 10.) True, DVL's amended complaint and Congoleum's third-party complaint make no reference to those proceedings, and they are not integral to the claims. Still, the authenticity of the confirmation order is not contested, and it is considered, not for any issue of fact, but for its legal effect. Other documents on the bankruptcy docket, such as the CFO's declaration, are not properly considered for the truth of anything stated therein, but only for the fact that they exist and were filed on the docket of the bankruptcy case. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited

10

The context of the confirmation order suggests that *res judicata* does not apply to the claims made by DVL and Congoleum. At any rate, I cannot find that *res judicata* applies in the context of a motion to dismiss.

The entire context of the proceedings that led to the bankruptcy settlement and confirmation order involved multimillion dollar asbestos claims leveled against Congoleum, and related disputes over insurance coverage. (Bankr. Order at 6–9, ¶¶ 3–10.) BIW points to language in the confirmation order that "[i]n support of the Century Settlement and the Century Approval Order, the Court finds that the following Additional Named Insureds have no responsibility for *any liabilities of the Congoleum Flooring Business* (as defined in the Century Settlement): . . . [*inter alia*,] Bath Iron Works Corp." (*Id.* at 47, ¶ 104 (emphasis added)) BIW states that this exculpatory language subsumes the environmental claims made in this case. (*See* BIW Reply at 10.)

The confirmed plan itself, which is appended to the order as an exhibit, carves out environmental liability from its scope:

> Environmental rights and Claims of Governmental Units and rights and claims of injury, damages, cost recovery contribution, reimbursement and indemnity by other Entities (other than ABI) under applicable Environmental Laws shall survive the Reorganization Cases, shall not be discharged, impaired or adversely affected by the Plan and the Reorganization Cases and shall be determined in the manner and by the administrative or judicial tribunals in which such rights or Claims would have been resolved or adjudicated if the Reorganization Cases had not been commenced.

(Bankr. Order, ex. A, § 11.9.)[7] True, the order itself states that "[i]f there is any direct conflict between the terms of the Plan or any exhibit thereto and the

---

therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

[7] The order defined "Environmental Laws" as meaning "(a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et. seq.*, (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment Act of 1984, 42 U.S.C. §§ 6901, *et seq.*, (c) the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*, (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, *et seq.*,

11

terms of this Confirmation Order, the terms of the Confirmation Order shall control; provided, however, nothing shall supersede the provision of Section 11.12 of the Plan." (Bankr. Order at 59, ¶ 1.) At least for purposes of a motion to dismiss, however, I cannot find that there is such a "direct conflict." As noted above, the entire subject matter of the order's disclaimer of liability might legitimately be understood to be the asbestos claims alone, and the plan itself tends to confirm that.

The motion to dismiss on *res judicata* grounds is therefore denied.

### d. Equitable Estoppel

"The doctrine of equitable estoppel 'seeks to prevent injustice when an individual detrimentally and predictably relies on the misrepresentation of another.'" *Palan v. Inovio Pharm. Inc.*, 653 Fed. App'x 97, 100 (3d Cir. 2016) (quoting *Nagle v. Acton-Boxborough Reg'l Sch. Dist.*, 576 F.3d 1, 3 (1st Cir. 2009)). "A party seeking to invoke equitable estoppel must establish three elements: (1) a misrepresentation by another party; (2) which [the party] reasonably relied upon (3) to [the party's] detriment." *Id.* (quotation marks omitted) (quoting *United States v. Asmar*, 827 F.2d 907, 812 (3d Cir. 1987)).

BIW alleges that Congoleum represented to BIW and the court that BIW had no liability of any kind for the Congoleum flooring operations when it sought to obtain approval of the settlement in the bankruptcy proceeding. (BIW Br. at 15.) BIW states that it reasonably relied on this representation that it would not later be held responsible for liabilities that otherwise might have been covered by the settled insurance policies. (*Id.* at 15–16.) Once again, for

---

(e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, *et seq.*, (f) all statutes or laws issued or promulgated by any Governmental Unit, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control and/or the handling, discharge, existence, release, disposal or recovery of on-site or off-site hazardous, toxic or dangerous wastes, substances, chemicals or materials, and (g) the ordinances, rules, regulations, orders, notices of violation, requests, demands and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws." (Bankr. Order at 8.) This definition fits squarely with the claims made in this case.

12

the reasons stated above, the alleged representation presents issues of factual interpretation, not suitable for resolution on a motion to dismiss.

As BIW sees it, the evidence of the misrepresentations "appears in a nice, neat package" consisting of a declaration by Congoleum's Chief Financial Officer, the Bankruptcy Court's Order approving the settlement, and the Confirmation Order. (Bankr. Order; ECF no. 24, exs. 1B, 2, 4.) For the reasons expressed above, these documents may properly considered on a motion to dismiss for the fact that they were filed, and any effects that may flow from that filing as a matter of law. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."). They cannot be accepted on a motion to dismiss, however, as factual proof that Congoleum made a misrepresentation, or that BIW reasonably relied on it to its detriment.

The motion to dismiss, insofar as it is based on equitable estoppel, is therefore denied.

### III. Motion for Leave to File Surreply

Congoleum moved to file a surreply in further opposition to the motion to dismiss. (ECF no. 40.) Because I have denied the motion to dismiss without the necessity of considering the surreply, the motion is denied as moot.

### IV. Conclusion

For the foregoing reasons, I will deny BIW's motion to dismiss DVL's and Congoleum's claims and will deny as moot Congoleum's motion to file a surreply. An appropriate order follows.

Dated: August 23, 2018

**Kevin McNulty**
**United States District Judge**

13