# McElroy, Deutsch, Mulvaney & Carpenter, LLP
**ATTORNEYS AT LAW**

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

GEORGE C. JONES
Direct Dial: (973) 401-7145
gjones@mdmc-law.com

February 27, 2019

**VIA ECF AND REGULAR MAIL**

Honorable James B. Clark, III
United States Magistrate Judge
Martin Luther King, Jr. Federal Building
 and U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    *DVL, Inc. et al. v. Congoleum Corp. et al.*
              Civil Action No. 17-4261 (KM) (JBC)

Dear Judge Clark:

      Per the Court's first Pretrial Scheduling Order (Dkt. No. 42, ¶5), Defendant Bath Iron Works Corporation ("BIW") respectfully requests the entry of an Order compelling Defendant Congoleum Corporation to produce materials relating to settlements that Congoleum reached with its insurance carriers during its bankruptcy proceedings over a decade ago. Despite BIW's good faith efforts to meet and confer with Congoleum over its objections to producing these materials, Congoleum steadfastly refuses to produce them. Accordingly, BIW is compelled to seek the Court's assistance pursuant to Local Civil Rule 37.1(a).

      Congoleum's own actions have made these decade-old settlement materials highly relevant, and Congoleum cannot carry its burden to demonstrate good cause to prevent their production. Specifically, in order to survive BIW's motion to dismiss (Dkt. No. 24), Congoleum told Judge McNulty that certain sworn statements that Congoleum made to this Court during Congoleum's bankruptcy in 2006 had to be viewed in "context" of the insurance settlement, and even told Judge McNulty that discovery into that "critical context" was "required." (*See* Dkt. No. 33.) Congoleum leveraged that supposed "context" to explain away its otherwise clear statements that BIW is not liable for any of Congoleum's liabilities in Kearny, New Jersey—the primary issue between BIW and Congoleum in this lawsuit.

      But after convincing the Court that discovery was necessary to understand the "context," Congoleum now seeks to prevent BIW from discovery of that "context," claiming that the documents that would show the context in which Congoleum made the statements at issue are shielded by settlement privileges and confidentiality orders. This Court has the power to order

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 2

discovery of these withheld documents and should do so pursuant to Federal Rule of Civil Procedure 26 and as a matter of fundamental fairness.

**I.      Background**

      **A. During the motion to dismiss briefing, Congoleum put at issue the "context" of its insurance settlements and successfully argued that discovery of that "context" was needed before the Court could rule against Congoleum.**

This case began with plaintiff DVL suing defendant Congoleum for alleged environmental damage to certain property in Kearny, New Jersey. Congoleum later filed a third-party claim against BIW, claiming that any liabilities associated with the Kearny property were assumed by BIW in a series of transactions in 1986 that involved both Congoleum and BIW. (*See* Dkt. No. 24 at 1-2.) But in 2006, twenty years after this alleged assumption of liabilities, Congoleum's CFO testified under oath via sworn declaration during Congoleum's bankruptcy that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business" in Kearny. (*Id.*) BIW brought these admissions to the attention of Judge McNulty in a motion to dismiss asserting judicial estoppel, res judicata, and equitable estoppel. (*See id. generally*.) In order to avoid the plain meaning of its admissions at the motion to dismiss stage, Congoleum told Judge McNulty that its otherwise clear admissions meant something different when viewed in the "context" of the insurance settlement in which the statements were made, which would require discovery. Specifically, Congoleum represented the following:

- "To assist the Court in its **context-specific** analysis of the Bankruptcy and its relationship to this action, Congoleum provides the following recitation of relevant facts derived from various documents from the Bankruptcy ('Bankruptcy Documents') and the insurance coverage dispute settled herein (the 'Insurance Settlement')." (Dkt. No. 33 at 6, emphasis added.)

- "**[I]n exchange** for [the Settlement of Congoleum's claims], **Century required that the Congoleum Debtors make certain representations** in connection with the approval of the Insurance Settlement and in the Confirmation Order regarding . . . responsibility of certain Congoleum-affiliated entities" **which were supported by the Declaration of Howard Feist**, former CFO of Congoleum. (Dkt. No. 33 at 8.)

