# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DVL, INC. and DVL KEARNY: HOLDINGS, LLC, | : | Civil Action No. 17-4261 (KM) (JBC) |
| Plaintiffs, | : | |
| v. | : | |
| CONGOLEUM CORPORATION and BATH IRON WORKS CORPORATION, | : | **Motion Returnable: July 15, 2019** |
| Defendants. | : | **ORAL ARGUMENT REQUESTED** |

## BATH IRON WORKS CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF "SETTLEMENT" DOCUMENTS

Thomas R. Curtin
George C. Jones
McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey
(973) 993-8100

Michael A. Doornweerd (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Defendant*
*Bath Iron Works Corporation*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

LEGAL ARGUMENT.............................................................................................4

I.      The Withheld Settlement Documents Are Highly Relevant.................................4

II.     Congoleum Should Produce The Withheld Documents If It Is Allowed To
        Introduce Extrinsic Evidence Because BIW Needs To Be Able To Test Any
        Potential Extrinsic Evidence Congoleum Seeks To Introduce At Trial. ...........................5

        A.      Contrary to Congoleum's Representations, the Statements in the Feist
                Declaration that Congoleum is the Successor to Flooring Business
                Liabilities were not Specific to the Century Settlement Context and
                Insurance Policies. ...................................................................6

        B.      Contrary to Congoleum's Arguments, the Feist Declaration Statements
                Were Not Limited to Historic Asbestos Liabilities, But Also Related to
                Environmental Claims. ..............................................................7

        C.      Congoleum's Made-For-Litigation Excuses for its Previous
                Representations Admitting its Successorship to Historic Liabilities are
                Neither True Nor Sufficient to Justify Withholding Relevant Documents...........10

III.    Congoleum's Position That It Can Withhold Settlement Documents And Instruct
        Witnesses Not To Answer Factual Questions Concerning The Settlements, While
        Still Preserving For Itself The Right To Introduce "Extrinsic" Evidence
        Concerning The Settlements, Is Unfair And Untenable. .............................................11

IV.     This Court Has Authority To Grant BIW's Motion To Compel Notwithstanding
        Congoleum's Claims Of "Privilege" And The Confidentiality Orders Of Other
        Courts............................................................................................13

CONCLUSION........................................................................................................20

# **TABLE OF AUTHORITIES**

**CASES CITED**                                                                                   **Pages**

*Abel v. Mylan, Inc.*,
   No. 09–CV–0650–CVE–PJC, 2010 WL 3910141 (N.D. Okla. Oct. 4, 2010) ................. 19-20

*Berardino v. Prestige Mgmt. Servs., Inc.*,
   2:14-cv-3451, 2017 WL 9690965 (D.N.J. Dec. 8, 2017) ....................................................13

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
   No. 07-CV-3770 (DMC), 2010 WL 11570123 (D.N.J. May 13, 2010) ...................................5

*F.D.I.C. v. White*,
   76 F. Supp. 2d 736 (N.D. Tex. 1999) ................................................................................16n.

*Franklin United Methodist Home, Inc. v. Lancaster Pollard & Co.*,
   909 F. Supp. 2d 1037 (S.D. Ind. 2012) ...............................................................................19

*In re Grand Jury Subpoena Dated Dec. 17, 1996*,
   148 F.3d 487 (5th Cir. 1998) ............................................................................................16n.

*In re Subpoena Issued to Commodity Futures Trading Comm'n*,
   370 F. Supp. 2d 201 (D.D.C. 2005) ....................................................................................16

*Key Pharm., Inc. v. ESI-Lederle, Inc.*,
   No. CIV. A. 96–1219, 1997 WL 560131 (E.D. Pa. Aug. 29, 1997)........................................4

*LeBlanc v. Broyhill*,
   123 F.R.D. 527 (W.D.N.C. 1988) ...................................................................................19, 20

*Light v. Granatall*,
   171 N.J. Super. 557 (App. Div. 1979) .................................................................................19

*Lo Bosco v. Kure Eng'g Ltd.*,
   891 F. Supp. 1035 (D.N.J. 1995) ......................................................................................14n.

*Molina v. Lexmark International, Inc.*,
   No. CV 08-04796, 2008 WL 4447678 (C.D. Cal. Sept. 30, 2008).....................................16n.

*New Jersey Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*,
   No. 98-CV-4781, 2017 WL 498710 (D.N.J. Feb. 7, 2017) ...............................................16n.

*Sheldone v. Pennsylvania Tpk. Comm'n*,
   104 F. Supp. 2d 511 (W.D. Pa. 2000)...............................................................................16n.

*Spotted Cat, LLC v. Bass*,
   No. 13–6100, 2014 WL 5209943 (E.D. La. 2014) .................................................................5

*State Nat'l Ins. Co. v. Cty. of Camden*,
 No. CV 08-5128, 2011 WL 13079217 (D.N.J. Apr. 28, 2011) ...............................................13

*Tucker v. Ohtsu Tire & Rubber Co.*,
 191 F.R.D. 495 (D. Md. 2000).................................................................................18, 19, 20

## RULES CITED

Fed. R. Civ. P. 26 ...........................................................................................................4, 13

Fed. R. Evid. 408 ...................................................................................................12n., 13, 14

Defendant Bath Iron Works Corporation ("BIW") respectfully submits this brief in support of its Motion to Compel Production of Settlement Documents ("Motion") withheld by Defendant Congoleum Corporation ("Congoleum").

