

Camille V. Otero
Director
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4509 Fax: 973-639-8321
cotero@gibbonslaw.com

December 2, 2019

Hon. James B. Clark, U.S.M.J.
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

>   Re:   DVL, Inc., et al. v. Congoleum Corp. and Bath Iron Works Corp.
>         Civil Action No. 17-4261 (KM) (JBC)

Dear Judge Clark:

This firm represents Congoleum Corporation ("Congoleum"). Please accept this letter as the parties' joint letter on outstanding discovery issues as requested by the Court. (ECF No. 149, ¶ 3(b).) For ease of reference, the same paragraph numbers are utilized in this letter as in the prior status update letter dated November 4, 2019 (ECF 148).

**1.     BIW's pending Motion to Compel Production.** This motion (ECF 145) is fully briefed and remains pending.

**2.     Dughi Hewit third-party subpoena.** On July 23, 2018, BIW issued a subpoena to the law firm of Dughi Hewit & Domalewski P.C. ("Dughi Hewit"), a law firm that has represented Congoleum in various matters. The parties have a dispute regarding compliance with that subpoena. Pursuant to the Court's letter order (ECF 149, ¶ 3(a)), the parties understand that the Court will resolve this issue at the upcoming status conference.

**3.     Assertions of privilege at Hewit deposition**. On September 25, 2019, BIW and DVL deposed long-time Congoleum attorney, Russell Hewit. BIW contends that various assertions of privilege were improper. Pursuant to the Court's letter order (ECF 149, ¶ 3(a)), the parties understand that the Court will resolve this issue at the upcoming status conference. Congoleum reiterates its position that this issue is too complex to be resolved based on the current submissions, and requests that the parties be directed to file supplemental letter briefs. BIW defers to the Court as to whether it wants additional briefing on this issue. As stated in the last status letter, BIW submits that it may make more sense, and potentially save resources, to brief this issue (if necessary) after BIW finally receives the other 90% of the Dughi Hewit documents Congoleum has not reviewed and produced. (See issue No. 2 above.)

**4.     Century third-party subpoena.** BIW seeks leave to file, by December 16 (if necessary), a 3-page letter motion to compel subpoena compliance by Century Indemnity Company for just a few communications which Century to date has not provided.

**5.     DVL's Request to Re-Depose Witnesses**. On August 29, 2019, DVL served a Notice and Subpoena for the deposition of Tony Piacente, a former employee of Congoleum. Mr. Piacente was previously subpoenaed by Congoleum and deposed, *de bene esse*, on September 13, 2017, prior to the exchange of any discovery in this action. DVL also requested to re-depose

Hon. James B. Clarke, U.S.M.J.
December 2, 2019
Page 2

Congoleum's 30(b)(6) witnesses, Messrs. Sapienza and Pearson, and Congoleum employee Jim Monyak. Those depositions were taken between May and July of 2019. Congoleum opposes the request.[1] BIW joins in the opposition. Pursuant to the Court's letter order (ECF 149, ¶ 3(a)), the parties understand that the Court will resolve this issue at the upcoming status conference.

   **6.**  **DVL's Requests for Admission Served on August 30, 2019.** The Court ordered Congoleum to respond to DVL's Requests for Admission (ECF 149, ¶ 3(c).) Congoleum will respond on or before December 6, 2019.

   **7.**  **BIW & Congoleum Responses to RFAs.** Congoleum and BIW have responded to each other's two sets of Requests for Admission. The parties have exchanged letters asserting various objections, and thereafter served supplemental and/or amended responses to certain requests. While reserving all rights, at this time, Congoleum and BIW do not believe that Court intervention is necessary.

   **8.**  **T.C. Garrod Deposition Issue.** The Court resolved this issue. (ECF 149, ¶ 3(d).)

   **9.**  **Greg Milmoe Deposition Issue.** Congoleum and BIW are at odds regarding BIW's assertion of attorney client privilege and work product protection at the deposition of Skadden attorney Gregory Milmoe, who represented Congoleum Industries, Inc. ("CII") in a 1986 transaction that is relevant to the current successor liability and indemnification dispute between Congoleum and BIW.

