Ralph J. Marra
Thomas R. Calcagni
Eric T. Kanefsky
CALCAGNI & KANEFSKY, LLC
1085 Raymond Blvd.
14th Floor
Newark, NJ 07102
(862) 397-1796

Michael A. Doornweerd (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Defendant*
*Bath Iron Works, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DVL, INC. AND DVL KEARNY HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CONGOLEUM CORPORATION and BATH IRONS WORKS CORPORATION,<br><br>Defendants. | Civil Action No. 2:17-cv-04261 (KM) (JBC)<br><br>**BATH IRON WORKS CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFFS' AMENDED COMPLAINT, AMENDED CROSSCLAIMS AGAINST CONGOLEUM CORPORATION, AND DEMAND FOR JURY TRIAL** |

## <u>BATH IRON WORKS CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFFS' AMENDED COMPLAINT, AMENDED CROSSCLAIMS AGAINST CONGOLEUM CORPORATION, AND DEMAND FOR JURY TRIAL</u>

Defendant Bath Iron Works Corporation ("BIW"),  by way of answer to the Amended

Complaint of Plaintiffs DVL, Inc. and DVL Kearny Holdings, LLC (collectively, "Plaintiffs"),

states as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this matter pursuant to 42 U.S. Code § 9613(b).

**RESPONSE:** The allegations contained in Paragraph 1 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

2.      This Court is the appropriate venue pursuant to 42 U.S. Code § 9613(b) as the release and damages alleged herein occurred in this judicial district.

**RESPONSE:**      The allegations contained in Paragraph 2 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

3.      Contemporaneous with the filing of this action, Plaintiffs are providing a copy of the Complaint to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency, pursuant to 42 U.S. Code § 9613(1).

**RESPONSE:**      BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 3, and therefore denies same.

**Introduction**

4.      This is an action by DVLI and DVLK (together, "DVL") to recover damages suffered as a result of contamination attributable to the processes Congoleum Corporation and its predecessors, including defendant, Bath Iron Works Corporation (collectively, "Defendants") employed over decades of manufacturing flooring and war products in multiple buildings throughout a property (the "Property") now owned by DVLI's subsidiary, DVLK.

**RESPONSE:**      BIW admits that Plaintiffs bring this action for damages purportedly suffered as a result of contamination; however, BIW denies that any alleged contamination is attributable to BIW and denies that DVL suffered any damages attributable to BIW.   Any remaining allegations against BIW set forth in Paragraph 4 are denied.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 4 as alleged against Congoleum, and therefore denies same.

5.      Defendants' contamination of the environment was prolonged and widespread, resulting in the discharge of polychlorinated biphenyls ("PCBs") and other hazardous substances into the air, soils and groundwater in and around the Property.

**RESPONSE:**     BIW denies the allegations of Paragraph 5 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 5 as alleged against Congoleum, and therefore denies same.

6.     DVL spent $19,348,981.52 to remediate Defendants' contamination of the air, soils and groundwater in and around the Property and seeks to recover that amount from Defendants by this action.

**RESPONSE:**     BIW is without knowledge or information sufficient to admit or deny the amount of money allegedly spent by Plaintiffs to remediate the Property but, regardless of the amount spent, BIW denies that it is responsible or liable for any contamination of the Property. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 6 as alleged against Congoleum, and therefore denies same.

## The Parties

7.     DVLI and DVLK are businesses incorporated in the State of Delaware and authorized to do business in the State of New Jersey, with business addresses of 70 E 55th St., New York, NY  10022.

**RESPONSE:**     On information and belief, admitted.

8.     Upon information and belief, Congoleum is a corporation formed in the State of Delaware with a principal place of business of 3500 Quakerbridge Road, P.O. Box 3127, Mercerville, NJ 08619-0127.

**RESPONSE:**     On information and belief, admitted.

9.     Upon information and belief, Bath Iron Works is a corporation formed under the laws of the State of Maine with its principal place of business at 700 Washington Street, Bath, Maine 04530.

**RESPONSE:**     Admitted.

## Property Ownership and Operations

10.     DVLK owns the Property, located at 160-194 Passaic Avenue in Kearny, NJ and currently known as Block 15, Lot 7.01.

**RESPONSE:**     BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 10, and therefore denies same.

11.     Defendants built, owned and operated the Property from the late 1880s through at least 1959.

**RESPONSE:**     BIW denies the allegations of Paragraph 11 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 11 as alleged against Congoleum, and therefore denies same.

12.     During World War II, Defendants manufactured products at the Property for the U.S. military; at other times, it manufactured products for commercial sale.

**RESPONSE:**     BIW denies the allegations of Paragraph 12 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 12 as alleged against Congoleum, and therefore denies same.

13.     Defendants also maintained a research and development laboratory at the Property in which they tested materials and products for potential future use in manufacturing and for potential sale.

**RESPONSE:**     BIW denies the allegations of Paragraph 13 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 13 as alleged against Congoleum, and therefore denies same.

14.     Defendants manufactured a variety of commercial products at the Property, including linoleum, straight line (plain, printed and inlaid) linoleum flooring, vinyl asbestos tile, battleship linoleum, linoleum/vinyl wall coverings, vinyl desk tops, vinyl operating room flooring, pastes, waxes, and adhesives.

**RESPONSE:**     BIW denies the allegations of Paragraph 14 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 14 as alleged against Congoleum, and therefore denies same.

15.     Defendants also manufactured adhesives and waxes at the Property until about the mid to late 1960s.

**RESPONSE:**      BIW denies the allegations of Paragraph 15 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

15 as alleged against Congoleum, and therefore denies same.

16.     Products manufactured by Defendants at the Property for military use included tent cloth, aerial torpedo parts, grenades, mildew proof sandbags, battleship linoleum, camouflage netting, and synthetic leather.

**RESPONSE:**      BIW denies the allegations of Paragraph 16 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

16 as alleged against Congoleum, and therefore denies same.

17.     Vinyl resins, plasticizers, stabilizers, lime, stone, pigments, oils, and fillers were among the raw materials used by Defendants at the Property.

**RESPONSE:**      BIW denies the allegations of Paragraph 17 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

17 as alleged against Congoleum, and therefore denies same.

18.     Defendants used contact cooling water to cool finished product at the Property.  The water may have contained trace amounts of plasticizer, dirt and contaminants as a result of being washed over the finished flooring product.

**RESPONSE:**      BIW denies the allegations of Paragraph 18 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

18 as alleged against Congoleum, and therefore denies same.

19.     During the years of Defendants' operations at the Property, there were floor drains and open trenches in the buildings, which connected to the sanitary sewer system.

**RESPONSE:**      BIW denies that it had any operations at the Property.  BIW is without

knowledge or information sufficient to admit or deny whether "there were floor drains and open

trenches in the buildings, which connected to the sanitary sewer system," and therefore denies

same.  BIW is also without knowledge or information sufficient to admit or deny the allegations

of Paragraph 19 as alleged against Congoleum, and therefore denies same.

20.     During the years of Defendants' operations at the Property, there were floor drains and an outdoor drainage trench, which flowed into sumps.

**RESPONSE:**     BIW denies that it had any operations at the Property.  BIW is without knowledge or information sufficient to admit or deny whether "there were floor drains and an outdoor drainage trench, which flowed into sumps," and therefore denies same.  BIW is also without knowledge or information sufficient to admit or deny the allegations of Paragraph 20 as alleged against Congoleum, and therefore denies same.

21.     Contact cooling water from spraying of finished product was collected in open trenches in the floor of some buildings at the Property, and was discharged to the sewer system and/or Passaic River in the 1940s and 1950s.

**RESPONSE:**     BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 21, and therefore denies same.

22.     Some of the materials and products Defendants used and manufactured at the Property contained PCBs.

**RESPONSE:**     BIW denies that it used and/or manufactured any materials or products at the Property.  BIW denies any remaining allegations against BIW set forth in Paragraph 22.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 22 as alleged against Congoleum, and therefore denies same.

23.     One of the patents held by Defendants, issued in 1947 and entitled "Fire-Resistant Linoleum Product," called for the use of PCBs in the manufacturing process.

**RESPONSE:**     BIW denies the allegations of Paragraph 23 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 23 as alleged against Congoleum, and therefore denies same.

24.     Other patents held by Defendants called for the use of PCBs as "modifying agents" in adhesives.

**RESPONSE:**      BIW denies the allegations of Paragraph 24 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

24 as alleged against Congoleum, and therefore denies same.

25.      Defendants    used    chlorinated    solvents    including    tetrachloroethene
("perchloroethene" or "PCE") and trichloroethene ("TCE") at the Property, including for cleaning
machinery and other elements of the improvements at the Property.

**RESPONSE:**      BIW denies the allegations of Paragraph 25 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

25 as alleged against Congoleum, and therefore denies same.

26.      Defendants also used poly-aromatic hydrocarbons ("PAH") and materials
containing PAHs at the Property.

**RESPONSE:**      BIW denies the allegations of Paragraph 26 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

26 as alleged against Congoleum, and therefore denies same.

**<u>Defendants' Contamination of the Property</u>**

27.      During its operations at the Property, Defendants dispersed dust laden with PCBs
and PAHs into the air and soil at the Property.

**RESPONSE:**      BIW denies the allegations of Paragraph 27 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

27 as alleged against Congoleum, and therefore denies same.

28.      The very type of PCBs and other hazardous substances identified in Defendants'
patents were discovered in soil which Defendants later covered with the concrete floor slab of a
building Defendants constructed between 1945 and 1946 ("Building 114").

**RESPONSE:**      BIW denies the allegations of Paragraph 28 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

28 as alleged against Congoleum, and therefore denies same.

29.     The very type of PCBs and other hazardous substances identified in Defendants' patents were discovered on the roof of Building 114, where they had settled after being emitted into the ambient air.

**RESPONSE:**     BIW denies the allegations of Paragraph 29 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 29 as alleged against Congoleum, and therefore denies same.

30.     Surface soils south of Building 114 were found to contain PAHs from Defendants' operations at the Property.

**RESPONSE:**     BIW denies that it had any operations at the Property.  BIW is without knowledge or information sufficient to admit or deny whether "[s]urface soils south of Building 114 were found to contain PAHs," and therefore denies same.  BIW is also without knowledge or information sufficient to admit or deny the allegations of Paragraph 30 as alleged against Congoleum, and therefore denies same.