- "At that time, and **'[b]ased upon a review of documents'** then in Congoleum's possession, **Mr. Feist stated that he 'understood'** the following . . . (A) With respect to the Congoleum Flooring Business, Congoleum is the successor in interest . . . and is the **sole successor** in all respects with regard to coverage . . . and (B) **Bath Iron Works Corp. ha[s] no responsibility for any of the liabilities of the Congoleum Flooring Business**." (Dkt. No. 33 at 8, emphasis added.)

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 3

- "**But context is critical**.  And, when read **in context, this statement was merely meant** to convey that BIW was not responsible for the liabilities covered under the Policies. This statement was consistent with Congoleum's assumption of liabilities relating to the Transferred Assets as they existed in 1986, which included the Policies."  (Dkt. No. 33 at 10, emphasis added.)

- "Even if BIW's affirmative defenses set forth a plausible basis for denial (and they do not), **each requires the Court to resolve factual matters outside of the pleadings**, such as bad faith and reasonable reliance, which is not appropriate on a motion to dismiss." (Dkt. No. 33 at 13, emphasis added, citing cases for proposition that claim **"requires a record of facts adduced through discovery**").

- "Yet BIW asks this Court to ignore **the context of the Bankruptcy Representations**, and **without any fact-finding**, conclude that Congoleum has taken irreconcilably inconsistent positions in order to gain a tactical advantage."  (Dkt. No. 33 at 21, emphasis added.)[1]

Congoleum's insistence that its settlement-related statements needed to be viewed in "context" and through discovery were successful.  In denying BIW's motion to dismiss, Judge McNulty noted that Congoleum's statements at issue, on a motion to dismiss, "cannot be divorced from its **context**" and that "[w]hether Congoleum has acted in bad faith by adopting its current position is a fact-bound issue.  **It cannot be resolved** on a motion to dismiss **without the benefit of discovery** and a developed record."  (Dkt. No. 63 at 7, emphasis added.) Accordingly, BIW seeks to discover that context.

    **B. Congoleum is preventing BIW from discovering the "critical context" it told Judge McNulty was "required," while it continues to threaten using such "extrinsic" evidence at trial.**

---

[1] *See also* Dkt. No. 33 at 7 ("In connection with the Coverage Dispute, [insurer] Century vigorously opposed Congoleum's Chapter 11 reorganization efforts.  **Against that backdrop, and after lengthy and comprehensive negotiations** between Century, Congoleum and its affiliated debtors . . . [the parties] entered into the Insurance Settlement."), 9 (Feist's "words 'sole successor' in reference to the insurance coverage" were not "**intended to be** nor were they a declaration by Congoleum that it was the successor to those entities for purposes other than the ownership of the Policies."), 12 ("**When viewed in context** . . ."), 23 ("Indeed, **when understood in context**, Congoleum's Bankruptcy Representations were tailored to address the Coverage Dispute over Policies that have no bearing on this action"), 24 ("[I]n stating that Congoleum was the 'sole successor' with respect to coverage under the policies, **Congoleum did not intend** to suggest . . ."), 26 ("Indeed, **when understood in context,** it is clear that Congoleum merely stated **what it understood** to be true during the Bankruptcy . . . .").

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 4

In order to defend itself and to test Congoleum's representations to this Court about what it really "intended" or "understood" in its contested statements, BIW served upon Congoleum a variety of document requests, and also served subpoenas on third-parties involved in the negotiation of the settlements and drafting of the contested statements, including Mr. Feist's Declaration. Among the relevant BIW document requests are its First Set of Requests for Production Nos. 11 (seeking documents reflecting "negotiations between Century and Congoleum"), 12, 13, 14 (seeking documents relating to Congoleum's drafting of certain bankruptcy representations), 15 (seeking documents concerning the Century settlement), and 16 (seeking documents "reviewed" by Feist for his Declaration) (see attached Exhibit 1, Congoleum's Objections to BIW's First Set of Requests for Production of Documents), and BIW's Third Set of Requests for Production Nos. 2, 3, 7 (seeking among other things communications relating to insurance policy settlements), 8, 9, and 10 (see Exhibit 2, Congoleum's Objections to BIW's Third Set of Requests for Production of Documents).