## INTRODUCTION

By this motion, BIW seeks the disclosure of 613 documents that Congoleum is withholding based on (1) a "settlement privilege," which is not recognized in the Third Circuit, and (2) four protective orders, which do not prohibit disclosure of the requested documents. These documents relate to settlements that Congoleum reached with its insurers during its bankruptcy over a decade ago, which BIW requested because Congoleum told this Court that discovery of their "context" was "required." Accordingly, BIW requests either (a) an order compelling Congoleum to produce the requested documents or (b) an order barring Congoleum from introducing extrinsic evidence at trial concerning the context of those settlements in light of Congoleum's failure to produce responsive extrinsic evidence during discovery.

## BACKGROUND

Congoleum, a manufacturer of resilient flooring based in New Jersey, and BIW, a shipbuilder based in Maine, once were owned by a common corporate parent, before it spun off those businesses (and others) to separate buyers in a series of transactions in 1986. In those 1986 transactions that spun off the flooring business (the "1986 Agreement"), Defendant Congoleum was assigned the assets of the historic flooring business and assumed the liabilities of the historic flooring business, including all flooring business liabilities that were "unknown" at the time of the transaction. It also agreed to indemnify all other formerly related entities, including BIW, against any liability of the flooring business.

Discovery to date shows that Defendant Congoleum—for years after the 1986 Agreement—took the position that it was the successor to the historic flooring operations of the

1

predecessor Congoleum entities that operated facilities and were headquartered in Kearny, New Jersey, before 1960.  In addition, discovery demonstrates that Congoleum used the historic insurance policies of the flooring business that it obtained in the 1986 Agreement to cover the historic environmental liabilities of the flooring business, including at the former manufacturing facilities in Kearny.

In particular, during its bankruptcy in 2006, Congoleum's then-Chief Financial Officer, Howard Feist, testified via sworn declaration ("Feist Declaration") that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business" in Kearny, and that, with respect to the Congoleum Flooring Business, "Congoleum is the successor in interest."  (Dkt. No. 33 at 8.) The purpose of the Feist Declaration was to obtain millions in insurance proceeds for Congoleum from Century Indemnity ("Century"), the insurer for the policies.  The Feist Declaration was necessary because BIW was also a named insured on certain Century policies.

Years passed.  In 2016, DVL sued Congoleum based on alleged contamination of the DVL parcel, part of the former Congoleum flooring facility in Kearny.[1]  Congoleum brought in BIW (and DVL followed suit) on the theory that BIW—and not Congoleum—was the successor to any Kearny environmental liabilities.  (*See* Dkt. No. 24 at 1-2.)  BIW brought the Feist Declaration admissions to the attention of Judge McNulty in a motion to dismiss asserting judicial estoppel, res judicata, and equitable estoppel.  (Dkt. No. 33 at 8.)

In order to avoid the plain meaning of the Feist Declaration at the motion to dismiss stage, Congoleum told Judge McNulty that its clear admissions meant something different when viewed

---

[1] The DVL parcel, which was sold in or around 1960 to DVL, represents an approximately eight acre portion of the approximately 60 acre property that contained Congoleum's operations in Kearny.  To be clear, the liabilities of the entire 60 acres are at issue in this case because Congoleum moved to consolidate its claims relating to that entire property and brought counterclaims relating to the entire property.  (*See* Dkt. No. 115.)

in the "context" of the insurance settlement in which the statements were made, and that Mr. Feist

was referring to Congoleum's asbestos liabilities and not the kind of environmental liabilities that

exist in this case. (Dkt. No. 33 at 13, 25.) Congoleum went so far as to argue that discovery into

the "critical context" of those settlements was "require[d]." (*Id*.) Congoleum's insistence that its

settlement-related statements need to be viewed in "context" and through discovery were

successful in avoiding dismissal.[2] (*See* Dkt. Nos. 33, 63, 64.)

Accordingly, BIW requested documents of Congoleum and served a subpoena on the

Dughi Hewit law firm, which has represented Congoleum in connection with its historic Kearny

environmental liabilities since the 1990s.[3] Specifically, BIW seeks documents that would reflect

the context of the Feist Declaration and the other bankruptcy settlements, including whether those

settlements were limited to asbestos, as Congoleum contends, or whether they relate to all claims

including environmental.

Congoleum seeks to withhold responsive documents yet retain the prerogative to introduce

self-serving evidence at trial of "context" that cannot fairly be tested without disclosure to BIW of

documents Congoleum is withholding. Because the discovery sought is highly relevant, and no

good reason exists to prevent it, BIW's motion should be granted.[4]

---

[2] The Court ruled that Feist's Declaration, on a motion to dismiss, "cannot be divorced from its context" and that "[w]hether Congoleum has acted in bad faith by adopting its current position is a fact-bound issue. It cannot be resolved on a motion to dismiss without the benefit of discovery and a developed record." (Dkt. No. 63 at 7.)

[3] Although Dughi Hewitt has produced via Congoleum some of the responsive documents, many (over 100 boxes) remain outstanding and Congoleum is refusing to even review them while this Motion is pending. By this Motion, BIW also requests that Congoleum be ordered to promptly review those documents so they can be used in the quickly shrinking fact discovery period.

[4] BIW initially filed a letter motion to compel settlement documents on February 27, 2019. (Dkt. No. 90.) After further briefing (see Dkt. Nos. 95-100), on May 28, 2019, the Court ordered BIW to submit the current, formal motion (Dkt. No. 110). BIW does not seek to incorporate any previous filings by reference, but cites to a few positions taken by Congoleum before this Court.

## LEGAL ARGUMENT

**I.     The Withheld Settlement Documents Are Highly Relevant.**

The relevance standard for discovery of settlement-related documents "switch[es] the burden of proof from the party in opposition to the discovery to the party seeking the information" and requires the movant to show the documents are relevant. *See, e.g.*, *Key Pharm., Inc. v. ESI-Lederle, Inc.*, No. CIV. A. 96–1219, 1997 WL 560131, at *2-3 (E.D. Pa. Aug. 29, 1997).  But, beside the burden shift, courts apply the same relevancy standard as required by Federal Rule of Civil Procedure 26.  *See id.* (movant established relevancy of settlement agreement because it claimed it would show a pattern of behavior by the plaintiff that was relevant in the current action). BIW clearly meets the initial burden, and Congoleum cannot show that the withheld documents are not relevant.