   Congoleum: At Mr. Milmoe's deposition, BIW asserted privilege objections and directed Mr. Milmoe not to answer questions regarding his communications with CII, his former client and a predecessor-in-interest to BIW. Congoleum contends that BIW has put Mr. Milmoe's advice to his former client "at issue" by allowing Mr. Milmoe to testify about the advice he provided and the intent of his client in drafting the 1986 transaction documents. BIW and Mr. Milmoe have waived privilege over all information and documents, including communications between Mr. Milmoe (Skadden) and BIW (and its counsel Jenner & Block), that relates to Skadden's representation of CII during the 1986 transactions and CII's intent.

   The "at issue" subject matter waiver boils down to this: BIW affirmatively called Mr. Milmoe (its predecessor's former attorney) as a fact witness and questioned him ***at length*** regarding his mental impressions and the intent behind the 1986 transactional documents that are the heart of the dispute between Congoleum and BIW. Mr. Milmoe served as counsel to CII,

---

[1] Congoleum has not had an opportunity to respond to DVL's November 11, 2019 letter requesting an extension of the deadline for service of affirmative expert reports, in which DVL repeats the incorrect statement that Mr. Piacente's 2018 Affidavit conflicts with his prior testimony. At his 2017 deposition, DVL neglected to ask Mr. Piacente any questions about tests or trial runs (the subject matter of one paragraph in his 2018 Affidavit that is the subject of DVL's current focus), but rather confined its questions to manufacturing and production.

Hon. James B. Clarke, U.S.M.J.
December 2, 2019
Page 3

BIW's predecessor, and BIW asked Mr. Milmoe—the principal draftsman—to share his understanding and intent underlying the 1986 transaction documents.

- Q: [BIW counsel reads from the first full paragraph April 18, 1986 Instrument of Assignment and Assumption between 1984 Congoleum and Resilco, Inc.]. What was the intent of that sentence in this document? (Milmoe Tr. 30:10-31:9.)
- Q: [BIW counsel focuses on specific word usage within that same sentence]. What was the intent of using those words in this document? (*Id.* at 32:20-33:3.)
- Q: Was it intended to restrict the business as of any particular time? (*Id.* at 33:7-8.)
- Q: [W]as it the intent of this language that all liabilities and obligations of Congoleum related to the transferred assets identified in this document . . . were assumed by Resilco? (*Id.* at 37:19-38:2.)
- Q: [BIW counsel directs attention to specific phrase used in the document]. What was the intent in using that language in this assignment? (*Id.* at 39:1-8.)
- Q: Was the intent to exclude any liabilities that pre-dated 1986 from transferring to Resilco? (*Id.* at 40:16-18.)
- Q: What was the intent in excluding the liabilities assumed by Resilient . . . ? (*Id.* at 48:24-49:2.)
- Q: [W]as there an intent to exclude from this definition of the business of Congoleum's flooring division activities that had occurred prior to 1986? (*Id.* at 72:19-23.)
- Q: What was your intent in using that language [in the Explanatory Note], Mr. Milmoe? (*Id.* at 91:16-24.)
- Q: Do you agree with the statement that Congoleum Corporation did not assume any liabilities arising from the manufacturing facilities as being consistent with the purpose and intent of the 1986 transactions? (*Id.* at 108:17-22.)

With intent as the primary focus behind many answers BIW elicited from Mr. Milmoe,[2] Congoleum attempted to cross-examine and test Mr. Milmoe's "intent"—in part by asking him about his contemporaneous discussions with the principals of CII—but BIW objected and directed Mr. Milmoe not to answer. Therefore, Congoleum is left with Mr. Milmoe's self-serving responses regarding his understanding and the intent of the documents, and cannot test those responses by probing his contemporaneous private communications with his client in 1986, and his subsequent communications with BIW's counsel, Jenner & Block (which does not represent Mr. Milmoe). This is a classic sword-and-shield situation—which is expressly forbidden by all courts. *See In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 159 (D.N.J. 2008) (noting that one critical factor considered by courts in at-issue waiver cases is whether "the asserting party put the protected information at issue by making it relevant to the case"). To the extent that the transactional documents are ambiguous and require parol evidence for interpretation, it is

---

[2] BIW now suggests, for the first time, that Mr. Milmoe was being asked to testify about the "business purposes" of these transaction documents, rather than for his understanding of them *as the attorney* for the seller (CII). The record does not reflect that BIW's attorneys were at all interested in Mr. Milmoe's business acumen; rather, ample time was spent delving into Mr. Milmoe's lengthy legal career and accomplishments.