31.     During its operations, Defendants spilled hazardous substances including PCBs, PAHs, and chlorinated solvents such as PCE and TCE onto the floors and walls of buildings at the Property.

**RESPONSE:**     BIW denies the allegations of Paragraph 31 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 31 as alleged against Congoleum, and therefore denies same.

32.     In some buildings, Defendants covered up spilled PCB-containing material, rather than remove it.  The very type of PCBs and other hazardous substances identified in Defendants' patents were found in tarry material sandwiched between a double layer floor slab in another building Defendants restored after fire damage, also in or around 1945 ("Building 31").

**RESPONSE:**     BIW denies the allegations of Paragraph 32 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 32 as alleged against Congoleum, and therefore denies same.

33.     In some buildings, the spilled PCB-containing material remained uncovered and was later abraded by ongoing activities, repeatedly causing PCB-laden dust to be emitted into the ambient air and to settle in soils at the Property and at other properties.

**RESPONSE:**      BIW denies the allegations of Paragraph 33 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 33 as alleged against Congoleum, and therefore denies same.  To the extent Paragraph 33 purports to allege facts related to occurrences during Plaintiffs' acquisition, ownership, or operation of the Property, BIW is without knowledge or information sufficient to admit or deny those allegations, and therefore denies same.

34.      During and after Defendants' ownership and operation of the Property, hazardous substances, including PCBs, PAHs, PCE and TCE, collected in floor drains, in an outdoor drainage trench surrounding Building 114, in sumps, and in other collection features, and from these areas they leached, leaked, flowed or were otherwise released into the soil and groundwater at the Property.

**RESPONSE:**      BIW denies that it ever owned or operated the Property and otherwise denies the allegations of Paragraph 34 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 34 as alleged against Congoleum, and therefore denies same.

35.      Materials containing hazardous substances resulting from Defendants' operations at the Property, including PCBs, metals, and PAHs, were found at the bottom of reservoirs at the Property, including immersed within groundwater.

**RESPONSE:**      BIW denies that it had any operations at the Property and otherwise denies the allegations of Paragraph 35 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 35 as alleged against Congoleum, and therefore denies same.

36.      Chlorinated solvents from Defendants' operations, including PCE, TCE, and their breakdown products, were discovered in groundwater throughout the Property.

**RESPONSE:**      BIW denies that it had any operations at the Property and otherwise denies the allegations of Paragraph 36 as alleged against BIW.  BIW is without knowledge or

information sufficient to admit or deny the allegations of Paragraph 36 as alleged against Congoleum, and therefore denies same.

37.    The Property-wide distribution of the hazardous substances clearly indicates that the responsible party is one that made use of the entire Property.

**RESPONSE:**    Denied.

38.    The only entities to have used the entire Property are Defendants.

**RESPONSE:**    BIW denies that it ever used the Property and therefore denies the allegations of Paragraph 38 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 38 as alleged against Congoleum, and therefore denies same.

39.    During and after Defendants' ownership and operation of the Property, hazardous substances, including PCBs, PAHs, PCE and TCE, were emitted into the atmosphere and spread into the air, soil and groundwater at the Property and at other properties.

**RESPONSE:**    BIW denies that it owned or operated the Property and otherwise denies the allegations of Paragraph 39 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 39 as alleged against Congoleum, and therefore denies same.

40.    Defendants discharged, caused or contributed to the discharge of, and/or are otherwise responsible for, the hazardous substances at the Property, including PCBs, PAHs, PCE, and TCE.

**RESPONSE:**    BIW denies the allegations of Paragraph 40 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 40 as alleged against Congoleum, and therefore denies same.

**<u>Defendants' Knowledge and Failure to Warn or Clean Up the Contamination</u>**

41.    After operating and contaminating the Property, Defendants later conveyed it to an unsuspecting buyer which, approximately two years later, conveyed the Property to DVL's predecessor, which was equally unsuspecting.

**RESPONSE:**     BIW denies that it operated, contaminated, and/or conveyed the Property.  BIW is without knowledge or information sufficient to admit or deny the remaining allegations against BIW set forth in Paragraph 41, and therefore denies same.  BIW is also without knowledge or information sufficient to admit or deny the allegations of Paragraph 41 as alleged against Congoleum, and therefore denies same.

42.     The toxic effects of PCBs are unquestionable and significant.  For that reason, they have been banned from sale in the United States for decades.

**RESPONSE:**     BIW admits that PCBs have toxic effects and have been generally banned from sale in the United States for decades.  Except as so pleaded, BIW is without knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 42, and therefore denies same.

43.     The toxic effects of PCBs were recognized as early as 1936, when the Senior Surgeon with the United States Public Health Service, Dr. Lewis Schwartz, wrote a paper warning about the dangers of PCBs.  And at about the same time, major manufacturers realized the dangers as well.

**RESPONSE:**     BIW admits that PCBs are considered dangerous in certain circumstances.  Except as so pleaded, BIW is without knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 43, and therefore denies same.

44.     Defendants knew, or should have known, of the risks of PCBs by the time they resumed their post-war production at the Property, and most certainly by the time they sold the Property in around 1960.

**RESPONSE:**     BIW denies that it engaged in production at the Property, denies that it ever owned or sold the Property, and otherwise denies the allegations of Paragraph 44 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 44 as alleged against Congoleum, and therefore denies same.

45.     Yet, neither when they sold the Property, nor later, did Defendants reveal to any of the subsequent owners that Defendants had left PCBs and other contamination at the Property.

**RESPONSE:**     BIW denies that it ever owned or sold the Property and otherwise denies the allegations of Paragraph 45 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 45 as alleged against Congoleum, and therefore denies same.

46.     At no time after selling the Property did Defendants make any effort to investigate or clean up the contamination for which they were responsible at the Property.

**RESPONSE:**     BIW denies that it ever owned or sold the Property and denies that it is responsible for any alleged contamination at the Property.  BIW denies any remaining allegations against BIW set forth in Paragraph 46.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 46 as alleged against Congoleum, and therefore denies same.

<u>**DVL's Discovery of the Contamination, and DVL's Damages**</u>

47.     It wasn't until years later, during the course of redevelopment in 2015, that DVL encountered the PCBs and other hazardous substances at the Property and had to remediate them at a monumental cost.

**RESPONSE:**     BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 47, and therefore denies same.

48.     In order to preserve its investment in the Property, which otherwise was greatly diminished in value due to the hazardous substances, DVL was required to expend substantial sums to address the hazardous substances for which Defendants were responsible.  Together, DVL's damages amount to over $19 million.

**RESPONSE:**     BIW is without knowledge or information sufficient to admit or deny the amount of money allegedly spent by Plaintiffs to remediate the Property but, regardless of the amount spent, BIW denies that it is responsible or liable for any alleged contamination of the Property.  BIW denies any remaining allegations against BIW set forth in Paragraph 48.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 48 as alleged against Congoleum, and therefore denies same.

49.     DVL's costs include, but are not limited to, investigating, monitoring, and removing the hazardous substances at the Property.

**RESPONSE:**     BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 49, and therefore denies same.

50.     As the entity responsible for the contamination and later failing to warn of it, Defendants are liable to DVL for these damages.

**RESPONSE:**     BIW denies that it is responsible for any alleged contamination.  The remaining allegations contained in Paragraph 50 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the remaining allegations of Paragraph 50 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 50 as alleged against Congoleum, and therefore denies same.

51.     DVL has suffered consequential damages due to contamination by hazardous substances, including PCBs, PAHs, PCE, and TCE.

**RESPONSE:**     BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 51, and therefore denies same.

## COUNT I – CERCLA

52.     DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

**RESPONSE:**     BIW repeats and incorporates its responses to the allegations of the above paragraphs as if fully set forth herein.

53.     Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et. seq.* ("CERCLA"), provides that any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of shall be strictly liable for costs of response incurred by any other person consistent with the national contingency plan ("NCP").  42 U.S.C. § 9607(a).

**RESPONSE:**     The allegations contained in Paragraph 53 purport to quote or characterize the law, to which no response is required, and BIW therefore neither admits nor denies same.

54.     PCBs, PAHs, PCE, TCE and their breakdown products, and the other hazardous substances described herein, are "hazardous substances" as defined under CERCLA Section 101, 42 U.S.C. § 9601.

**RESPONSE:**     The allegations contained in Paragraph 54 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

55.     Defendants and DVL are "persons" as defined at CERCLA Section 101, 42 U.S.C. § 9601.

**RESPONSE:**     The allegations contained in Paragraph 55 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

56.     The Property is a "facility" as defined at CERCLA Section 101, 42 U.S.C. § 9601.

**RESPONSE:**     The allegations contained in Paragraph 56 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

57.     Defendants are past "owner[s] or operator[s]" of the Property, as defined at CERCLA Section 101, 42 U.S.C. § 9601.

**RESPONSE:**     The allegations contained in Paragraph 57 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 57 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 57 as alleged against Congoleum, and therefore denies same.

58.     Defendants "disposed of" and "released" the hazardous substances to the environment at the Property and/or owned or operated the Property during the "disposal" and "release" of hazardous substances, as those terms are defined at CERCLA Section 101, 42 U.S.C. § 9601.

**RESPONSE:**      The allegations contained in Paragraph 58 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 58 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 58 as alleged against Congoleum, and therefore denies same.

59.      The hazardous substances described herein have resulted in the "release" of hazardous substance into the environment and the threat of "release" of hazardous substances into the environment, as that term is defined at CERCLA Section 101, 42 U.S.C. § 9601.

**RESPONSE:**      The allegations contained in Paragraph 59 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

60.      DVL has performed monitoring, evaluation, and other "responses" due to the release or threatened release of hazardous substances and petroleum at the Property, as defined at CERCLA Section 101, 42 U.S.C. § 9601.

**RESPONSE:**      To the extent Paragraph 60 purports to allege facts related to occurrences during Plaintiffs' acquisition, ownership, or operation of the Property, BIW is without knowledge or information sufficient to admit or deny those allegations, and therefore denies same. The remaining allegations contained in Paragraph 60 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

61.      The monitoring, assessment and response costs DVL incurred as a result of Defendants' release of hazardous substances were reasonable and necessary to comply with CERCLA, and were consistent with the NCP.