Congoleum has objected to producing documents relating to the settlements (including those concerning the negotiations and discussions that led to Mr. Feist's sworn statements in support of Congoleum's settlements in the bankruptcy), telling BIW that the documents will be included on a privilege log that is due on March 15, 2019. Congoleum has pointed to four Confidentiality Orders in an effort to justify its withholding these settlement documents. (These Confidentiality Orders are discussed in more detail below.)

BIW and Congoleum met and conferred in good faith on this dispute and agreed that they are at an impasse. Specifically, so that the parties could discover the "context" Congoleum told the Court was so relevant, BIW asked Congoleum if it would join BIW (or at least not oppose BIW) in a motion for an order allowing discovery of the purportedly confidential settlement communications, but Congoleum refused. (Exhibit 3, email communications of December 31, 2018 through January 24, 2019.) Production of the responsive documents is especially relevant and critical to BIW's defense because Congoleum expressed during meet and confers that it may attempt to introduce at trial "extrinsic" evidence to the filed papers in the Bankruptcy and Coverage Actions concerning the context of its settlement agreements at issue in this motion to compel. (*See* Exhibit 3, Jan. 15, 2019 email exchange of K. Weber and W. Thomson.) In other words, Congoleum wants to have its cake (by keeping under wraps the "critical context" discovery it told Judge McNulty was "required") and eat it too (while also keeping open its option to use such evidence at trial).[2]

---

[2] *See* Exhibit 3, Jan. 15, 2019 W. Thomson email. Congoleum agreed that this dispute is "ripe" even though it suggested that BIW wait to raise it with the Court until after Congoleum provides its privilege log on March 15, 2019. (*Id.*, Jan. 24, 2019 W. Thomson email and Jan. 24 response of K. Weber.) BIW submits that the Court can and should decide this threshold matter now, which would provide all parties clarity on this area of discovery as they move forward into depositions (starting in April), and will make clear to Congoleum whether it needs to even log the relevant communications or simply produce them prior to the depositions.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 5

While it is true that many of the third-parties involved in the settlement discussions also objected to BIW's subpoenas on grounds similar to Congoleum concerning settlement discussions, they did so because Congoleum's invocation of "context" and threat of extrinsic evidence is legally without merit and would appear to be a breach of Congoleum's agreement with the insurers. For example, Century objected to BIW's subpoena and stated that among the terms in the bankruptcy settlement were "integration and non-admission clauses making all negotiations of the plan and policy buyback irrelevant and inadmissible." (Exhibit 4, Century Objections of December 10, 2018, at 2.) Accordingly,

> *Congoleum [cannot] retroactively resort to extrinsic evidence* to challenge the orders approving and implementing the settlement, policy buyback, plan of reorganization and injunctions having agreed to integration, non-admission and confidentiality clauses and bound itself to the sworn representations made by its Chief Financial Officer to the Court [i.e., Mr. Feist].

(*Id.* at 5, emphasis added.) In other words, Century (like BIW) believes Congoleum must live by the sworn statements it made to this Court during the bankruptcy (which were part of a settlement with Century), and that Congoleum may be in breach of its settlement agreement if it seeks to introduce evidence extrinsic to its agreement. But Congoleum knew those settlement-related statements were problematic for it in this case, and so it told Judge McNulty that "context" was "critical" so it could keep its lawsuit against BIW alive. Having staked out these positions, Congoleum cannot fairly prevent BIW from discovering the full context.

**C. Discovery thus far reveals that Congoleum made additional admissions in other related insurance settlements and, inevitably, in withheld materials concerning those settlements**.

The representations at issue in the motion to dismiss (discussed above) were limited to Congoleum's settlement with Century, but there are other relevant insurance settlements for which Congoleum is also withholding documents that would provide BIW necessary "context."

For example, another insurer with which Congoleum settled during the Bankruptcy was Travelers. Notably, the settlement between Congoleum and Travelers made clear that the "Coverage Dispute" included "non-asbestos claims such as *environmental*" claims. (Exhibit 5, at 4, emphasis added.) This is relevant because Congoleum told Judge McNulty in its motion to dismiss briefing that its statements about the Century settlement were limited to the "context" wherein the "settlement of asbestos liabilities was at the heart of that bankruptcy" and "expressly preserved environmental claims." (Dkt. No. 33 at 1-2.) Thus, the withheld documents concerning the Congoleum/Travelers settlement also go to the "context" of Congoleum's statements to Judge McNulty.