The withheld documents are relevant because Congoleum explicitly told Judge McNulty that the context of the Feist Declaration was "critical" and "require[d]" discovery, including through the following examples:

- "[I]n exchange for [the Settlement of Congoleum's claims], Century required that the Congoleum Debtors make certain representations in connection with the approval of the Insurance Settlement and in the Confirmation Order regarding . . . responsibility of certain Congoleum-affiliated entities" that were supported by the Feist Declaration.  (Dkt. No. 33 at 8.)

- "But **context is critical**.  And, when read in **context**, this statement was merely meant to convey that BIW was not responsible for the liabilities covered under the Policies.  This statement was consistent with Congoleum's assumption of liabilities relating to the Transferred Assets as they existed in 1986, which included the Policies."  (Dkt. No. 33 at 10, emphasis added.)

- "Even if BIW's affirmative defenses set forth a plausible basis for denial (and they do not), each **requires** the Court to resolve factual matters outside of the pleadings, such as bad faith and reasonable reliance, which is not appropriate on a motion to dismiss."  (Dkt. No. 33 at 13, emphasis added, citing cases for proposition that claim "**requires a record of facts adduced through discovery**.")

4

- "Yet BIW asks this Court to ignore the **context** of the Bankruptcy Representations, and **without any fact-finding**, conclude that Congoleum has taken irreconcilably inconsistent positions in order to gain a tactical advantage." (Dkt. No. 33 at 21, emphasis added.)

In response to BIW's seeking the withheld documents, Congoleum switches the position it advanced at the motion to dismiss stage and argues that the settlement agreements are "unambiguous" and thus the only "context" that BIW needs in discovery is the "settlement agreements themselves . . . and the documents regarding their negotiation—which cannot be admissible—should not be produced." (Dkt. No. 96 at 11.) Yet when BIW asked Congoleum to stipulate to this position—and commit that it would elicit no evidence relating to the context of the bankruptcy settlements beyond the agreements themselves—Congoleum refused. (Jones Decl., Ex. 1.) Congoleum cannot have it both ways. The Court should either order production of the documents now or bar Congoleum from introducing "context" evidence later. This Court has wide discretion to rule on discovery and evidentiary issues, and evidence is frequently excluded when not produced in discovery or when witnesses refuse to answer questions in depositions. *See, e.g., Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-CV-3770 (DMC), 2010 WL 11570123, at *5 (D.N.J. May 13, 2010) (party "precluded from introducing any evidence that was not produced"); *Spotted Cat, LLC v. Bass*, No. 13–6100, 2014 WL 5209943, at *5 (E.D. La. 2014) (excluding evidence not produced during discovery).

## II.     Congoleum Should Produce The Withheld Documents If It Is Allowed To Introduce Extrinsic Evidence Because BIW Needs To Be Able To Test Any Potential Extrinsic Evidence Congoleum Seeks To Introduce At Trial.

Discovery to date has demonstrated that Congoleum misrepresented the "context" of its bankruptcy settlements, and production of the withheld documents is calculated to lead to additional evidence concerning the true nature of Congoleum's bankruptcy settlements, which is relevant because Congoleum apparently intends to offer extrinsic evidence of "context."

**A. Contrary to Congoleum's Representations, the Statements in the Feist Declaration that Congoleum is the Successor to Flooring Business Liabilities were not Specific to the Century Settlement Context and Insurance Policies.**

In this case, Congoleum claims that it only came into existence in 1986, is not the successor to *any* predecessor resilient flooring companies that previously operated in Kearny (including Congoleum-Nairn), and argues that Mr. Feist's contrary statements in "context" were unique to the specific bankruptcy settlement and insurance policies with Century:

- Feist's "words 'sole successor' in reference to the insurance coverage" were not "intended to be nor were they a declaration by Congoleum that it was the successor to those entities for purposes other than the ownership of the Policies."

- "Indeed, when understood in **context**, Congoleum's Bankruptcy Representations were tailored to address the Coverage Dispute over Policies that have no bearing on this action."

(Dkt. No. 33 at 9, 24, emphasis added; *see also* Jones Decl., Exs. 5, 8.[5])  But recent discovery has shown that Congoleum repeatedly represented that it was the successor to the historic liabilities of the Kearny facility over an extended period of time—including to other courts in 2002 and 2003, to its own auditors in 2006 through 2008, to the United States Environmental Protection Agency ("EPA") as far back as 1998, and even to the investing public in 2007, when Congoleum was a public company.  For example:

- In a 2002 insurance coverage action in New Jersey Superior Court that preceded Congoleum's bankruptcy (the "Coverage Action"), Congoleum admitted it "**is the successor to Congoleum-Nairn, Inc. and Congoleum Industries, Inc. as well as successor to other corporations using the name Congoleum Corporation**").  (Jones Decl., Ex. 2 ¶ 6, CONG_0340510-11.)

  - Feist admitted during his May 2019 deposition in this Action that this representation was true.  (Jones Decl., Ex. 3 at 63:11-64:16.)

- In a 2007 letter to Congoleum's auditors, Congoleum referenced a 1996 inquiry from the

---

[5] June 14, 2019 Congoleum Counterclaim ¶ 7: "The entity now known as Congoleum Corporation and identified by DVL in their Complaint was created in 1986.  This relatively new entity is *wholly separate and distinct from the entities with the same or similar names* that owned and/or operated the DVL Parcel prior to DVL's purchase in 1960."  (Jones Decl., Ex. 5, emphasis added.)