Hon. James B. Clarke, U.S.M.J.
December 2, 2019
Page 4

prejudicial for BIW to rely on extrinsic evidence of the meaning of the documents (i.e., Mr. Milmoe's description of the intent) while simultaneously prohibiting Congoleum from obtaining all potentially relevant evidence regarding that same intent.

In this district, a subject matter waiver is found "when the privilege-holder has attempted to use the privilege as both a 'sword' and 'a shield' or when the party attacking the privilege will be prejudiced at trial." *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 120 (D.N.J. 2002). BIW questioning its predecessor's **own lawyer** on intent is an intentional disclosure of privileged materials (i.e., the attorney's thought processes reflecting conversations with his client, CII) to gain an unfair advantage at trial by bolstering its position, as to the meaning of the documents Mr. Milmoe drafted on behalf of CII, without allowing Congoleum the same ability to probe the circumstances and substance of that intent. While courts are lenient regarding inadvertent disclosures and subject matter waiver, courts conversely find subject matter waiver where the party (as here) affirmatively and deliberately seeks to use otherwise protectable information for its advantage. *See V. Mane Fils S.A. v. Int'l Flavors & Fragrances, Inc.*, 249 F.R.D. 152, 155 (D.N.J. 2008) ("In limited circumstances, such as inadvertent or unintentional disclosures, courts have limited the scope of waiver. Where a party is attempting to gain an advantage or make offensive use through intentional disclosure, there must be a full subject matter waiver.").

Mr. Milmoe's testimony regarding CII's intent in connection with the 1986 transactions amounts to subject matter waiver by BIW. Congoleum requests that (a) all Skadden and/or CII documents withheld as privileged regarding the 1986 transactions must be produced[3]; (b) all of Skadden and Mr. Milmoe's communications with Jenner & Block relating to this subject matter must be produced; and (c) Mr. Milmoe be re-deposed (at BIW's expense) on these questions. The Court previously denied leave to file further briefs on this issue. However, as noted above, Mr. Milmoe is a key witness in this case, and thus resolution of this issue is of heightened significance. Congoleum therefore respectfully repeats its request for leave to file a more thorough letter brief or separate motion on this issue.

BIW:  Congoleum's request for a finding of subject matter waiver (or further briefing) should be denied. The attorney-client privilege is one of the "most fundamental tenets of the attorney-client relationship . . . It is only in the most extreme circumstances that an exception will apply." *George v. Siemens Indus. Automation, Inc.,* 182 F.R.D. 134, 138 (D.N.J. 1998). This is not one of those extreme situations. To the contrary, Congoleum's request is a fishing expedition. When Congoleum first raised this issue, it sought "production of every privileged document on Skadden's privilege log," as well as certain entries on BIW's privilege log, and "reserve[d] the right to re-call Mr. Milmoe to question him regarding those documents, and his privileged

---

[3] BIW's offer to allow Congoleum to "review" the privileged documents—without waiver—is insufficient. The documents must be produced so that Congoleum is free is use them in motions and at trial. Likewise, BIW's argument that Congoleum has broadened its position is also untrue—Congoleum has maintained that a full subject matter waiver occurred, and is entitled to all relief that entails.

Hon. James B. Clarke, U.S.M.J.
December 2, 2019
Page 5

conversations with his former client, Congoleum Industries, Inc. ("CII")." (September 23, 2019 Congoleum Ltr.) Congoleum admitted its request was based on an unsubstantiated "possibility" that Mr. Milmoe (a retired Skadden partner) had committed perjury: "To put it bluntly… because there exists the possibility that Mr. Milmoe told his client one thing, and told the parties another at his deposition, Congoleum is entitled to test Mr. Milmoe's veracity and memory by reviewing the privileged communications, and if necessary, re-deposing him." (*Id*.)

In response, and to avoid burdening the Court, BIW offered to produce to Congoleum (Dkt. No. 148) *every* document it requested (without agreeing there was a waiver), but Congoleum declined. Having had its bluff called, Congoleum broadened its request for not only all historical documents, but also *any* communications Mr. Milmoe may have had at *any time* with Skadden (deal counsel to CII during the 1986 transactions) or Jenner & Block (litigation counsel to BIW).