**RESPONSE:**      BIW denies that it released any hazardous substances at the Property or that Plaintiffs incurred any costs as a result of hazardous substances allegedly released by BIW. BIW is without knowledge or information sufficient to admit or deny allegations regarding any costs DVL allegedly incurred, and therefore denies same.  The remaining allegations contained in Paragraph 61 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the remaining allegations of Paragraph 61 as alleged against

BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 61 as alleged against Congoleum, and therefore denies same.

62.     Defendants are persons responsible for the releases of hazardous substances to the environment at the Property, pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

**RESPONSE:**     The allegations contained in Paragraph 62 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 62 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 62 as alleged against Congoleum, and therefore denies same.

63.     Defendants are strictly liable to DVL for its monitoring, assessment and response costs incurred with respect to the hazardous substances at the Property, pursuant to CERCLA Section 107, 42 U.S.C. § 9607.

**RESPONSE:**     The allegations contained in Paragraph 63 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 63 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 63 as alleged against Congoleum, and therefore denies same.

## COUNT II -NEW JERSEY SPILL ACT

64.     DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

**RESPONSE:**     BIW repeats and incorporates its responses to the allegations of the above paragraphs as if fully set forth herein.

65.     PCBs, PAHs, PCE, TCE and their breakdown products, and the other hazardous substances found at the Property as alleged herein, are hazardous substances as defined at Section 58:10-23.11b of the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J. Stat. § 58:10-23.11b.

**RESPONSE:**      The allegations contained in Paragraph 65 constitute legal conclusions

to which no response is required, and BIW therefore neither admits nor denies same.

66.      The Spill Act provide that:

Except as provided in section 2 of P.L.2005, c.43 (C.58:10-23.l lg 12), any person
who has discharged a hazardous substance, or is in any way responsible for any
hazardous substance, shall be strictly liable, jointly and severally, without regard to
fault, for all cleanup and removal costs no matter by whom incurred.

N.J.S.A. 58:10-23.11g(c)(l).

**RESPONSE:**      The allegations contained in Paragraph 66 purport to quote or

characterize the law, to which no response is required, and BIW therefore neither admits nor denies

same.

67.      A "discharge," as defined by the Spill Act, is "any intentional or unintentional
action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting,
emptying or dumping of hazardous substances into the waters or onto the lands of the State."
N.J.S.A. § 58:10-23.11b.

**RESPONSE:**      The allegations contained in Paragraph 67 purport to quote or

characterize the law, to which no response is required, and BIW therefore neither admits nor denies

same.

68.      Defendants' acts and/or omissions have resulted in the releasing, spilling, leaking,
pumping, pouring, emitting, emptying, and/or dumping of hazardous substances into the waters
and onto the lands of the State.

**RESPONSE:**      BIW denies the allegations of Paragraph 68 as alleged against BIW.

BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph

68 as alleged against Congoleum, and therefore denies same.

69.      Defendants "discharged" hazardous substances at the Property, as that term is
defined at Section 58:10-23.11b of the Spill Act, N.J.S.A. § 58:10-23.11b.

**RESPONSE:**      The allegations contained in Paragraph 69 constitute legal conclusions

to which no response is required.  To the extent a response is required, BIW denies the allegations

of Paragraph 69 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 69 as alleged against Congoleum, and therefore denies same.

70.    Defendants are persons "in any way responsible" for the PCB, PAHs, PCE, TCE and other hazardous substances at the Property.

**RESPONSE:**    The allegations contained in Paragraph 70 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 70 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 70 as alleged against Congoleum, and therefore denies same.

71.    As a result of the hazardous substances at the Property which Defendants discharged and for which it is responsible, DVL has incurred "clean up and removal" costs, as those terms are defined at Section 58:10-23.11b of the Spill Act, § 58:10-23.11b, which includes but is not limited to "reasonable measures to prevent or mitigate damage to the public health, safety, or welfare."

**RESPONSE:**    BIW denies that it discharged any hazardous substances at the Property and denies that Plaintiffs incurred any cleanup and removal costs as a result of hazardous substances allegedly discharged by BIW.  BIW is without knowledge or information sufficient to admit or deny the remaining allegations against BIW set forth in Paragraph 71, and therefore denies same.  BIW is also without knowledge or information sufficient to admit or deny the allegations of Paragraph 71 as alleged against Congoleum, and therefore denies same.

72.    The cleanup and removal costs DVL incurred as a result of Defendants' release of hazardous substances were reasonable and necessary to comply with the Spill Act.

**RESPONSE:**    BIW denies that it released any hazardous substances at the Property and denies that Plaintiffs incurred any cleanup and removal costs as a result of hazardous substances allegedly released by BIW.  BIW is without knowledge or information sufficient to admit or deny allegations regarding any costs DVL allegedly incurred, and therefore denies same.

The remaining allegations contained in Paragraph 72 constitute legal conclusions to which no response is required. To the extent a response is required, BIW denies the remaining allegations of Paragraph 72 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 72 as alleged against Congoleum, and therefore denies same.

73.     As a result of Defendants' discharge of hazardous substances to the environment at the Property, DVL has suffered additional and ongoing damages.

**RESPONSE:**     BIW denies the allegations of Paragraph 73 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 73 as alleged against Congoleum, and therefore denies same.

74.     Defendants are liable to DVL for its cleanup costs and other damages pursuant to N.J.S.A. § 58:10-23.11g(c).

**RESPONSE:**     The allegations contained in Paragraph 74 constitute legal conclusions to which no response is required. To the extent a response is required, BIW denies the allegations of Paragraph 74 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 74 as alleged against Congoleum, and therefore denies same.

75.     The Spill Act provides that:

Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.

N.J.S.A. § 58:10-23.11f(a)(2)(a).

**RESPONSE:**     The allegations contained in Paragraph 75 purport to quote or characterize the law, to which no response is required, and BIW therefore neither admits nor denies same.

76.     The investigation, monitoring, assessment and cleanup costs DVL incurred as a result release of hazardous substances which Defendants discharged and for which they are responsible were reasonable and necessary.

**RESPONSE:**     BIW denies that it discharged any hazardous substances at the Property

and denies that it is responsible for the release of any hazardous substances.  BIW is without

knowledge or information sufficient to admit or deny allegations regarding any costs DVL

allegedly incurred, and therefore denies same.  The remaining allegations contained in Paragraph

76 constitute legal conclusions to which no response is required.  To the extent a response is

required, BIW denies the remaining allegations of Paragraph 76 as alleged against BIW.  BIW is

without knowledge or information sufficient to admit or deny the allegations of Paragraph 76 as

alleged against Congoleum, and therefore denies same.

77.     Defendants are liable to DVL for its cleanup and removal costs and other damages pursuant to N.J.S.A. § 58:10-23.11f(a)(2)(a).

**RESPONSE:**     The allegations contained in Paragraph 77 constitute legal conclusions

to which no response is required.  To the extent a response is required, BIW denies the allegations

of Paragraph 77 as alleged against BIW.  BIW is without knowledge or information sufficient to

admit or deny the allegations of Paragraph 77 as alleged against Congoleum, and therefore denies

same.

## COUNT III – PUBLIC NUISANCE

78.     DVL repeats and incorporates the above paragraphs by reference as fully as though the same were set forth herein at length.

**RESPONSE:**     BIW repeats and incorporates its responses to the allegations of the

above paragraphs as if fully set forth herein.

79.     The public has a right to uncontaminated air, soil and groundwater.

**RESPONSE:**     The allegations contained in Paragraph 79 constitute legal conclusions

to which no response is required, and BIW therefore neither admits nor denies same.

80.     The discharge and presence of hazardous substances at the Property interferes with the public's right to uncontaminated air, soil and groundwater.

**RESPONSE:**     The allegations in Paragraph 80 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

81.     As a result of the discharge and presence of hazardous substances, DVL has suffered, and is suffering, special injury by being deprived of the use and enjoyment of soil and groundwater beneath the Property, by incurring costs to assess and respond to the hazardous substances, and by suffering a diminished value of the Property.

**RESPONSE:**     The allegations in Paragraph 81 constitute legal conclusions to which no response is required, and BIW therefore neither admits nor denies same.

82.     Defendants are liable to DVL for its damages resulting from the discharge and presence of hazardous substances at the Property.

**RESPONSE:**     The allegations contained in Paragraph 82 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 82 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 82 as alleged against Congoleum, and therefore denies same.

## COUNT IV – NEGLIGENCE

83.     DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

**RESPONSE:**     BIW repeats and incorporates its responses to the allegations of the above paragraphs as if fully set forth herein.

84.     Defendants had a duty to act with reasonable care with respect to the handling, use and disposal of PCBs, PAHs, PCE, TCE, and other hazardous materials at the Property.

**RESPONSE:**     The allegations contained in Paragraph 84 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 84 as alleged against BIW.  BIW is without knowledge or information sufficient to

admit or deny the allegations of Paragraph 84 as alleged against Congoleum, and therefore denies same.

85.     Defendants failed to act with reasonable care with respect to the handling, use and disposal of PCBs, PAHs, PCE, TCE, and other hazardous materials at the Property.

**RESPONSE:**     BIW denies the allegations of Paragraph 85 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 85 as alleged against Congoleum, and therefore denies same.

86.     Defendants' handling, use and disposal of hazardous substances at the Property created a dangerous condition at the Property.

**RESPONSE:**     BIW denies the allegations of Paragraph 86 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 86 as alleged against Congoleum, and therefore denies same.

87.     Defendants failed to clean up the dangerous condition it created at the Property.

**RESPONSE:**     BIW denies the allegations of Paragraph 87 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 87 as alleged against Congoleum, and therefore denies same.

88.     Defendants knew, or should have known, of the toxic effects of PCBs, PAHs, PCE, TCE, and other hazardous materials which they handled, used, and disposed at the Property, and of the resultant dangerous condition for which Defendants were responsible.

**RESPONSE:**     BIW denies the allegations of Paragraph 88 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 88 as alleged against Congoleum, and therefore denies same.

89.     Defendants had a duty to warn subsequent owners and operators of the Property, including DVL, concerning the past handling, use, and disposal of hazardous substances and the resultant dangerous conditions existing at the Property.

**RESPONSE:**     The allegations contained in Paragraph 89 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations

of Paragraph 89 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 89 as alleged against Congoleum, and therefore denies same.

90.    Defendants failed to warn subsequent owners and operators of the Property, including DVL, concerning the hazardous substances and the resultant dangerous conditions existing at the Property.