In another example, in answering one of the complaints in the Coverage Action (which led to the bankruptcy), Congoleum admitted (similar to statements it made in the Century

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 6

Settlement papers filed in the bankruptcy proceeding) that it "is the successor to Congoleum-Nairn, Inc. and Congoleum Industries, Inc. as well as successor to other corporations using the name Congoleum Corporation and is entitled to all the rights and benefits of the insurance contracts issued by defendants to such Congoleum predecessors."  (Exhibit 6, Congoleum Answer filed 12/21/2001, at 9.)  This is significant because Congoleum's position is that some of the relevant contamination took place while Congoleum-Nairn operated the property in Kearny and/or that Congoleum-Nairn had the liability for such contamination.  Documents concerning settlement negotiations of the policies at issue in the Coverage Action (many of which were settled in the bankruptcy) are also highly relevant because Congoleum told Judge McNulty in its motion to dismiss briefing that its statements about being the "successor" to Congoleum-Nairn in relation to the Century settlement were "limited" to the particular context of that policy.  (Dkt. No. 33 at 9.)  That clearly is not the case, as Congoleum made similar representations concerning other policies/issues in the Coverage Action.

Further, and in case there was any doubt that BIW needs discovery to understand how Congoleum is going to somehow explain the "context" of its statements in the bankruptcy, Congoleum has *denied* BIW's Requests for Admission (RFAs) in which BIW merely sought to have Congoleum admit that statements Congoleum made under oath to the bankruptcy court were "true and accurate."  For example:

> **REQUEST FOR ADMISSION NO. 4:**
>
> Admit that the following representation Congoleum made to the Court during the Congoleum Bankruptcy Proceedings was a true and accurate statement: "Congoleum is the successor in interest to the entity Congoleum-Nairn, Inc. named in Policies XBC-1838 and XBC-40971."
>
> **ANSWER:  Denied.**

(*Compare* Feist Declaration ¶ 14(A) *with* Congoleum's Response to BIW's RFAs at 5.)[3]

In short, Congoleum has clearly made highly relevant the "context" of its various settlements with insurers concerning asbestos and non-asbestos claims during the Coverage Action and bankruptcy, such that BIW should in fairness be able to discover the settlement negotiations, representations, and drafts so it can defend itself against Congoleum's spin of its own statements.

---

[3] Congoleum also denied that another sworn representation Feist made to this Court during Congoleum's bankruptcy proceedings—that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business"—was a true and accurate statement.  (*Compare* Feist Declaration ¶ 14(B) *with* Congoleum's Response to BIW's RFAs at 6.)

**M**c**E**LROY, **D**EUTSCH, **M**ULVANEY & **C**ARPENTER, LLP

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 7

**II.     The Documents Sought Are Clearly Relevant.**

As demonstrated above, Congoleum has indisputably taken the position that materials concerning "context" are relevant. Fed. R. Civ. P. 26(b)(1). In *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 528 (D.N.J. 2015), defendants moved to compel production of medical records for children allegedly impacted by certain food products. Plaintiff argued that the records were not relevant and were protected by the physician-patient privilege. The court granted the motion to compel, agreeing with defendant that plaintiff's actions had put the information "at issue" and must be disclosed. *Id.* ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation . . . . Accordingly, courts construe Rule 26 broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.") (internal quotes and citations omitted). *See also Thompson v. Real Estate Mortg. Network, Inc.*, 2017 WL 1157859, at *2 (D.N.J. Mar. 28, 2017) (affirming order to produce documents under the "liberal relevancy standard of Rule 26" where non-moving party could not show a lack of relevancy). The liberal relevancy standard of Rule 26 allows parties to discover documents even if those documents will not be admissible: "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

**III.    Congoleum Cannot Show Good Cause To Withhold The Documents.**

Congoleum is not entitled to withhold documents that speak to the "context" of statements made during the bankruptcy proceedings (including the settlements negotiation/discussions that are the "context" to those statements) based on any type of "settlement privilege," protective order, or the Federal Rules of Evidence.