EPA concerning "possible discharges from Congoleum's former Kearny, New Jersey plant into the Passaic River." (*Id.* at 188:19-191:17, and Jones Decl., Ex. 4.)  In discussing that potential environmental liability concerning Kearny with its auditors, Congoleum wrote, "**Congoleum owned and operated a manufacturing facility at the Kearny site from the late 1880's** to the early or mid-1970's and maintained administrative offices in a small laboratory at the site until the mid-1980's." (Jones Decl., Ex. 3 at 188:19-191:17, emphasis added, quoting Jones Decl., Ex. 4.)

- o Feist admitted in his May 2019 deposition that this admission to Congoleum auditors was "not in the context of specific insurance policies." (Jones Decl., Ex. 3 at 188:19-191:17.)

- In a 2009 declaration to the bankruptcy court, Mr. Feist admitted that "**Congoleum** was incorporated in Delaware in 1986 but **traces its corporate history back to the Nairn Linoleum Company which commenced operations in 1886**." (*Id.* at 191:18-194:8, emphasis added.)

- o Feist admitted in his May 2019 deposition that this language was "verbatim" from "numerous" Congoleum 10-Ks during his time as CFO of Congoleum when it was a public company (including 2003-2010). (*Id.* at 193:1-193:23; 14:23-15:3.)

- In the hearing on Congoleum's motion for approval of the Century settlement, Congoleum attorneys told the bankruptcy court the following:  "**After a great deal of due diligence there is no question in my client's mind that we are the successor, the company that is now called Congoleum is the successor to all of the flooring business that had been run by predecessors**.  We've given that representation to Century in this agreement." (Jones Decl., Ex. 6 at 51:3-51:14.)

Given these admissions—that Congoleum is in fact the successor to the historic liabilities of the Kearny facility—it is no wonder that Congoleum seeks to keep additional documents relating to the insurance settlements, in which Congoleum sold the insurance policies that covered the historic flooring liabilities, including those relating to the Kearny facility, from BIW and the Court.  BIW submits that the withheld communications are highly relevant as they will further prove Congoleum made false assertions to the Court about the "context," and reveal additional admissions.

    **B. Contrary to Congoleum's Arguments, the Feist Declaration Statements Were Not Limited to Historic Asbestos Liabilities, But Also Related to Environmental Claims.**

Congoleum next claims that Mr. Feist's representations had nothing to do with environmental matters, but related only to asbestos matters:

- The Feist statements about the Century settlement were limited to the "**context**" wherein the "settlement of asbestos liabilities was at the heart of that bankruptcy" and "expressly preserved environmental claims." (Dkt. No. 33 at 1-2, emphasis added.)

- "There were tens of thousands of documents exchanged in the coverage litigation (related to asbestos product liability—**not environmental liability**), all of which are protected by the June 2002 Order." (Dkt. No. 95 at 3, emphasis added.)

- "[The] bankruptcy and insurance coverage settlement [] related to **asbestos product-line liability—not environmental liability** for alleged property damage." (Dkt. No. 95 at 8, emphasis in original.)

So, according to Congoleum, "The discovery BIW seeks is not reasonably calculated to lead to the discovery of admissible evidence regarding the successor for the **environmental liabilities**." (Dkt. No. 95 at 9.)

But recent discovery shows that Congoleum's position is false, and that environmental claims *were* in dispute between Century and Congoleum at the time of their settlement and the Feist Declaration:

- In the Coverage Action, Congoleum expressly demanded insurance coverage for environmental liabilities, including Kearny (Passaic River) based on the assets transferred to it under the 1986 Agreement. (*See* Jones Decl., Ex. 2 ¶¶ 8, 29.)

- Feist testified in his May 2019 deposition that the Coverage Action, Congoleum's bankruptcy, and the Century settlement all involved environmental claims.

  o The Coverage Action and bankruptcy were "largely intertwined" (Jones Decl., Ex. 3 at 57:17-25), Congoleum brought its "disputes for environmental liabilities into the coverage action" (including concerning the Passaic) (*id.* at 60:17-61:1, 68:8-70:16), Century and Congoleum exchanged in 2006 emails currently withheld as "settlement" documents by Congoleum concerning "environmental exposure"[6] and

---

[6] Congoleum's privilege log includes numerous entries, withheld solely on the basis of a protective order, that relate to Congoleum's statements to the bankruptcy court. (*See* Jones Decl., Ex. 7.) For example, Congoleum has withheld Entry 1763, a November 20, 2005 email to Mr. Feist with the subject line: "FW: Congoleum: Environmental exposure site info for Century." (*Id.*) This document is clearly relevant to key issues of this litigation, namely, which corporate entity is liable

"negotiated for [Congoleum's] environmental rights to be extinguished" (*id.* at 109:4-111:16.)

- The very motion attaching the Feist Declaration discussed environmental liabilities.

  o Feist admitted that in Congoleum's own motion seeking approval of its settlement agreement with Century, it acknowledged that the Coverage Action included "non-asbestos claims such as environmental claims," and that Century represented to the bankruptcy court that it would only agree to the settlement if it had certainty that Century would have injunctive relief against all claims going forward, including environmental claims.  (Jones Decl., Ex. 3 at 132:1-134:16; 136:8-137:4.)

- The critical admissions in the Feist Declaration also included environmental liabilities.

  o Feist admitted that Congoleum warranted in its settlement agreement with Century that Bath Iron Works Corp. had no "liabilities of the Congoleum Flooring Business" including "environmental liabilities" of the Congoleum Flooring Business.  (*Id.* at 169:24-170:24.)[7]

- Congoleum's lawyers said as much to the bankruptcy court during a hearing on the Century Settlement.  Citing legal authority, Congoleum's counsel represented to the court that: "[i]t's very clear that insurance policies, **not just the asbestos parts of them, but all of the insurance policies are property of the estate** and as such can be sold… They wanted a complete policy buy back of all their liabilities, which I think is within their right to bargain for and our right to grant…"  (Jones Decl., Ex. 6 at 52:11-53:14, emphasis added.)