Congoleum's demand should be denied. First, contrary to Congoleum's assertion that BIW allowed Mr. Milmoe to "testify about the advice provided" in 1986, Mr. Milmoe did not testify to the substance of any privileged communications, let alone "advice." The Third Circuit's definition of "'in issue' requires that the client attempt to prove the claim by 'disclosing or describing an **attorney-client communication**.'" *EMC Ins. Co. v. Zicolello*, 2014 WL 123687, at *5-6 (M.D. Pa. Jan. 14, 2014) (emphasis added). During Mr. Milmoe's deposition, counsel for BIW did not elicit testimony about attorney-client communications and Mr. Milmoe did not testify about any. Rather, Mr. Milmoe testified about the business purposes and/or the intent, as the drafter, of the 1986 transaction documents, and negotiations with third-parties.[4] That testimony did not disclose any confidential communications. As BIW explained in its September 27, 2019 letter to Congoleum, Mr. Milmoe testified about the underlying facts of the 1986 transaction documents, which includes the business purpose.

Congoleum's authority is not to the contrary. For instance, in *V. Mane Fils S.A. v. Int'l Flavors & Fragrances, Inc.*, the party disclosed legal analysis and a legal opinion. 249 F.R.D. 152, 154–55 (D.N.J. 2008). Here, Mr. Milmoe did not disclose the contents of any attorney-client communication. Per *In re Human Tissue Products Liability Litigation* (cited by Congoleum), testimony like Mr. Milmoe's regarding a business purpose, rather than legal advice, is not protected. 255 F.R.D. 151, 160 (D.N.J. 2008).

Second, "at issue" waiver is grounded in fairness. *Hoffmann-La Roche, Inc. v. Roxane Labs., Inc.*, No. CIV.A. 09-6335 WJM, 2011 WL 1792791, at *10 (D.N.J. May 11, 2011). Here, Congoleum's counsel was able to – and did – freely cross examine Mr. Milmoe regarding the intent in drafting the transaction documents. Counsel for BIW only objected on the basis of attorney-client privilege *twice*, and neither was in response to questions regarding intent. (Milmoe Dep. at 112-114; 137:16-138:11.) Congoleum cross-noticed the deposition of Mr. Milmoe and

---

[4] A representative exchange cited by Congoleum: "Q: And you write that 'The new Congoleum assumed all liabilities directly related to the assets transferred, including liabilities in connection with the matters discussed in Section 2.' Did I read that correctly? A: Yes. Q: What was your intent in using that language, Mr. Milmoe? A: Simply disclosure, memorializing something that had already been provided to people."

Hon. James B. Clarke, U.S.M.J.
December 2, 2019
Page 6

had equal time.  Thus, there is no prejudice, and nothing unfair about the ordinary assertion of privilege over a limited set of documents (less than 5% of total produced by Skadden).

Third, even if Mr. Milmoe's deposition had put privileged communications at issue, the *most* that Congoleum should be entitled to are the historical 1986 documents from Skadden's and BIW's privilege logs, *i.e.*, the documents BIW already offered to produce.  "Even in instances where a client has waived the attorney-client privilege, the waiver is limited to the specific communications and disclosure at issue in the claim or defense."  *Emmanouil v. Roggio*, No. CIV.06-CV-01068(GEB), 2009 WL 961275, at *3 (D.N.J. Apr. 7, 2009).