**RESPONSE:**    BIW denies the allegations of Paragraph 90 as alleged against BIW. BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 90 as alleged against Congoleum, and therefore denies same.

91.    As a direct and proximate result of Defendants' negligence, DVL has suffered and continues to suffer damages.

**RESPONSE:**    BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 91 that "DVL has suffered and continues to suffer damages," and therefore denies same.  The remaining allegations contained in Paragraph 91 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the remaining allegations of Paragraph 91 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 91 as alleged against Congoleum, and therefore denies same.

92.    The above actions by Defendants constitute negligence.

**RESPONSE:**    The allegations contained in Paragraph 92 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 92 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 92 as alleged against Congoleum, and therefore denies same.

## COUNT V – STRICT LIABILITY/ABNORMALLY DANGEROUS ACTIVITY

93.    DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

**RESPONSE:**    BIW repeats and incorporates its responses to the allegations of the above paragraphs as if fully set forth herein.

94.    The above actions by Defendants constitute abnormally dangerous activity.

**RESPONSE:**    The allegations contained in Paragraph 94 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the allegations of Paragraph 94 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 94 as alleged against Congoleum, and therefore denies same.

95.    As a direct and proximate result of Defendants' abnormally dangerous activity, DVL has suffered and continues to suffer damages.

**RESPONSE:**    BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 95 that "DVL has suffered and continues to suffer damages," and therefore denies same.  The remaining allegations contained in Paragraph 95 constitute legal conclusions to which no response is required.  To the extent a response is required, BIW denies the remaining allegations of Paragraph 95 as alleged against BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of Paragraph 95 as alleged against Congoleum, and therefore denies same.

## COUNT VI - UNJUST ENRICHMENT

96.    DVL repeats and incorporates the above paragraphs by reference as if fully set forth herein.

**RESPONSE:**    BIW repeats and incorporates its responses to the allegations of the above paragraphs as if fully set forth herein.

97.     Defendants have been unjustly enriched in that it enjoyed profits in its sale of the Property, while neglecting to incur the necessary costs to clean up hazardous substances for which it was responsible, leaving those hazardous substances and costs to unsuspecting subsequent owners.

**RESPONSE:**     BIW denies that it is responsible for any alleged release or discharge of

hazardous substances at the Kearny Property or any alleged costs related thereto.  BIW also denies

that it ever owned or sold the Kearny Property.  The remaining allegations contained in Paragraph

97 constitute legal conclusions to which no response is required.  To the extent a response is

required, BIW denies the remaining allegations of Paragraph 97 as alleged against BIW.  BIW is

without knowledge or information sufficient to admit or deny the allegations of Paragraph 97 as

alleged against Congoleum, and therefore denies same.

98.     DVL is entitled to recover from Defendants DVL's costs for all past, present and future damages resulting from the release and discharge of hazardous substances at the Property.

**RESPONSE:**     BIW denies that it is responsible or liable for any alleged release or

discharge of hazardous substances at the Kearny Property.  The remaining allegations contained

in Paragraph 98 constitute legal conclusions to which no response is required.  To the extent a

response is required, BIW denies the remaining allegations of Paragraph 98 as alleged against

BIW.  BIW is without knowledge or information sufficient to admit or deny the allegations of

Paragraph 98 as alleged against Congoleum, and therefore denies same.

## **PRAYER FOR RELIEF**

To the extent that Plaintiffs' prayer for relief requires an answer, BIW denies that Plaintiffs

are entitled to any relief.  BIW denies any remaining allegations contained in the prayer for relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

Plaintiffs fail to state claims upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

**(Improperly Named Defendant)**

BIW is not a proper defendant in any action arising from the conduct alleged in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

**(Unclean Hands)**

Plaintiffs' claims for relief are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

**(Failure to Mitigate Damages)**

Plaintiffs' claims are barred by reason of their failure to reasonably mitigate their damages.

### FIFTH AFFIRMATIVE DEFENSE

**(Assumption of the Risk)**

Plaintiffs assumed the risks inherent in the activities engaged in by Plaintiffs and their privies.

### SIXTH AFFIRMATIVE DEFENSE

**(Comparative Fault)**

Plaintiffs are barred from recovery to the extent that the percentage of fault attributable to their own acts and wrongful conduct exceeds the combined fault, if any, of Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

### (Wrongful Conduct)

Plaintiffs' recovery is limited to the extent their own acts and wrongful conduct contributed to cause the damages which they seek to recover.

## EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiffs' claims are barred by applicable statutes of limitations, statutes of repose, or other applicable limitations.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

Plaintiffs' claims are barred by the doctrine of laches.

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiffs are estopped from bringing the above-captioned matter due to Plaintiffs' own prior wrongful, negligent, and inappropriate acts and conduct with regard to the subject matter.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Res Judicata)

Plaintiffs are estopped from bringing the above-captioned matter against BIW under the doctrine of *res judicata*.

## TWELFTH AFFIRMATIVE DEFENSE

### (Issue Preclusion)

Plaintiffs are estopped from bringing the above-captioned matter against BIW under the doctrine of issue preclusion.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (CERCLA § 107(b) Defenses)

The release or threat of release of hazardous substances at the Kearny Property, if any, was caused solely by an act of God, an act of war, or an act or omission of third parties as set forth in 42 U.S.C. § 9607(b).

## FOURTEENTH AFFIRMATIVE DEFENSE

### (New Jersey Spill Act Defenses)

BIW is not liable for any cleanup or removal costs under the New Jersey Spill Act because the discharge of hazardous substances was caused solely by war, sabotage, or God or a combination thereof pursuant to N.J. STAT. § 58:10-23.11g.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Non-Recoverable Costs)

Plaintiffs' purported claims are barred insofar as Plaintiffs seek to recover costs, expenses, and damages other than response costs, as that term is defined in 42 U.S.C. § 9601(23), (24), and (25) or "cleanup and removal costs" as defined in N.J. Stat. § 58. 10-23.11b.

## SIXTHTEENTH AFFIRMATIVE DEFENSE

### (Costs Not Recoverable Under CERCLA)

The claims alleged in the Complaint are barred insofar as Plaintiffs seek to recover costs, damages, and expenses that are not "necessary costs of response," and were not incurred "consistent with the National Contingency Plan" and conditions precedent as required by CERCLA (42 U.S.C. §§ 9605, 9607(a)(4)(A)-(B) and 40 C.F.R. § 300, *et seq*.).

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Equitable Allocation)

Pursuant to CERCLA, 42 U.S.C. § 9613(f)(1), this Court is requested to consider such equitable factors as it deems appropriate in resolving Plaintiffs' claims.  BIW is informed and believes and thereon alleges that upon reviewing such equitable factors, this Court will determine that BIW bears no responsibility for any response costs.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Comparative Fault of Third Parties)

The damages suffered by Plaintiffs, if any, proximately resulted from the negligence, breach of conduct, or other fault or misconduct of parties, persons, and/or entities other than BIW, and the liability of BIW, if any, must be limited in direct proportion to the percentage of fault actually attributable to BIW.

## NINTEENTH AFFIRMATIVE DEFENSE

### (Allocation/Contribution)

The damages suffered by Plaintiffs, if any, proximately resulted from the negligence and/or tortious and/or wrongful conduct of parties, persons, and/or entities other than BIW.  BIW is therefore entitled to an allocation and/or contribution of damages according to the percentage of fault of each other such party.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Failure to Join Necessary or Indispensable Parties)

The Complaint fails to name or join all necessary parties pursuant to Federal Rule of Civil Procedure 19.  Without these parties, including but not limited to Plaintiffs' tenants, the purported claims asserted in the Complaint cannot fully, finally, and completely be resolved.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Setoff or Recoupment)

To the extent Plaintiffs have received or hereafter receive any of the requested relief from a person or entity other than BIW, including a governmental agency, a development authority, a named defendant, or other third party, including an insurer, any recovery against BIW should be barred or reduced accordingly.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Superseding or Intervening Independent Cause)

Any and all losses, injuries, or damages alleged in the Complaint were the result of superseding or intervening causes arising from acts or omissions of individuals and/or entities that BIW neither controlled nor had the legal right to control.  Therefore, any and all alleged losses, injuries, or damages were not proximately caused by any act, omission, or other conduct of BIW.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Compliance with Laws)

All conduct and activities of BIW conformed to all statutes, regulations and industry standards, according to the state of knowledge existing at the times of the conduct.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Duty of Care)

BIW owed no obligation or duty at any time, either express or implied to Plaintiffs.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Other Defenses)

BIW reserves the right to amend its answer to raise additional affirmative defenses as they become available or apparent to it through discovery in this matter or otherwise.

WHEREFORE, on the basis of the answers, denials, and defenses stated herein, BIW respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice and enter judgment in favor of BIW; award BIW costs expended in defending this litigation, including, but not limited to, court costs and attorneys' fees; and grant such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

BIW demands a trial by jury on all issues so triable.

## COUNTERCLAIMS

Bath Iron Works Corporation ("BIW"), by way of these Counterclaims against DVL, Inc. and DVL Kearny Holdings, LLC (together, "DVL"), alleges and states as follows:

### INTRODUCTION

1.      DVL filed the above-captioned action to recover damages for the alleged discharge of polychlorinated biphenyls ("PCBs") and other hazardous substances at a piece of property located at 160-194 Passaic Avenue in Kearny, New Jersey (the "Kearny Property").

2.      DVL or its predecessors have been in possession of the Kearny Property for nearly 60 years and have continued to operate its business thereon.  Since purchasing the Kearny Property in approximately 1960, DVL or its predecessors have operated facilities, or permitted the operation of facilities by its tenants both on and adjacent to the Kearny Property, that resulted in the alleged spill, discharge, and release of hazardous substances into the environment that DVL alleges it has been required to investigate and remediate.

3.      Since its founding in 1884, BIW has built private, commercial and military ships at a shipyard located in Bath, Maine.  BIW has never owned or operated any business on the Kearny Property.

4.      By way of these Counterclaims, BIW seeks declaratory judgment that DVL, as owner and operator of the Kearny Property for nearly 60 years, is responsible for the alleged environmental conditions at the Kearny Property; contribution from DVL; and indemnification from DVL for any damages or costs of suit incurred by BIW in this action.