  **A.  Congoleum's claims of withholding documents based on a "settlement privilege" are unsupported by law.**

Congoleum has suggested that it intends to withhold documents based on a "settlement privilege." Congress has not enacted any legislation creating a settlement privilege that would prevent the discovery sought here, and the Third Circuit has explicitly ruled that no settlement privilege exists. *See, e.g.*, *Berardino v. Prestige Mgmt. Servs., Inc.*, 2017 WL 9690965, at *2 (D.N.J. Dec. 8, 2017) (denying motion to quash subpoena that sought settlement agreement, even under a heightened standard of relevance).

  **B.  Congoleum cannot rely on Federal Rule of Evidence 408 as the basis for withholding from discovery documents created during settlement negotiations.**

Similarly, Congoleum cannot point to Federal Rule of Evidence 408 as support for withholding the requested documents. Rule 408 limits the admissibility of evidence of conduct or statements made during settlement, but as the court noted in *Berardino*, admissibility is different than discoverability. *Id.* at *5  *See also*, *In re Kane v. Manufacturers Life Ins. Co.*, 2010

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 8

WL 2178837, at *6 (D.N.J. May 26, 2010) ("[T]he settlement privilege under Federal Rule of Evidence 408 is inapplicable [to this discovery dispute], as that only relates to admissibility concerns and not discovery production."). Additionally, "[t]he policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure. . . . Therefore, a party is not allowed to use Rule 408 as a screen for curtailing his adversary's right of discovery." 2 *Weinstein's Federal Evidence* § 408.07 at 408-26 (2005). The reasoning behind Rule 408 does not apply here. BIW is not seeking settlement documents to obtain specific settlement offers sought by plaintiffs for tort claims which were resolved many years ago so it can use that information against those same plaintiffs. Rather, BIW seeks this information for the specific and discrete purpose of testing Congoleum's stated theory of "context."

**IV.    Congoleum Cannot Rely On Previously-Entered Protective Orders To Shield Itself From Its Discovery Obligations.**

Congoleum also objects to producing the materials sought based on protective orders entered *over a decade ago* in cases in which Congoleum was a party. This Court has authority to order Congoleum to produce relevant documents even if those documents are covered by prior protective orders because Congoleum cannot carry its burden to show that there continues to be good cause to protect these decade-old documents from discovery in this case.

**A.    This Court has authority to order Congoleum to produce relevant documents.**

Congoleum's attempt to withhold relevant documents based on protective orders entered into many years ago frustrates the purpose of discovery, and this Court has the authority to modify the protective orders to avoid that result. Congoleum has objected to BIW's document requests, citing four separate protective orders (two of which were entered in this Court): (1) the June 6, 2002 Confidentiality Agreement and Order entered by the Middlesex County Superior Court (NJ); (2) the June 2, 2004 Protective Order entered by the United States Bankruptcy Court for the District of New Jersey; (3) the May 30, 2006 Order for Mediation entered by the United States Bankruptcy Court for the District of New Jersey; and (4) the October 26, 2017 Diamond Alkali Superfund Site OU2 Allocation Confidentiality Agreement, entered between parties pursuant to an Administrative Settlement Agreement and Order on Consent for Remedial Design, CERCLA Docket No. 02-2016-2021.

These protective orders were entered in a New Jersey state court, the New Jersey bankruptcy court, and via an administrative settlement. Although principles of comity and courtesy exist when determining whether to modify another court's order, "[t]hese principles . . . are not absolute, and courts asked to issue discovery orders in litigation pending before them also have not shied away from doing so, even when it would modify or circumvent a discovery order by another court, if under the circumstances, such a result was considered justified." *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499-500 (D. Md. 2000).

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 9

In *Tucker*, the court set forth four different "rules of reason" to use in determining whether or not it would be justified in entering a discovery order that would have the effect of modifying an order issued by another court. Those rules include: (1) whether the protective order was essentially an agreement negotiated by the parties and then presented to the first court, rather than a situation in which the court held a full hearing on the issue; (2) the identity of the party from whom discovery is sought, and whether that party is the source of the documents; (3) whether the case in which the original protective order was issued is still pending, and if not, the burden and expense to the parties if they are required to file a new action just to seek modification of an order; and (4) whether this reviewing court can incorporate terms in a new protective order to provide similar protections as originally provided. *Id.* at 501.