Again, this demonstrates that the pursuit of the withheld communications is calculated to lead to admissible evidence to rebut Congoleum's "context" argument, and that more admissions about the environmental liabilities at the heart of the current lawsuit are likely being withheld.

---

for environmental contamination at the Kearny Property, and appears to entail discussions of that issue with Century prior to Mr. Feist's Declaration for the Century settlement.  (*See id.*)  Entries 511 and 2119 are emails involving Mr. Feist regarding settlement discussions with Century.  (*See id.*)

[7] Feist's Declaration and Congoleum's lawyer representations of successorship detailed herein were required to give comfort to the bankruptcy judge that Congoleum properly had the policies that it wanted to cash out, and to give the bankruptcy judge and the other named insureds previously affiliated with Congoleum comfort that no party other than Congoleum had any liabilities for the flooring business and, so, were not adversely impacted by the settlements. Because Congoleum executed a "buy-back" settlement of the Century policy and other insurance policies, BIW is prejudiced in that it could not receive coverage if it is somehow deemed to be the successor to the Kearny liabilities at stake in this litigation.  (*See* Dkt. No. 24 at 6.)

**C. Congoleum's Made-For-Litigation Excuses for its Previous Representations Admitting its Successorship to Historic Liabilities are Neither True Nor Sufficient to Justify Withholding Relevant Documents.**

Given how damaging its numerous previous statements are to Congoleum's current litigation position, Congoleum advances the *post hoc* excuse that it somehow did not realize it was not the successor to the historic liabilities of the Kearny facility until this litigation—some 30 years after the 1986 transaction. (*See, e.g.,* Jones Decl., Ex. 8, an April 17, 2019 letter from Dughi Hewit to the EPA, in which Congoleum claims that it only "recently" obtained the 1986 Agreement, implying it did not previously know of its content; Dkt. No. 33 at 8, in which Congoleum suggested to Judge McNulty that Feist's damaging Declaration was only based on what he "understood" from "'a review of documents' *then in Congoleum's possession*." (emphasis added).)

Recent discovery has shown that Congoleum possessed the documents comprising the 1986 Agreement at all times, and had engaged in significant due diligence confirming that it was the successor to the historic flooring operations/liabilities in Kearny at the time of its bankruptcy and the settlements at issue in this Motion. At his May 2019 deposition, Mr. Feist testified that he had copies of the 1986 Agreement (which Congoleum acknowledges determine successorship in this dispute) in his office from 1986 to 2012, a time period that includes the years when *all of the above statements* were made by Congoleum to the courts and EPA, and that he was not missing any important documents when he made the Declaration. (Jones Decl., Ex. 3 at 176:5-177:20.) Mr. Feist also confirmed that he was the primary liaison to Congoleum's outside attorneys who were representing the company before the EPA and the bankruptcy court (*id.*), so those attorneys knew that information as well. Indeed, Congoleum's privilege log in this case confirms that Mr. Feist and Congoleum's attorneys reviewed Congoleum's corporate history closely and over many months. (*See* Jones Decl., Ex. 7 at 52, 62, 139; Jones Decl., Ex. 3 at 99:14-100:8; 102:21-107:12.) Congoleum's lawyers expressly represented as much to the Court in connection with the approval

of the Century settlement:  "After **a great deal of due diligence** there is **no question in my client's mind** that **we are the successor**, the company that is now called **Congoleum is the successor to all of the flooring business that had been run by predecessors**."  (Jones Decl., Ex. 6 at 51.) Congoleum's counsel went on to assure the bankruptcy court that "[w]e've given that representation to Century in this agreement" and that Congoleum gave notice of that representation to "Bath Ironworks at one, two, three, three different addresses."  (*Id*.)[8]

Accordingly, the excuse that Congoleum did not know what it was talking about when it admitted that it was the successor to the historic liabilities of the Kearny facility is a made-for-litigation excuse that does not withstand scrutiny and is insufficient to justify withholding the documents at issue.

### III.   Congoleum's Position That It Can Withhold Settlement Documents And Instruct Witnesses Not To Answer Factual Questions Concerning The Settlements, While Still Preserving For Itself The Right To Introduce "Extrinsic" Evidence Concerning The Settlements, Is Unfair And Untenable.

Prior to depositions in the matter, BIW tried to resolve this dispute by requesting that Congoleum confirm that it would not elicit testimony regarding the "context" of the settlements (given that Congoleum represented to this Court that the Century settlement agreement was "unambiguous" and was "all the additional context BIW" needed), but Congoleum refused and maintained that it can still elicit testimony regarding the intent and purpose of the settlements. (Jones Decl., Exs. 1, 9.)  Congoleum has also invoked the "settlement privilege" during BIW

---

[8] The revised April 2019 statement Congoleum made to the EPA, which is similar to Congoleum's position to the Court in this matter, is made all the more questionable by other facts that have come out in recent discovery.  Most notably, the same Congoleum attorneys who submitted the April 2019 EPA letter were the attorneys who signed Congoleum's answer in 2002 in New Jersey Superior Court in which they alleged the *exact opposite* of what they say to the EPA now: "**Congoleum *is the successor* to Congoleum-Nairn, Inc.** and Congoleum Industries, Inc. as well as successor to other corporations using the name Congoleum Corporation."  (Jones Decl., Ex. 2 at CONG_0340510-11, emphasis added.)

deposition discovery through instructions not to answer questions concerning "settlement" information. (*See, e.g.,* Jones Decl., Ex. 3 at 120:13-122:7 (invoking the Confidentiality orders in response to question about "settlement talks with Century regarding Congoleum's corporate history."); *id*. at 151:24-153:5 (instructing witness not to answer question about how a definition in settlement agreement was negotiated between adversaries in the bankruptcy).)[9]  This type of objection will only continue in upcoming depositions, forcing BIW to only obtain the extrinsic evidence spin that Congoleum wants BIW to hear.  Accordingly, the Court should either order that Congoleum will not be allowed to introduce *any* extrinsic evidence concerning its insurance settlement agreements or order that Congoleum cannot prevent BIW from discovering the bases for what will be self-serving testimony at trial about the "context" of the settlement agreements.