Finally, Congoleum concedes that a party's intent concerning disputed agreements is a non-privileged fact.  Throughout discovery, Congoleum simultaneously elicited evidence on intent while at the same time asserting privilege to withhold documents relating to intent.  Congoleum even told this Court that it "believes its witnesses can testify about the context, **intent**, and purpose of the final and publicly filed settlement agreements without violating any of the confidentiality orders" and while withholding communications with counsel. (Dkt. No. 147 at 2, emphasis added.) Congoleum then affirmatively elicited and/or permitted testimony concerning the "intent" of final agreements, including the 1986 transaction, and its 2006 bankruptcy settlement agreements.  For example, Congoleum elicited deposition testimony regarding the "intent" of the 1986 transaction agreements *from its own side*, including John Irwin and Edward Bramson, formerly of Hillside Capital, which purchased the Congoleum Resilient Flooring Business in 1986 from CII.  (*See* September 24, 2019 Irwin Dep. at 26:4-9 ("Q. Is it fair then to say if your **intent** and understanding was that you were not going to sell the environmental liability then there would be no need to do environmental due diligen[ce]..?"); October 16, 2019 Bramson Dep. at 31:10-16 ("Q. [D]id Hillside have any **intention** of assuming environmental liabilities..?") Additionally, Congoleum's former CFO, and corporate designee, Howard Feist, testified to the intent of Congoleum bankruptcy settlement agreements. (*See, e.g.,* September 12, 2019 Feist Dep. at 115: 8 ("A. I can tell you what the **intent** was…") Thus, if Mr. Milmoe's testimony somehow put privileged advice at issue, so did that of Messrs. Feist, Bramson and Irwin, and BIW should be allowed to see any withheld documents relevant to Congoleum's intent.

   **10.**   **Consolidation.**  Presently pending before this Court is Congoleum's Motion to Consolidate this matter with the action captioned *Bath Iron Works Corporation v. Congoleum Corporation*, Case No. 2:19-cv-12517-KM-JBC (the "Transferred Action"). (ECF 115.) On August 28, 2019, the Court in the Transferred Action granted a joint request by BIW and Congoleum to adjourn the initial conference pending BIW's filing of a third-party action in the matter captioned *Occidental Chemical Corp. v. 21st Century Fox America, et al.*, No. 2:18-cv-11273-MCA-JAD (the "Occidental Action").  BIW has now filed a Third-Party Complaint against Congoleum in the Occidental Action.  Congoleum's answer in the Occidental Action is due on December 9, 2019.  BIW and Congoleum filed on November 25, 2019 in the Transferred Action a stipulation that their indemnification/successorship claims and defenses concerning both the DVL Property and the larger Kearny Property at issue in the Transferred Action and Occidental Action should be consolidated in this case (17-cv-04621).  The Court entered that stipulation.  (19-

Hon. James B. Clarke, U.S.M.J.
December 2, 2019
Page 7

cv-12517, ECF 37.) The parties will follow that stipulation which will moot Congoleum's pending Motion to Consolidate cases 17-cv-04261 and 19-cv-12517 (ECF 115), as well as BIW's Motion to Amend its Crossclaims (ECF 114) and BIW's Motion to Amend its Answer & Affirmative Defenses (ECF 104). BIW and Congoleum have stipulated to file amended crossclaims against each other, and answers thereto, in the DVL Action, by December 23, 2019. This would also resolve BIW's motions to amend its affirmative defenses. (*See* ECF Nos. 103, 104, 111, 114, 113, 127).

**11.     Schedule for filing of dispositive motions against Plaintiffs' claims.**  The Court resolved this issue. (ECF 149, ¶ 3(f).)

**12.     Settlement discussions between the parties.**  There is no update since the November 4, 2019 status letter.

**13.     Schedule for Expert Reports**. DVL raised this issue in its letter dated November 11, 2019, which the Court indicated it would consider at the December 5th status conference. (ECF 151, 152.) This issue is related to DVL's request to re-depose several Congoleum witnesses. (Issue #5, above.)

Congoleum:  Congoleum believes that DVL's request to re-depose any witnesses should be denied, but irrespective of that issue, believes that the schedule for expert reports should not be greatly disrupted due to DVL's manufactured excuse for a delay. Affirmative expert reports were due on November 30, with rebuttal reports due January 31, 2020. (ECF 89.) As fact discovery is complete, Congoleum is prepared and ready to serve any affirmative expert report(s) right away, and requests that the Court set a deadline in December for service of affirmative reports, with rebuttal reports 60 days thereafter.

DVL:  The Court granted DVL's request to adjourn the prior deadline for exchange of affirmative expert reports and indicated it will address new deadlines for the entirety of expert discovery in the upcoming conference. (ECF 152). If the Court allows the depositions DVL seeks, DVL will request that the new deadline be thirty days after the last of the depositions, with all other deadlines adjusted accordingly.

BIW:  BIW agrees with Congoleum.

* * *

We look forward to discussing these matters with Your Honor.

Respectfully submitted,
s/ Camille V. Otero
Director

cc:     All Counsel of Record