### PARTIES

5.      BIW is a corporation formed under the laws of the State of Maine with its principal place of business at 700 Washington Street, Bath, Maine 04530.

6.      DVL, Inc. and DVL Kearny Holdings, LLC are businesses incorporated in the State of Delaware and authorized to do business in the State of New Jersey, with a business address of 70 E 55th St., New York, NY 10022.

## JURISDICTION AND VENUE

7.      BIW's counterclaims form part of the same case or controversy as DVL's claims, and therefore this Court has jurisdiction over BIW's counterclaims pursuant to 28 U.S.C. § 1367(a).

8.      This Court, before which Plaintiffs filed the above-captioned action, is the appropriate venue pursuant to 42 U.S. Code § 9613(b), as Plaintiffs allege that the release of hazardous substances and their alleged damages occurred in this judicial district and these counterclaims arise out of the alleged occurrence that is the subject matter of Plaintiffs' claims.

## FACTUAL BACKGROUND

9.      On June 12, 2017, DVL filed a complaint against Congoleum Corporation ("Congoleum") seeking damages for the remediation of the Kearny Property due to alleged environmental contamination.

10.     On October 6, 2017, Congoleum filed a third-party complaint against BIW asserting, *inter alia*, claims against BIW for contribution and indemnification.

11.     On October 26, 2017, following Congoleum's lead, DVL filed an amended complaint adding BIW as a defendant.

12.     In or around 1960, DVL or its predecessor purchased the Kearny Property from Congoleum-Nairn, Inc. ("Congoleum-Nairn").

13.     Throughout DVL's ownership of the Kearny Property, DVL operated the site as an industrial park.  DVL contracted with hundreds of different tenants, and these tenants conducted

manufacturing operations, adhesives-related activities, coating operations, and other operations at the Kearny Property.

14.    Industrial operations at the Kearny Property during DVL's ownership have included, but have not been limited to, heavy manufacturing, production of adhesives, production and application of industrial or protective coatings, metalworking, production and mixing of chemicals, production of plastics and resins, production of dyes and pigments, production of textiles, furniture manufacturing, storage and handling of petroleum products, and maintenance and repair of automobiles.

15.    During the course of these operations, DVL and/or its tenants generated, manufactured, treated, stored and disposed of various petroleum products and hazardous substances at the Kearny Property, including, but not limited to, acetone, heptane, hexane, methyl ethyl ketone, toluene, PCBs, polycyclic aromatic hydrocarbons ("PAHs"), tetrachloroethylene ("PCE"), trichloroethylene ("TCE"), resins, asphalt, waste oil, solvents, and other corrosive, explosive, and flammable substances.

16.    On numerous occasions throughout the course of its ownership and operation of the Kearny Property, DVL and its tenants received notices of violations and other citations from government entities concerning the filthy and hazardous conditions that DVL permitted to exist at the Kearny Property, including conditions that resulted in the discharge and release of hazardous substances into the environment at the Kearny Property.

17.    On numerous occasions throughout the course of its ownership and operation of the Kearny Property, DVL permitted hazardous substances to be stored in open containers, leak from piping, and spill onto floors without proper containment. These hazardous substances were

ultimately discharged and released into the environment during DVL's ownership of the Kearny Property.

18.     As a result of the filthy and dangerous conditions that DVL permitted to exist, multiple fires occurred at the Kearny Property, which resulted in explosions of drums containing chemical compounds. As a result of these fires and explosions, hazardous substances were discharged and released into the environment during DVL's ownership of the Kearny Property.

19.     During the course of its ownership and operation of the Kearny Property, DVL and its tenants stored industrial chemical waste outdoors at the Kearny Property, which resulted in the discharge and release of hazardous substances into the environment.

20.     During the course of its ownership and operation of the Kearny Property, DVL and its tenants stored adhesives and other materials containing hazardous substances in drums that ruptured, spilling their contents onto floors that were not properly cleaned, resulting in the spreading, discharging, and releasing of hazardous substances into the environment.

21.     During the course of its ownership and operation of the Kearny Property, DVL and its tenants stored waste chemicals in 55-gallon drums on the property and allowed the drums to deteriorate, resulting in the discharge and release of hazardous substances into the environment.

22.     During nearly 60 years of sloppy practices at the Kearny Property, DVL and its tenants discharged and released hazardous substances that DVL knew or should have known would enter the environment, thereby contaminating the soil, air, groundwater, and surface water features at or emanating from the Kearny Property.

23.     Throughout its ownership and operation of the Kearny Property, DVL failed to properly investigate or remediate environmental conditions at or emanating from the Kearny Property.

24.     As a result of the foregoing acts and omissions of DVL and its tenants, any claims, costs, or liabilities concerning environmental conditions at or emanating from the Kearny Property are the responsibility of DVL.

25.     BIW has never owned or operated any business in Kearny, New Jersey.  Rather, BIW was incorporated in Maine in 1884.  BIW operates a shipbuilding facility located in Bath, Maine.  For more than a century, BIW has manufactured recreational, commercial, and military ships.  Today, BIW builds destroyers for the United States Navy at its Bath, Maine, shipyard. Defendant Congoleum, a flooring business that has operated in Kearny, New Jersey, has improperly brought BIW into this lawsuit.  Congoleum, not BIW, is the successor-in-interest to any environmental liabilities that may relate to the resilient flooring business previously conducted at the Kearny Property.

**CLAIM 1: CONTRIBUTION UNDER CERCLA**

26.     BIW restates and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them by reference.

27.     Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), "[a]ny person may seek contribution from any other person who is liable or potentially liable under [CERCLA § 107(a)] during any civil action under . . . [CERCLA § 107(a)]."

28.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), liability attaches when: (a) the defendant is a potentially responsible party under CERCLA; (b) hazardous substances were disposed of at a facility; (c) there has been a release or threatened release of hazardous substances from the facility into the environment; and (d) the release or threatened release has required or will require the plaintiff to incur response costs.

29.     Under CERCLA, potentially responsible parties include: (a) the current owner or operator or a facility; (b) any person who owned or operated the facility at the time of the disposal of a hazardous substance; (c) any person who arranged for the disposal or transport for disposal of hazardous substances at a facility; and (d) any person who accepts hazardous substances for transport to sites selected by said person.

30.     Hazardous substances as defined by CERCLA were either (1) disposed of or released at the Kearny Property by DVL, or (2) disposed of or released by third parties during the time of DVL's ownership or operation of the Kearny Property.

31.     The Kearny Property is a "facility" as defined under Section 101, 42 U.S.C. § 9601.

32.     DVL is a potentially responsible party pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

33.     In the event that BIW is found liable in this action or is required to pay any portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at the Kearny Property, then BIW will have incurred necessary response costs consistent with the National Contingency Plan.

34.     In the event that BIW is found liable in this action or is required to pay any portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at the Kearny Property, DVL is liable to BIW pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), for any amount that BIW is ordered to pay that is in excess of the equitable, proportionate share, if any, of BIW's liability.

**CLAIM 2: DECLARATORY JUDGMENT UNDER CERCLA**

35.     BIW restates and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them by reference.

36.     There exists a present and actual controversy under CERCLA § 107 between BIW and DVL concerning their respective rights and obligations in connection with response costs and contribution claims concerning the Kearny Property.

37.     BIW is entitled to judgment under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201 and 2202 against DVL declaring that DVL shall be liable to BIW for any and all costs and for contribution arising from the alleged contamination at or emanating from the Kearny Property that are in excess of BIW's equitable, proportionate share, if any, of any response costs and damages.  Such judgment shall be binding in any subsequent action to recover further costs and/or contribution arising from the same alleged contamination at issue in this action.

**CLAIM 3: CONTRIBUTION UNDER THE NEW JERSEY SPILL COMPENSATION AND CONTROL ACT**

38.     BIW restates and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them by reference.

39.     BIW is entitled to contribution from DVL based on the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J. STAT. § 58:10-23.11.  The New Jersey Spill Act provides that "[w]henever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance."  N.J. STAT. § 58:10-23.11f(a)(2).

40.     The Kearny Property is a "facility" as defined in the Spill Act.  N.J. STAT. § 58:10-23.11b.

41.     DVL has been in possession of the property for more than 50 years and has continued to operate its business thereon.  During their decades of sloppy practices at the Kearny

Property, DVL and its tenants discharged and released hazardous substances that DVL knew or should have known would enter the environment, thereby contaminating the soil, air, groundwater, and surface water features at or emanating from the Kearny Property.  Additionally, DVL owns and operates a number of properties that are adjacent to the Kearny Property, and it is likely that DVL's activities on adjacent properties have caused or contributed to contamination of the Kearny Property.

42.     As the owner of the Kearny Property at the time this lawsuit was filed, and as the owner of the Kearny Property at the time the hazardous substances were discharged into the environment at the Kearny Property, DVL is a person "in any way responsible" within the meaning of the contribution provisions of the Spill Act.  N.J. STAT. § 58:10-23.11f(a)(2).

43.     BIW has never operated or owned the Kearny Property.  BIW was not associated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW is a shipbuilding company and has never operated any shipbuilding activities on the Kearny Property.

44.     DVL is responsible for any alleged contamination of the Kearny Property.

45.     In the event that BIW is found liable in this action or is required to pay any portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at the Kearny Property, DVL is liable to BIW pursuant to the Spill Act, for any and all response costs that are in excess of BIW's equitable, proportionate share, if any, of the response costs and damages.

46.     As a person in any way responsible for the discharge of hazardous substances at the Kearny Property, DVL is also liable under the Spill Act for any and all future cleanup and response

costs resulting from the discharge of hazardous substances associated with its ownership and operations at the Kearny Property.

### CLAIM 4: CONTRIBUTION UNDER THE NEW JERSEY JOINT TORTFEASORS CONTRIBUTION LAW

47.     BIW restates and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them by reference.

48.     To the extent BIW is found liable for any costs associated with the alleged hazardous substances at the Kearny Property, BIW is entitled to contribution from DVL pursuant to the New Jersey Joint Tortfeasors Contribution Law, N.J. STAT. § 2A:53A-1, *et seq.*

49.     The New Jersey Joint Tortfeasors Contribution Law entitles a joint tortfeasor who pays the judgment in whole or in part to recover contribution from other joint tortfeasors for the excess paid over his pro rata share.