Those factors weigh in favor of ordering Congoleum to produce responsive documents in this matter. First, it appears the protective orders in question were negotiated between the parties and entered with the respective courts without an evidentiary hearing on the orders, meaning "[t]here is less need for deference and comity when the order involved is really an agreement by counsel approved, almost as a ministerial act, by the court." *Tucker*, 191 F.R.D. at 501. Second, Congoleum was a producing party in all of the prior matters. Congoleum has possession and control of the requested documents, and it is "absurd . . . that a party can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case." *Id.* at 500 (citing *Carter-Wallace, Inc. v. Hartz Mountain Indus. Inc.*, 92 F.R.D. 67, 69 (S.D.N.Y. 1981) (ordering production of discovery notwithstanding a protective order issued by a different district court)). Thus, at a minimum, Congoleum should produce its own "Confidential" documents. Third, the matters in which the protective orders originated have been closed for many years. As the court noted in *Tucker*, "a practical solution militated against requiring the party seeking the documents to go back to the state court to file a new action simply to seek a modification of a discovery order in a case that was closed." *Tucker*, 191 F.R.D. at 500. *See also LeBlanc v. Broyhill*, 123 F.R.D. 527, 531 (W.D.N.C. 1988) (modifying a state court protective order to permit defendants to disclose requested documents). Fourth, Congoleum and BIW have already entered into a protective order in this matter. To the extent Congoleum continues to have concerns about maintaining confidentiality over the requested documents, those fears should be allayed by the protective order in this matter.

This Court has the authority to modify the four protective orders at issue and should do so based on the factors set forth above as well as the fact that Congoleum is relying on protective orders that no longer serve their purpose to withhold from discovery highly relevant documents in its possession that it placed at-issue.

### B. Congoleum does not have "good cause" to withhold responsive documents based on the protective orders.

Protective orders are not absolute, and when the balance of factors weighs in favor of discovery, as it does here, courts may compel production of documents even if they are subject to

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 10

a protective order. Prior to entering a protective order or confidentiality order, "good cause must be demonstrated," which "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm" are insufficient, and the "burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785-87 (3d Cir. 1994).

Good cause must exist not only at the time the court enters a protective order, but also at the time of a subsequent challenge to that protective order. If there is a request to modify the order, "the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Pansy*, 23 F.3d at 790. Courts determine whether "good cause" still exists by evaluating whether "access to protected material can be granted without harm to legitimate secrecy interests, or if no such interests exists, continued judicial protection cannot be justified." *Pansy*, 23 F.3d at 790.

Congoleum cannot satisfy the burden of showing clear and specific harm here to justify maintaining these protective orders against BIW's need for this discovery. Congoleum has no legitimate secrecy interests in the documents it is withholding (almost all of which are 8-18 years old) based on prior protective orders. Any secrecy concerns with disclosing documents relating to the bankruptcy have long ceased, as the bankruptcy concluded almost a decade ago. And BIW is only interested in seeing information that will allow it to test Congoleum's "context" argument; it is not interested in personal information concerning underlying claimants, etc.

Most importantly, however, Congoleum cannot point to the protective orders as a basis to withhold documents while *at the same time* telling the Court that the "context" of those documents is highly relevant, and discovery of the "context" is necessary. As a matter of fundamental fairness, BIW must be able to test any self-serving testimony that Congoleum adduces about the "context" of its settlement-related statements. In short, the protective orders no longer serve a valid purpose, especially in light of Congoleum's positions in this matter, and in any event Congoleum has waived any arguments to the contrary by putting the "context" at issue.

**(1) The protective orders provide mechanisms for disclosure to third parties.**

As described above, Congoleum has objected to BIW's document requests by citing four separate protective orders. Those orders contain language that make clear the parties contemplated potential future discovery of the protected materials.

a. <u>June 6, 2002 Confidentiality Agreement and Order</u>

The June 6, 2002 Confidentiality Agreement and Order (Exhibit 7) provides that "Disclosure of designated Confidential Material shall not be allowed, except . . . [i]n the event an order from a governmental entity, a court, or an arbitration tribunal requires the disclosure of

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 11

Confidential Material." (Exhibit 7, at ¶5.) The agreement does not specify which court must order disclosure of the material, signifying that an order from *any* court will suffice. Indeed, the court referenced any "court" without capitalization or specifying which type of "a court."