And it is not only BIW that thinks Congoleum should be made to live by its statements in the Feist Declaration and should be prevented from introducing any extrinsic evidence.  Third-party insurers involved in Congoleum's bankruptcy settlement discussions have objected to BIW's subpoenas because Congoleum's invocation of "context" and threat of extrinsic evidence is legally without merit and would appear to be a breach of Congoleum's agreement with the insurers.  For example, Century objected to BIW's subpoena and stated:

> *Congoleum [cannot] retroactively resort to extrinsic evidence* to challenge the orders approving and implementing the settlement, policy buyback, plan of reorganization and injunctions having agreed to integration, non-admission and confidentiality clauses and *bound itself to the sworn representations made by its Chief Financial Officer* [i.e., Mr. Feist] *to the Court.*

---

[9] Such an instruction not to answer—based on the Protective Orders or Evidence Rule 408, none of which establish a "privilege"—appears to be improper under this Court's Pretrial Scheduling Order (Dkt. No. 42 ¶ 4):  "No instruction not to answer shall be given unless a privilege is implicated."

(Jones Decl., Ex. 10 at 2, 5, emphasis added.)  In other words, Century (like BIW) believes Congoleum must live by the sworn statements it made to this Court during the bankruptcy.  But because Congoleum knew those settlement-related statements were problematic for it in this case, it made the strategic decision to tell Judge McNulty that "context" was "critical" so it could keep alive its lawsuit against BIW.  Having staked out these positions, Congoleum cannot fairly prevent BIW from discovering the full context, or at least should be precluded from introducing extrinsic evidence concerning the settlements.

## IV.   This Court Has Authority To Grant BIW's Motion To Compel Notwithstanding Congoleum's Claims Of "Privilege" And The Confidentiality Orders Of Other Courts.

Congoleum asserts a variety of arguments to oppose BIW's Motion, yet none withstand scrutiny.

Notably, Congoleum has conceded that the "Third Circuit does not recognize a settlement privilege," but asserts Federal Rule of Evidence 408 to justify its withholding.  (Dkt. No. 95 at 9.) Evidence Rule 408 governs admissibility, however, and Rule 26 makes clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1); *see, e.g., Berardino v. Prestige Mgmt. Servs., Inc.*, 2:14-cv-3451, 2017 WL 9690965, at *3 (D.N.J. Dec. 8, 2017) (requiring production of settlement agreement over Rule 408 objections); *State Nat'l Ins. Co. v. Cty. of Camden*, No. CV 08-5128 (NLH/AMD), 2011 WL 13079217, at *4 (D.N.J. Apr. 28, 2011) (granting motion to compel discovery of underlying settlement documents even after the party produced the final settlement agreement and stating "settlement documents, agreements, and negotiations fall within the scope of discovery," especially when they can be used for any of the many purposes other than the limited exclusions

of Rule 408).[10]

Yet Congoleum justifies withholding the settlement documents based on four protective orders: (1) the June 6, 2002 Confidentiality Agreement and Order entered by the Superior Court of New Jersey, Middlesex County in the Coverage Action; (2) the June 2, 2004 Protective Order entered by the United States Bankruptcy Court for the District of New Jersey; (3) the May 30, 2006 Order for Mediation entered by the United States Bankruptcy Court for the District of New Jersey; and (4) the October 26, 2017 Diamond Alkali Superfund Site OU2 Allocation Confidentiality Agreement, CERCLA Docket No. 02-2016-2021.

First, Congoleum has yet to carry its burden for withholding these documents beyond referencing the orders themselves, despite language within the orders that directs the parties otherwise. Both the 2002 Confidentiality Order and the 2004 Protective Order contain provisions that require that materials contain sensitive business or proprietary information before those materials are treated as "Confidential."[11]   BIW requested that Congoleum provide additional information to justify its withholding of these documents based on these standards, but Congoleum has failed to do so. (Jones Decl., Ex. 1.) Thus, neither order even needs to be modified; this Court

---

[10] The 2015 changes to Rule 26 solidify Congress's intent when it comes to discovery: admissibility need not be a consideration. Moreover, settlement documents may be admissible for myriad purposes, including, but not limited to, a witness's bias or prejudice, the "state of mind" of individuals participating in a settlement, bad faith, and whether an individual "relied to his detriment on any representations and communications" made during settlement. *See, e.g., Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1035, 1040-41 (D.N.J. 1995); *see* Fed. R. Evid. 408(b). Given the conflicting positions Congoleum has taken in this case and others, there are several ways in which BIW could get the settlement documents admitted into evidence if that were the standard.

[11] The June 2, 2004 Protective Order limits what materials are protected as "Confidential" to those that "constitute proprietary business information, trade secret, confidential research, development, or otherwise confidential commercial information."  (Jones Decl., Ex. 11 at ¶ 3; *see also* Jones Decl., Ex. 12 at ¶ 1(e).)  Thus, Congoleum cannot even carry its burden to show that settlement documents from 15 years ago deserve "Confidential" treatment.

can simply interpret them to not cover the withheld materials as "Confidential" in light of Congoleum's failure to establish any confidential status.