50.     As alleged above, DVL is a tortfeasor in this action.  DVL has been in possession of the property for more than 50 years and has continued to operate its business thereon.  During their decades of sloppy practices at the Kearny Property, DVL and its tenants discharged and released hazardous substances that DVL knew or should have known would enter the environment, thereby contaminating the soil, air, groundwater, and surface water features at or emanating from the Kearny Property.  Additionally, DVL owns and operates a number of properties that are adjacent to the Kearny Property, and it is likely that DVL's activities on adjacent properties have caused or contributed to contamination of the Kearny Property.

51.     BIW has never operated or owned the Kearny Property.  BIW was not associated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW is a shipbuilding company and has never operated any shipbuilding activities on the Kearny Property.

52.     To the extent BIW is legally compelled to pay for any costs associated with the alleged hazardous substances at the Kearny Property, it is entitled to contribution from DVL pursuant to the New Jersey Joint Tortfeasors Contribution Law.

### CLAIM 5: CONTRIBUTION UNDER THE NEW JERSEY COMPARATIVE NEGLIGENCE ACT

53.     BIW restates and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them by reference.

54.     To the extent BIW is found liable for any costs associated with the alleged hazardous substances at the Kearny Property, BIW is entitled to contribution from DVL pursuant to the New Jersey Comparative Negligence Act, §§ 2A:15-5.1–2A:15-5.8.

55.     The New Jersey Comparative Negligence Act entitles BIW to recover damages from DVL provided that BIW's negligence is not greater than the negligence of DVL.

56.     DVL has been in possession of the property for more than 50 years and has continued to operate its business thereon.  During their decades of sloppy practices at the Kearny Property, DVL and its tenants discharged and released hazardous substances that DVL knew or should have known would enter the environment, thereby contaminating the soil, air, groundwater, and surface water features at or emanating from the Kearny Property.  Additionally, DVL owns and operates a number of properties that are adjacent to the Kearny Property, and it is likely that DVL's activities on adjacent properties have caused or contributed to contamination of the Kearny Property.

57.     BIW has never operated or owned the Kearny Property.  BIW was not associated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW is a shipbuilding company and has never operated any shipbuilding activities on the Kearny Property.

58.     To the extent BIW is legally compelled to pay for any costs associated with the alleged hazardous substances at the Kearny Property, it is entitled to contribution from DVL pursuant to the New Jersey Comparative Negligence Act.

### CLAIM 6: CONTRIBUTION UNDER UNJUST ENRICHMENT

59.     BIW restates and realleges the allegations set forth in paragraphs 1 through 25 above and incorporates them by reference.

60.     To the extent BIW is found to be liable for any costs associated with the alleged hazardous substances at the Kearny Property, DVL will have been unjustly enriched by BIW's payments.

61.     DVL has been in possession of the property for more than 50 years and has continued to operate its business thereon.  During their decades of sloppy practices at the Kearny Property, DVL and its tenants discharged and released hazardous substances that DVL knew or should have known would enter the environment, thereby contaminating the soil, air, groundwater, and surface water features at or emanating from the Kearny Property.  Additionally, DVL owns and operates a number of properties that are adjacent to the Kearny Property, and it is likely that DVL's activities on adjacent properties have caused or contributed to contamination of the Kearny Property.

62.     BIW was not associated with Congoleum until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW is a shipbuilding company and has never operated any shipbuilding activities on the Kearny Property.

63.     If BIW is legally compelled to pay for any costs associated with the alleged hazardous substances at the Kearny Property, DVL will have received a benefit of payment at BIW's expense.

64.     Retention of BIW's payment would be unjust, as BIW has never owned or operated any businesses on the Kearny Property.  DVL, however, continued to operate on the property until very recently and will unjustly benefit from any remediation of the property.

65.     Additionally, when DVL purchased the Kearny Property, it knew it was purchasing a former manufacturing facility.  Its purchase price that reflected the industrial nature of the property.  DVL continued to operate the Kearny Property as an industrial property for decades.  In developing the property, DVL remediated to the more stringent residential standards, which increased the cost of the remediation as well as the value of the property.  DVL is now demanding that Congoleum and BIW pay the costs of remediating the property while DVL retains the benefit of the enhanced property value.  If BIW is held responsible for the costs of remediating the site, especially to the more stringent residential standards, DVL will be unjustly enriched.

## PRAYER FOR RELIEF

Wherefore, BIW prays for:

A.     A judgment declaring that BIW is not liable for any response costs at the Kearny Property;

B.     A judgment declaring that DVL is and shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property that are in excess of BIW's equitable, proportionate share, if any, of any response costs and damages;

C.     A judgment requiring DVL to pay BIW an amount equal to any judgment against BIW that is in excess of BIW's equitable, proportionate share, if any, of any response costs and damages;

D.     A judgment requiring DVL to reimburse BIW for all reasonable costs and expenses, including attorneys' fees;

E.      Pre-judgment and post-judgment interest; and

F.      Such other further relief as the Court may deem proper and just.

## JURY DEMAND

BIW demands a trial by jury on all issues so triable.

## CROSSCLAIMS

Bath Iron Works Corporation ("BIW"), by way of these Crossclaims against Congoleum Corporation ("Congoleum"), alleges and states as follows:

### INTRODUCTION

1.    This action stems from environmental contamination allegedly associated with Congoleum's flooring operations in Kearny, New Jersey, and the improper attempts of Congoleum to shift responsibility for those liabilities to BIW.

2.    DVL, Inc. and DVL Kearny Holdings, LLC (together, "DVL") seek to recover damages for the alleged discharge of polychlorinated biphenyls ("PCBs") and other hazardous substances at an approximately 8-acre piece of property located at 160-194 Passaic Avenue in Kearny, New Jersey (the "Kearny Property"). The 8-acre Kearny Property is part of a larger approximately 60-acre property (the "60-Acre Property") that was previously owned by Congoleum-Nairn, Inc. ("Congoleum-Nairn").

3.    Since its founding in 1884, BIW has built private, commercial, and military ships at a shipyard located in Bath, Maine. Since its inception, Congoleum, and its predecessors, have operated a resilient flooring business based in New Jersey, including at the Kearny Property.

4.    In 1986, both BIW and Congoleum were owned by the same corporate parent. That year, as part of a series of transactions, the parties' then-corporate parent "spun off" BIW and Congoleum to separate owners. In a July 1986 merger agreement that was part of that reorganization, Congoleum broadly promised to defend, indemnify, and hold BIW harmless against all claims or losses (including attorneys' fees) arising before or after the merger's effective date, arising out of or relating to the conduct of the resilient flooring business. The parties agreed that this covenant would continue without time limit.

5.      Indeed, in the years since the 1986 merger agreement, Congoleum complied with and acknowledged its indemnification obligations under the parties' contract by, for example, accepting liabilities related to its resilient flooring business that were initially presented to BIW in the years following the 1986 merger agreement.

6.      Congoleum is now attempting to walk away from its continuing indemnification obligation to BIW.  Specifically, now that Congoleum faces environmental liability in New Jersey—where Congoleum has operated its flooring business for decades—Congoleum has failed to acknowledge and fulfill its duty to defend and indemnify BIW in the above-captioned action. Instead, Congoleum seeks to pass responsibility for the environmental liabilities of its flooring business on to BIW.

7.      BIW seeks declaratory judgment that Congoleum is the real party-in-interest regarding any responsibility for any of the 60-Acre Property and that BIW bears no responsibility for the alleged environmental conditions at the 60-Acre Property, including the Kearny Property. BIW also seeks indemnification and contribution from Congoleum for any damages and costs and fees incurred by BIW as a result of DVL's claims in this action.

## PARTIES

8.      BIW is a corporation formed under the laws of the State of Maine with its principal place of business at 700 Washington Street, Bath, Maine 04530.

9.      Congoleum is a corporation formed in the State of Delaware with a principal place of business of 3500 Quakerbridge Road, P.O. Box 3127, Mercerville, NJ 08619-0127.

## JURISDICTION AND VENUE

10.      BIW's crossclaims form part of the same case or controversy as DVL's claims, and therefore this Court has jurisdiction over BIW's crossclaims pursuant to 28 U.S.C. § 1367(a).

11.     This Court, before which Plaintiffs brought the above-captioned action and Congoleum brought its crossclaims against BIW, is the appropriate venue pursuant to 42 U.S. Code § 9613(b), as Plaintiffs allege that the release of hazardous substances and their alleged damages occurred in this judicial district and these crossclaims arise out of the alleged occurrence that is the subject matter of Plaintiffs' claims and Congoleum's crossclaims.

## FACTUAL BACKGROUND

12.     Congoleum is the latest in a number of corporations that have historically done business under the name "Congoleum" and conducted resilient floor product operations. Congoleum's resilient floor product operations have included the manufacturing of linoleum and vinyl flooring products, vinyl asbestos tiles, various associated pastes, waxes and adhesives, and specific products for military use (tent cloth, camouflage netting, mildew proof sandbags, and synthetic leather, all manufactured for the military during World War II).  Congoleum is the successor to the resilient floor product operations of its predecessor businesses.

13.     Congoleum and its predecessors conducted resilient floor product operations in Kearny continuously from the 1880s until after the 1980s.

14.     BIW has never owned or operated any business at the Kearny Property or the 60-Acre Property.  Rather, BIW was incorporated in Maine in 1884.  BIW operates a shipbuilding facility located in Bath, Maine.  For more than a century, BIW has manufactured recreational, commercial, and military ships.  Today, BIW continues to build destroyers for the United States Navy at its Bath, Maine, shipyard.

15.     BIW did not become affiliated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property to DVL or its predecessors in or around 1960.

16.     For a period of time prior to July 1986, Congoleum, its predecessor businesses, and BIW were owned as sibling businesses by the same corporate parent, Congoleum Industries, Inc. ("CII").   During this period, Congoleum and BIW operated separate businesses in separate locations: Congoleum and its predecessors conducted resilient flooring operations, including in Kearny, New Jersey.  BIW conducted its shipbuilding business in Bath, Maine.

17.     In 1986, as part of a restructuring, CII sold different parts of its corporation to different entities.  With regard to the resilient flooring operations, CII formed a separate company, Resilco, Inc. ("Resilco"), to own the resilient flooring operations and then sold Resilco to Resilient Acquisition, Inc., a company formed by a third-party buyer for the purpose of acquiring the assets and liabilities of CII's resilient flooring operations, by means of an Agreement and Plan of Merger By and Among Resilient Holdings, Inc. Resilient Acquisition Inc., Congoleum Corporation and Congoleum Industries, Inc., dated as of July 1, 1986 (the "1986 Merger Agreement").   The new corporation was then renamed Congoleum Corporation, the defendant in this matter.