The June 6, 2002 Confidentiality Agreement and Order is almost two decades old. Not only did the order contemplate the eventual disclosure of materials protected as "Confidential," but good cause exists to override any privacy or confidentiality issues that may have existed at that time. (Indeed, BIW does not need to see any dollar amounts or personal information of underlying claimants and that information could be redacted if necessary.) Moreover, paragraph six of this order states: "Nothing herein shall restrict a party's use of its own Confidential Material." In other words, there is nothing preventing Congoleum from producing the materials it is withholding pursuant to this Order to the extent that it is Congoleum's "Confidential Material." This Court can, and should, order Congoleum to produce any responsive documents it is withholding based on the June 6, 2002 Confidentiality Agreement and Order.

    b. <u>June 2, 2004 Protective Order</u>

As an initial matter, the June 2, 2004 Protective Order (Exhibit 8) limits what materials are protected as "Confidential" to those that "constitute proprietary business information, trade secret, confidential research, development, or otherwise confidential commercial information." (Exhibit 8, at ¶3.) Thus, Congoleum cannot even carry its burden to show that settlement documents from 15 years ago deserve "Confidential" treatment.

Second, the Order states that it "shall not prevent any party from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders." (*Id.* at ¶ 23.) Additionally, Paragraph 22 outlines the procedure for responding to attempts to obtain these documents. Specifically, if a party receives a subpoena, it must provide notice to the other parties. (*Id.* at ¶22.) The other parties can then determine whether or not to seek a protective order with respect to the requested confidential material. *Id.* If the other parties fail to file an appropriate motion for a protective order prior to the return date listed on the subpoena, the recipient of the subpoena can produce or disclose confidential materials. *Id.* Thus, not only does the June 2, 2004 Protective Order contemplate that the United States Bankruptcy Court of the District of New Jersey would modify the order (*see id.* at ¶28), but the language of the order makes clear that the parties to the protective order understood they may be recipients of subsequent subpoenas, and requires those parties to seek additional protective orders to prevent disclosure of confidential materials. No party has sought a protective order here even though they have been on notice that BIW is seeking these documents for months; thus, Congoleum "can provide or disclose Confidential Materials." (*Id.* at ¶22.)

    c. <u>May 30, 2006 Order for Mediation</u>

The May 30, 2006 Order for Mediation (Exhibit 9) is 3-page order detailing the terms and guidelines of a mediation process rather than a traditional protective order. Congoleum cannot

# MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 12

withhold documents on the basis of a federal mediation privilege. This Court has not recognized a mediation privilege, and other federal courts have declined to create such a privilege.[4]

Even if such a privilege existed, that privilege would not be served here. BIW seeks the withheld documents in order to ascertain the "context" of Congoleum's related statements made during the bankruptcy proceedings. Those facts are independently relevant to this litigation, and are only ancillary to the underlying mediation itself.

Finally, Congoleum cannot demonstrate that it has "good cause" to maintain an order of protection over material protected by the May 30, 2006 Order for Mediation. "Good cause" must exist to protect documents "whether an order of confidentiality is granted at the discovery stage or any stage of litigation, including settlement." *Pansy*, 23 F.2d at 786. "If access to protected [material] can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified." *Id.* at 790. Congoleum has not provided any basis for why it needs to withhold this information besides the fact that the documents may at one time have been subject to a 12 year-old mediation order; nor could it in light of the fact that the parties to this current action have entered into a confidentiality agreement that would protect the documents Congoleum would produce.