Second, Congoleum cannot reasonably dispute that all four of these orders contemplate discovery of the materials protected by them in the first instance.

### June 6, 2002 Confidentiality Agreement and Order

The June 6, 2002 Confidentiality Agreement and Order provides that "Disclosure of designated Confidential Material shall not be allowed, except . . . [i]n the event an order from a governmental entity, a court, or an arbitration tribunal requires the disclosure of Confidential Material." (Jones Decl., Ex. 12 at ¶ 5.) The agreement does not specify which court must order disclosure of the material, signifying that an order from *any* court will suffice. Indeed, the court referenced any "court" without capitalization or specifying which type of "a court." (*Id.*)

### June 2, 2004 Protective Order

The June 2, 2004 Protective Order states that it "shall not prevent any party from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders." (Jones Decl., Ex. 11 at ¶ 23.) Additionally, Paragraph 22 outlines the procedure for responding to attempts to obtain these documents. Specifically, if a party receives a subpoena, it must provide notice to the other parties. (*Id.* at ¶ 22.) The other parties can then determine whether or not to seek a protective order with respect to the requested confidential material. (*Id.*) If the other parties fail to file an appropriate motion for a protective order prior to the return date listed on the subpoena, the recipient of the subpoena can produce or disclose confidential materials. (*Id.*) Thus, not only does the June 2, 2004 Protective Order contemplate that the United States Bankruptcy Court of the District of New Jersey would modify the order (*see id.* at ¶ 28), but the language of the order makes clear that the parties to the protective order understood they may be

recipients of subsequent subpoenas, and requires those parties to seek additional protective orders to prevent disclosure of confidential materials.  No party has sought a protective order here even though they have been on notice that BIW is seeking these documents for months; thus, Congoleum "can provide or disclose Confidential Materials."  (*Id.* at ¶ 22.)

### *May 30, 2006 Order for Mediation*

The May 30, 2006 Order for Mediation is a three-page order detailing the terms and guidelines of a mediation process rather than a traditional protective order.  (Jones Decl., Ex. 13.) This Court has not recognized a mediation privilege, and other federal courts have declined to create such a privilege.[12]  Even if such a privilege existed, that privilege would not be served here. BIW seeks the withheld documents in order to ascertain the "context" of Congoleum's related statements made during the bankruptcy proceedings.  Those facts are independently relevant to this litigation, and are only ancillary to the underlying mediation itself.

---

[12] *See, e.g., In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492-93 (5th Cir. 1998) (declining to extend a federal mediation privilege because "we will not infer [a privilege] where Congress has not clearly manifested an intent to create one"); *F.D.I.C. v. White*, 76 F. Supp. 2d 736, 738 (N.D. Tex. 1999) (distinguishing between the concept of confidentiality and privilege, and declining to extend a mediation privilege "absent a clear manifestation of Congressional intent"); *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 208 (D.D.C. 2005); *see also Molina v. Lexmark International, Inc.*, No. CV 08-04796, 2008 WL 4447678, at *9 (C.D. Cal. Sept. 30, 2008) ("The existence of a federal common law mediation privilege is not nearly as well established as [the defendant] suggests it is.  No Circuit court has ever adopted or applied such a privilege.").  BIW acknowledges that the Western District of Pennsylvania (*Sheldone v. Pennsylvania Tpk. Comm'n*, 104 F. Supp. 2d 511, 514 (W.D. Pa. 2000)) has recognized a federal mediation privilege.  However, the District of New Jersey has declined to evaluate whether such a privilege exists (*see New Jersey Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, No. 98-CV-4781, 2017 WL 498710 at *3 (D.N.J. Feb. 7, 2017)), and the Third Circuit is silent on the matter.

### *October 26, 2017 Confidentiality Agreement*

The Diamond Alkalai superfund matter involves contamination to the lower Passaic River. Notably Congoleum is in the midst of attempting to bring claims relating to that superfund matter into this lawsuit, so these communications are all the more relevant now.  (*See* Jones Decl., Ex. 5.) Ironically, Congoleum has been aware of its potential liability for this matter from the EPA since at least 1998 (*see* Jones Decl., Ex. 14), and has been actively involved in the allocation process without providing BIW notice that it is purportedly the liable party.  Indeed, BIW had no involvement in this superfund until the summer of 2018 when BIW was sued, ostensibly for being the successor to the Kearny property. (*See Occidental Chemical Corporation v. 21st Century Fox America, Inc., et al*., Case Number 2:18-CV-11273-JLL-JAD (D.N.J.).)  In other words, while Congoleum was actively involved in this superfund as the potentially responsible party for the Kearny, New Jersey property for over 16 years, BIW was dragged into the litigation only *after* Congoleum alleged in this Action in 2017 that BIW was the "real" successor-in-interest.  It is fundamentally unfair that Congoleum can suggest BIW is responsible for Kearny while on the other hand participating in a confidential process relating to the same property and without allowing BIW access to those documents.  BIW must be allowed access to *all* these documents to show Congoleum is once again making representations that contradict its representations to this Court.[13]

Moreover, the October 26, 2017 Diamond Alkali Superfund Site OU2 Allocation Confidentiality Agreement contemplates disclosure of any otherwise protected materials when "required by law." (Jones Decl., Ex. 15.)  Specifically, the Order states that the allocation process

---

[13] Thus far, Congoleum has only agreed to produce its own documents from that matter and not exchanges with other parties.  (Jones Decl., Ex. 1.)

shall be kept confidential, "except . . . with the consent of the Participants to this dispute, or as required by law to be made public." (*Id*. at 2.) Here, BIW is seeking something less than making the information public. BIW seeks an order that would make disclosure "required by law," but those materials would be governed by the existing protective orders of this litigation.