18.     In the 1986 Merger Agreement, Congoleum and BIW agreed to certain rights and responsibilities with respect to the other.  As relates to the instant action, Congoleum took the assets and liabilities related to the resilient flooring operations and agreed to defend, indemnify, and hold harmless BIW against any loss or claim arising out of or related to the resilient flooring operations.

19.     Specifically, the 1986 Merger Agreement contains a provision entitled "Agreement to Defend and Indemnify" that provides in part that Congoleum "will indemnify and hold harmless CII, Bath and their respective affiliates . . . against any and all losses, claims, damages, liabilities, costs, expenses (including, without limitation, attorneys' fees), judgments and amounts paid in settlement in connection with any pending, threatened or completed claim, action, suit, proceeding

or investigation, whether civil, criminal, administrative or investigative, incurred or suffered by CII or its affiliates arising (before or after the Effective Time) out of or relating to the conduct of the Business whether before or after the Effective Time . . . . This covenant shall survive the Effective Time, shall continue without time limit and is intended to benefit CII, Bath and their respective affiliates."  "Bath," as used in the 1986 Merger Agreement, refers to BIW.

20.     Contemporaneous agreements executed around the time of, and integrated with, the Merger Agreement clearly demonstrate that the parties thereto intended that CII and BIW be protected and held harmless by Congoleum from all costs and expenses associated with any liabilities of the Congoleum flooring business, both by Congoleum's assumption of those liabilities and by the defense and indemnification provision in the Merger Agreement.

21.     In the years following the 1986 Merger Agreement, Congoleum accepted responsibility for claims and other expenses tendered by BIW to Congoleum relating to the conduct of the resilient flooring operations before the 1986 Merger Agreement.  These expenses included pre-merger general liability claims as well as personal injury claims arising from pre-merger asbestos exposure that occurred during the resilient flooring operations conducted by Congoleum's predecessors.

22.     Moreover, Congoleum acknowledged that BIW has no responsibility for Congoleum's resilient flooring operations during Congoleum's bankruptcy reorganization, which spanned from 2003 until 2010.  Specifically, Congoleum's then Chief Financial Officer, Howard N. Feist, III, submitted a declaration to the bankruptcy court certifying that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business" and making clear that "[t]he flooring operations . . . to which [Congoleum] succeeded, including the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity

involving in any way flooring, vinyl sheeting flooring or floor products of any kind, were headquartered in Kearney [sic], New Jersey, continuously from before 1965 to 1987." (*In re Congoleum Corp.*, Bankr. No. 03-51524(KCF), Dkt. 4439-3 ("Feist Declaration") ¶ 14.)

23.     Based on Feist's testimony, on June 7, 2010, the Court found in its 86-page order confirming Congoleum's plan of reorganization that "[BIW has] no responsibility for any of the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement)." (Order Confirming Congoleum's Fourth Amended Joint Plan of Reorganization, *In re Congoleum Corp.*, No. 09-4371(JAP), Dkt. 664 at 47, ¶ 104.)

24.     The aforementioned Century Settlement defined "Congoleum Flooring Business" as "the business involved in the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity involving in any way flooring, vinyl sheeting flooring or floor tile products of any kind (including, but not limited to, battleship linoleum, resilient sheet vinyl flooring and tile flooring) as such activities may have been engaged in by any one or more of the Congoleum Entities; provided, however, that Congoleum Flooring Business does not include carpets within its definition or the definition of flooring and *does not include the shipbuilding operations of Bath Iron Works Corp.*, or of Bath Industries, Inc., if any, (it being understood that such operations exclude the products of the Congoleum Flooring Business)." (*In re Congoleum Corp.*, Bankr. No. 03-51524(KCF), Dkt. 4439-2 at § L (emphasis added).)

25.     Unfortunately for BIW, there was a change in the management of Congoleum after the bankruptcy. And, as BIW would come to learn, new management within Congoleum had no

interest in Congoleum's continued compliance with its obligations under the 1986 Merger Agreement.

26.    Congoleum now seeks to disavow its representations to this Court.  For example, Feist testified during Congoleum's bankruptcy proceeding that "Congoleum is the successor in interest to the entity Congoleum-Nairn, Inc. named in Policies XBC-1838 and XBC-40971." (Feist Declaration ¶ 14(A).)  In Congoleum's response to BIW's requests for admission in this matter, Congoleum outright denied that Feist's statement was true and accurate:

> **REQUEST FOR ADMISSION NO. 4:**
>
> Admit that the following representation Congoleum made to the Court during the Congoleum Bankruptcy Proceedings was a true and accurate statement: "Congoleum is the successor in interest to the entity Congoleum-Nairn, Inc. named in Policies XBC-1838 and XBC-40971."
>
> **ANSWER: Denied.**

(*Compare* Feist Declaration ¶ 14(A) *with* Congoleum Corporation's Objections and Responses to Bath Iron Works Corporation's First Set of Requests for Admission ("Congoleum's Response to BIW's RFAs") at 5).

27.    Feist also testified during Congoleum's bankruptcy proceeding that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business."  (Feist Declaration ¶ 14(B).)  In Congoleum's response to BIW's requests for admission in this matter, Congoleum denied that this was a true and accurate statement.  (*Compare* Feist Declaration ¶ 14(B) *with* Congoleum's Response to BIW's RFAs at 6.)

28.    On June 12, 2017, DVL filed a complaint against Congoleum seeking damages for the remediation of the Kearny Property due to alleged environmental contamination.

29.    On October 6, 2017, Congoleum filed a third-party complaint against BIW asserting, *inter alia*, claims against BIW for contribution and indemnification.  In that filing, Congoleum alleged that, contrary to what it represented to this Court during the bankruptcy proceeding, any liabilities associated with the Kearny Property were "wholly assumed by BIW" following the 1986 corporate transactions.  (Dkt. 19 at 29, ¶ 10.)

30.    On October 26, 2017, following Congoleum's lead, DVL filed an amended complaint adding BIW as a defendant.

31.    On June 30, 2018, BIW (but not Congoleum) was named as one of dozens of defendants by Occidental Chemical Corporation ("OxyChem") in an action styled *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et. al*, No. 2:18-cv-11273-JLL-JAD (D. N.J.) (the "Occidental Lawsuit"), filed in federal court in New Jersey concerning environmental damage to the Passaic River in New Jersey.

32.    OxyChem sued BIW based solely on the actions of its alleged "predecessor Congoleum Corp." Specifically, OxyChem alleges that BIW "is the result of three mergers, beginning with Congoleum Corp." and that "BIW, through its predecessor Congoleum Corp., operated at a property located at 195 Belgrove Drive, Kearny, New Jersey," which is part of the 60-Acre Property.

33.    All the material allegations relating to BIW in the Occidental Lawsuit relate to the resilient flooring operations of Congoleum and its predecessors at the 60-Acre Property.  BIW has incurred, and BIW will continue to incur, damages and losses, including attorneys' fees, as a result of the Occidental Lawsuit against BIW.

34.    Thus, on September 24, 2019, BIW brought a Third-Party Complaint against Congoleum in the Occidental Lawsuit because Congoleum is the rightful party responsible for any

costs related to environmental liabilities associated with the flooring operations at the 60-Acre Property in Kearny – not BIW.

### CLAIM 1: BREACH OF CONTRACT – DUTY TO DEFEND AND INDEMNIFY

35.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

36.     The 1986 Merger Agreement is a valid, binding, and enforceable agreement.

37.     Congoleum has a duty to defend BIW and indemnify BIW for costs arising out of claims concerning the 60-Acre Property, including the Kearny Property, under Section 5.04 the 1986 Merger Agreement.

38.     Following the 1986 Merger Agreement, BIW merged with CII and became the surviving entity.  Pursuant to Section 8.06, the 1986 Merger Agreement also inures to the benefit of BIW as CII's successor.

39.     By failing to accept BIW's demand for a defense and indemnification, Congoleum has breached its obligation to defend and indemnify BIW as required by the 1986 Merger Agreement.

40.     BIW has substantially performed all of its obligations, but Congoleum has materially breached its obligations under the 1986 Merger Agreement.

41.     As a direct and proximate result of Congoleum's material breach, BIW has incurred, and will continue to incur, costs, expenses, damages, and other amounts, including but not limited to attorneys' fees, in the above-captioned action, all of which are recoverable under the 1986 Merger Agreement.

## CLAIM 2: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

42.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

43.     The 1986 Merger Agreement is a valid, binding, and enforceable agreement.

44.     Under the 1986 Merger Agreement, Congoleum owes BIW the duty of good faith and fair dealing.

45.     The 1986 Merger Agreement imposes on Congoleum a duty to defend, indemnify, and hold harmless BIW for all costs, expenses, damages, and other amounts, including but not limited to attorneys' fees, arising out of claims concerning the 60-Acre Property, including the Kearny Property.

46.     BIW has substantially performed all of its obligations under the 1986 Merger Agreement, but Congoleum has materially breached its obligation of good faith and fair dealing including by, among other things, failing and refusing to honor its obligation to defend and indemnify BIW in this action after having previously accepted responsibility for claims and expenses tendered by BIW to Congoleum relating to the conduct of the resilient flooring operations before the 1986 Merger Agreement and represented to a bankruptcy court that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business."

47.     As a direct and proximate result of Congoleum's material breach of the covenant of good faith and fair dealing, BIW has incurred, and will continue to incur, costs, expenses, damages, and other amounts, including but not limited to attorneys' fees, in the above-captioned action, and in the Occidental Lawsuit, all of which are recoverable under the 1986 Merger Agreement.

## CLAIM 3: COMMON LAW INDEMNIFICATION

48.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

49.     In the alternative to contractual indemnification, BIW is entitled to common law indemnification to the extent BIW is required to make any expenditures for any tort liability arising from Congoleum's conduct.

50.     Congoleum's corporate predecessors owned and operated the Kearny Property from the 1880s until Congoleum-Nairn sold the Kearny Property in 1960.  BIW was never affiliated with Congoleum-Nairn and did not become affiliated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW never owned or operated any businesses at the Kearny Property.