### d. October 26, 2017 Confidentiality Agreement

The Diamond Alkalai superfund matter involves contamination to the lower Passaic River. Ironically, Congoleum has been aware of its potential liability for this from the EPA since at least 1998 (*see* Exhibit 10): "EPA has served a Request for Information concerning possible discharges of allegedly hazardous substances from a facility formerly owned and operated by Congoleum Corporation (or its predecessors), which facility was formerly located at

---

[4] *See, e.g.*, *In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492-93 (5th Cir. 1998) (declining to extend a federal mediation privilege because "we will not infer [a privilege] where Congress has not clearly manifested an intent to create one"); *F.D.I.C. v. White*, 76 F. Supp. 2d 736, 738 (N.D. Tex. 1999) (distinguishing between the concept of confidentiality and privilege, and declining to extend a mediation privilege "absent a clear manifestation of Congressional intent"); *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 208 (D.D.C. 2005); *see also Molina v. Lexmark International, Inc.*, 2008 WL 4447678, at *9 (C.D. Cal. Sept. 30, 2008) ("The existence of a federal common law mediation privilege is not nearly as well established as [the defendant] suggests it is. No Circuit court has ever adopted or applied such a privilege."). BIW acknowledges that the Western District of Pennsylvania (*Sheldone v. Pennsylvania Tpk. Comm'n*, 104 F. Supp. 2d 511, 514 (W.D. Pa. 2000)) has recognized a federal mediation privilege. However, the District of New Jersey has declined to evaluate whether such a privilege exists (*see New Jersey Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, 2017 WL 498710 at *3 (D.N.J. Feb. 7, 2017)), and the Third Circuit is silent on the matter.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 13

195 Belgrove Drive, Kearny, New Jersey"), and has been actively involved in the allocation process without providing BIW notice that it is purportedly the liable party. Indeed, BIW had no involvement in this superfund until the summer of 2018 when BIW was sued, ostensibly for being the successor for the Kearny property. (*See Occidental Chemical Corporation v. 21st Century Fox America, Inc., et al.*, Case Number 2:18-CV-11273-JLL-JAD (D.N.J.).) In other words, while Congoleum was actively involved in this superfund as the potentially responsible party for the Kearny, New Jersey property for over 16 years, BIW was dragged into the litigation only *after* Congoleum alleged in this lawsuit in 2017 that BIW was the "real" successor in interest. It is fundamentally unfair that Congoleum can suggest BIW is responsible for Kearny while on the other hand participating in a confidential process relating to the same property and without allowing BIW access to those documents. BIW must be allowed access to these documents to show Congoleum is once again making representations that contradict its representations to this Court.

Moreover, the October 26, 2017 Diamond Alkali Superfund Site OU2 Allocation Confidentiality Agreement (Exhibit 11) contemplates disclosure of any otherwise protected materials when "required by law." Specifically, the Order states that the allocation process shall be kept confidential, "except . . . with the consent of the Participants to this dispute, or as required by law to be made public." (Exhibit 11, at 2.) Here, BIW is seeking something less than making the information public. BIW seeks an order that would make disclosure "required by law," but those materials would be governed by the existing protective orders of this litigation involving Congoleum and BIW. (And, as stated above, BIW does not need to see communications from the mediator, for example, as BIW is primarily concerned with Congoleum's representations.) To the extent Congoleum is withholding responsive documents due to the October 26, 2017 Confidentiality Agreement, BIW requests that this Court require Congoleum to disclose those documents.

**V.      Conclusion**

BIW respectfully requests that this Court enter an order that Congoleum is not permitted to withhold documents in this matter on any of these following bases: (1) the June 6, 2002 Confidentiality Agreement and Order entered by the Middlesex County Superior Court; (2) the June 2, 2004 Protective Order entered by the United States Bankruptcy Court of the District of New Jersey; (3) the May 30, 2006 Order for Mediation entered by the United States Bankruptcy Court of the District of New Jersey; and (4) the October 26, 2017 Diamond Alkali Superfund Site OU2 Allocation Confidentiality Agreement.

In the alternative, BIW requests the Court enter an order that Congoleum is not permitted to withhold documents on whichever of the above listed four documents the Court finds Congoleum has not established good cause.

Finally, BIW also respectfully requests the opportunity to reply to Congoleum's response to this letter.

**McElroy, Deutsch, Mulvaney & Carpenter, llp**

Hon. James B. Clark, III, U.S.M.J.
February 27, 2019
Page 14

Respectfully yours,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

*/s/ George C. Jones/*

George C. Jones

Attachments
cc:     All counsel (by ECF and e-mail)