Third, Congoleum attempts to hide behind principles of comity, and suggests that BIW should go through the wasteful exercise of going to four different courts for the withheld documents. Aside from the waste and delay of that proposal, the principles of comity "are not absolute, and courts asked to issue discovery orders in litigation pending before them also have not shied away from doing so, even when it would modify or circumvent a discovery order by another court, if under the circumstances, such a result was considered justified." *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 499-500 (D. Md. 2000). In *Tucker*, the court set forth four different "rules of reason" to use in determining whether or not it would be justified in entering a discovery order that would have the effect of modifying an order issued by another court. *Id*. Those rules include: (1) whether the protective order was essentially an agreement negotiated by the parties and then presented to the first court, rather than a situation in which the court held a full hearing on the issue; (2) the identity of the party from whom discovery is sought, and whether that party is the source of the documents; (3) whether the case in which the original protective order was issued is still pending, and if not, the burden and expense to the parties if they are required to file a new action just to seek modification of an order; and (4) whether this reviewing court can incorporate terms in a new protective order to provide similar protections as originally provided. *Id.* at 501.

Those factors weigh in favor of ordering Congoleum to produce responsive documents in this matter, or at least precluding it from introducing extrinsic evidence to the settlement

agreements at issue.  First, it appears that the protective orders in question were negotiated between the parties and entered with the respective courts without an evidentiary hearing on the orders, meaning "[t]here is less need for deference and comity when the order involved is really an agreement by counsel approved, almost as a ministerial act, by the court." *Id*.  Second, the matters in which the protective orders originated have been closed for many years.  As the court noted in *Tucker*, "a practical solution militated against requiring the party seeking the documents to go back to the state court to file a new action simply to seek a modification of a discovery order in a case that was closed." *Id*. at 500.  *See also LeBlanc v. Broyhill*, 123 F.R.D. 527, 531 (W.D.N.C. 1988) (modifying a state court protective order to permit defendants to disclose requested documents).[14] Third, Congoleum and BIW have already entered into a protective order in this matter.  Any documents produced here that were covered by the prior protective orders may still qualify for protection under the discovery confidentiality order in this matter, which includes two tiers of potential confidentiality protection.  (Dkt. No. 50 at 2.)

Cases on comity are fact-specific, and New Jersey courts have held that comity is overcome where, as here, good cause exists.  *See, e.g.*, *Light v. Granatall*, 171 N.J. Super. 557, 563 (App. Div. 1979) ("strong grounds" existed to overcome comity to permit plaintiff to maintain an action in New Jersey despite a New York action that would bar plaintiff from doing so).  Additionally, a number of other courts have held that comity does not prevent a court from modifying a protective order.  *See, e.g.*, *Franklin United Methodist Home, Inc. v. Lancaster Pollard & Co.*, 909 F. Supp. 2d 1037, 1046 (S.D. Ind. 2012) (applying the *Tucker* factors to hold that modification of a Bankruptcy Court order was appropriate even when the bankruptcy action was still pending); *Abel*

---

[14] Fact discovery closes on September 29, 2019 in this matter and, at this point, it is not practical for BIW to go to four different courts to seek the materials at issue in this Motion, especially not for cases closed many years ago.

*v. Mylan, Inc.*, No. 09–CV–0650–CVE–PJC, 2010 WL 3910141, at *3-4 (N.D. Okla. Oct. 4, 2010) (applying *Tucker* factors because requiring the parties "to seek modification of the various protective orders" at issue would be a "waste of time and resources"); *LeBlanc*, 123 F.R.D. at 530-31 (modifying the protective order and requiring the party to disclose the discovery materials requested). At the end of the day, Congoleum will be able to point to no case from this jurisdiction with the relevant facts here:  multiple protective orders, from closed cases, which contemplate discovery.

On its March 15, 2019 ESI Privilege Log (attached as Jones Decl., Ex. 7) and April 12, 2019 Supplemental ESI Privilege Log (attached as Jones Decl., Ex. 16), Congoleum has withheld parts or all of 613 "settlement" documents *solely* on the basis of one or more of the four protective orders at issue. Given that BIW has carried its initial burden to show that these documents are relevant, and Congoleum cannot refute that or show that the protective orders prevent disclosure, the Court should compel their production.

## CONCLUSION

The Court should grant BIW's Motion and require that Congoleum produce the documents it is withholding solely on the four protective orders, or, in the alternative, bar Congoleum from eliciting any testimony going forward that would be implicated by the withheld documents/information. Given the current circumstances of the case including where the parties are in discovery, it would likely save resources for all parties (and the Court) if the alternative request (barring Congoleum from introducing any extrinsic evidence concerning the implicated settlement agreements) were granted as it would provide clarity to a dispute that would otherwise linger.

Dated:  June 21, 2019                    Respectfully submitted,

                                         */s/ George C. Jones*
                                         Thomas R. Curtin
                                         George C. Jones
                                         McELROY, DEUTSCH, MULVANEY
                                           & CARPENTER, LLP
                                         1300 Mount Kemble Avenue
                                         P.O. Box 2075
                                         Morristown, New Jersey 07962-2075
                                         Tel: (973) 993-8100
                                         Fax: (973) 425-0161
                                         E-mail:  tcurtin@mdmc-law.com
                                                  gjones@mdmc-law.com

                                         Michael A. Doornweerd (*pro hac vice*)
                                         Wade A. Thomson (*pro hac vice*)
                                         JENNER & BLOCK LLP
                                         353 N. Clark Street
                                         Chicago, IL 60654
                                         Tel: (312) 222-9350
                                         Fax: (312) 527-0484
                                         E-mail:  MDoornweerd@jenner.com
                                                  WThomson@jenner.com

                                         *Attorneys for Defendant*
                                         *Bath Iron Works Corporation*

21