51.     DVL has alleged a number of claims against both Congoleum and BIW relating to alleged hazardous substances at the Kearny Property.  Those claims include public nuisance, negligence, and strict liability/abnormally dangerous activity, which are all torts.

52.     Congoleum is the successor-in-interest to any and all liabilities associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property.  Because BIW has never operated any business on the Kearny Property, it is without fault for any of the alleged contamination on the Kearny Property.

53.     To the extent BIW becomes subject to tort liability arising from DVL's claims against Congoleum and BIW, BIW is entitled to indemnity from Congoleum for expenditures properly made in the discharge of such liability.

## CLAIM 4: CONTRIBUTION UNDER CERCLA

54.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

55.     Pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), "[a]ny person may seek contribution from any other person who is liable or potentially liable under [CERCLA § 107(a)] during any civil action under . . . [CERCLA § 107(a)]."

56.     Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a), liability attaches when: (a) the defendant is a potentially responsible party under CERCLA; (b) hazardous substances were disposed of at a facility; (c) there has been a release or threatened release of hazardous substances from the facility into the environment; and (d) the release or threatened release has required or will require the plaintiff to incur response costs.

57.     Under CERCLA, potentially responsible parties include: (a) the current owner or operator or a facility; (b) any person who owned or operated the facility at the time of the disposal of a hazardous substance; (c) any person who arranged for the disposal or transport for disposal of hazardous substances at a facility; and (d) any person who accepts hazardous substances for transport to sites selected by said person.

58.     DVL alleges that hazardous substances as defined by CERCLA were either (1) disposed of or released at the Kearny Property by Congoleum-Nairn, or (2) disposed of or released during the time of Congoleum-Nairn's ownership or operation of the Kearny Property.

59.     Congoleum is the proper successor-in-interest to any and all liabilities that are associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property.

60.     The Kearny Property is a "facility" as defined under Section 101, 42 U.S.C. § 9601.

61.     DVL alleges that Congoleum is a potentially responsible party pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

62.     In the event that BIW is found liable in this action or is required to pay any portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at the Kearny Property, then BIW will have incurred necessary response costs consistent with the National Contingency Plan.

63.     In the event that BIW is found liable in this action or is required to pay an portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at the Kearny Property, Congoleum is liable to BIW pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f), for any amount that BIW is ordered to pay that is in excess of the equitable, proportionate share, if any, of BIW's liability.

### CLAIM 5: DECLARATORY JUDGMENT UNDER CERCLA

64.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

65.     There exists a present and actual controversy under CERCLA § 107 between BIW and Congoleum concerning their respective rights and obligations in connection with response costs and contribution claims concerning the Kearny Property.

66.     BIW is entitled to judgment under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201 and 2202 against Congoleum declaring that Congoleum shall be liable to BIW for any and all costs and for contribution arising from the alleged contamination at or emanating from the Kearny Property that are in excess of BIW's equitable, proportionate share, if any, of any response costs and damages, which judgment shall be binding in any subsequent action

to recover further costs and/or contribution arising from the same alleged contamination at issue in this action.

## CLAIM 6: CONTRIBUTION UNDER THE NEW JERSEY SPILL COMPENSATION AND CONTROL ACT

67.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

68.     BIW is entitled to contribution from Congoleum under the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J. STAT. § 58:10-23.11.  The New Jersey Spill Act Provides that "[w]henever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance."  N.J. STAT. § 58:10-23.11f(a)(2).

69.     The Kearny Property is a "facility" as defined in the Spill Act.  N.J. STAT. § 58:10-23.11b.

70.     Congoleum's corporate predecessors owned and operated the Kearny Property from the 1880s until Congoleum-Nairn sold the Kearny Property in 1960.  BIW was never affiliated with Congoleum-Nairn and did not become affiliated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW never owned or operated any businesses at the Kearny Property.

71.     Congoleum and its predecessors were in possession of the Kearny Property for approximately 80 years, during which time Congoleum or its predecessors manufactured a variety of commercial products.  Congoleum is the successor-in-interest to any and all liabilities associated

with the Kearny Property and any environmental conditions on or emanating from the Kearny Property.

72.     DVL alleges that, as the owner of the Kearny Property at the time hazardous substances were discharged into the environment at the Kearny Property, Congoleum is a person "in any way responsible" within the meaning of the contribution provisions of the Spill Act.  N.J. STAT. § 58:10-23.11f(a)(2).

73.     DVL alleges that Congoleum is a person in any way responsible for the discharge of hazardous substances at the Kearny Property.  Accordingly, Congoleum is also liable under the Spill Act for any and all future cleanup and removal costs resulting from the discharge of hazardous substances associated with its ownership and operations at the Kearny Property.

74.     In the event that BIW is found liable in this action or is required to pay any portion of the costs allegedly incurred or to be incurred with regard to the investigation or remediation of hazardous substances at the Kearny Property, Congoleum is liable to BIW pursuant to the Spill Act, for any and all cleanup and removal costs that are in excess of BIW's equitable, proportionate share, if any, of the response costs and damages.

### CLAIM 7: CONTRIBUTION UNDER THE NEW JERSEY JOINT TORTFEASORS CONTRIBUTION LAW

75.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

76.     To the extent BIW is found liable for any costs associated with the alleged hazardous substances at the Kearny Property, BIW is entitled to contribution from Congoleum pursuant to the New Jersey Joint Tortfeasors Contribution Law, N.J. STAT. § 2A:53A-1, *et seq.*

77.     The New Jersey Joint Tortfeasors Contribution Law entitles a joint tortfeasor who pays the judgment in whole or in part to recover contribution from other joint tortfeasors for the excess paid over his pro rata share.

78.     Congoleum and its predecessors were in possession of the Kearny Property for approximately 80 years, during which time Congoleum manufactured a variety of commercial products.  Congoleum is the successor-in-interest to any and all liabilities associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property.

79.     BIW has never operated or owned the Kearny Property.  BIW was not associated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW is a shipbuilding company and has never operated any shipbuilding activities on the Kearny Property.

80.     To the extent BIW is legally compelled to pay for any costs associated with the alleged hazardous substances at the Kearny Property, it is entitled to contribution from Congoleum pursuant to the New Jersey Joint Tortfeasors Contribution Law.

## CLAIM 8: CONTRIBUTION UNDER THE NEW JERSEY
## COMPARATIVE NEGLIGENCE ACT

81.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

82.     To the extent BIW is found liable for any costs associated with the alleged hazardous substances at the Kearny Property, BIW is entitled to contribution from Congoleum pursuant to the New Jersey Comparative Negligence Act, §§ 2A:15-5.1–2A:15-5.8.

83.     The New Jersey Comparative Negligence Act entitles BIW to recover damages from Congoleum provided that BIW's negligence is not greater than the negligence of Congoleum.

84.     Congoleum and its predecessors were in possession of the Kearny Property for approximately 80 years, during which time Congoleum manufactured a variety of commercial products.  Congoleum is the successor-in-interest to any and all liabilities associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property.

85.     BIW has never operated or owned the Kearny Property.  BIW was not associated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW is a shipbuilding company and has never operated any shipbuilding activities on the Kearny Property.

86.     To the extent BIW is legally compelled to pay for any costs associated with the alleged hazardous substances at the Kearny Property, it is entitled to contribution from Congoleum pursuant to the New Jersey Comparative Negligence Act.

## CLAIM 9: CONTRIBUTION UNDER UNJUST ENRICHMENT

87.     BIW restates and realleges the allegations set forth in paragraphs 1 through 34 above and incorporates them by reference.

88.     To the extent BIW is found to be liable for any costs associated with the alleged hazardous substances at the Kearny Property, Congoleum will have been unjustly enriched by BIW's payments.

89.     Congoleum and its predecessors were in possession of the Kearny Property for approximately 80 years, during which time Congoleum manufactured a variety of commercial products.  Congoleum is the successor-in-interest to any and all liabilities associated with the Kearny Property and any environmental conditions on or emanating from the Kearny Property.

90.     BIW has never operated or owned the Kearny Property.  BIW was not associated with Congoleum or its predecessors until 1968, years after Congoleum-Nairn sold the Kearny Property.  BIW is a shipbuilding company and has never operated any shipbuilding activities on the Kearny Property.

91.     If BIW is legally compelled to pay for any costs associated with the alleged hazardous substances at the Kearny Property, Congoleum will have received a benefit of payment at BIW's expense.

92.     Retention of BIW's payment would be unjust, as BIW has never owned or operated any businesses on the Kearny Property, and only became affiliated with Congoleum and its predecessor years after Congoleum-Nairn sold the Kearny Property.

**PRAYER FOR RELIEF**

Wherefore, BIW prays for:

A.     A judgment declaring that Congoleum is obligated to defend, indemnify, and hold BIW harmless for all costs and fees, including but not limited to attorneys' fees, arising out of claims concerning the Kearny Property and/or the 60-Acre Property;

B.      A judgment against Congoleum for all damages to which BIW is entitled to as a result of Defendant's breach of contract and breach of the duty of good faith and fair dealing, including but not limited to costs and attorneys' fees arising out of claims concerning the Kearny Property and/or the 60-Acre Property;

C.      A judgment declaring that BIW is not liable for any response costs at the Kearny Property and/or the 60-Acre Property;

D.      A judgment declaring that Congoleum is the proper party-in-interest with respect to the Kearny Property and/or the 60-Acre Property and that Congoleum is and shall be responsible for all current and future costs arising from the alleged contamination at or emanating from the Kearny Property and/or the 60-Acre Property that are in excess of BIW's equitable, proportionate share, if any, of any response costs and damages;

E.      Pre-judgment and post-judgment interest; and

F.      Such other further relief as the Court may deem proper and just.

## JURY DEMAND

BIW demands a trial by jury on all issues so triable.

Dated: December 11, 2019          Respectfully submitted,

BATH IRON WORKS CORPORATION

By:    */s/ Ralph J. Marra*       
     One of its Attorneys

Ralph J. Marra
Thomas R. Calcagni
Eric T. Kanefsky
CALCAGNI & KANEFSKY, LLC
1085 Raymond Blvd.
14th Floor
Newark, NJ 07102
(862) 397-1796

Michael A. Doornweerd (*pro hac vice*)
mdoornweerd@jenner.com
Wade A. Thomson (*pro hac vice*)
wthomson@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2631