## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DVL, INC. and DVL KEARNY: HOLDINGS, LLC, | : : : | Civil Action No. 17-4261 (KM) (JBC) |
| Plaintiffs, | : : | |
| v. | : : | **Motion Returnable: February 3, 2020** |
| CONGOLEUM CORPORATION and BATH IRON WORKS CORPORATION, | : : : | **ORAL ARGUMENT REQUESTED** |
| Defendants. | : : | |

---

### BATH IRON WORKS CORPORATION'S OPPOSITION TO CONGOLEUM CORPORATION'S MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND DEPOSITION TESTIMONY PLACED "AT ISSUE" BY BATH IRON WORKS CORPORATION AND ITS FORMER COUNSEL

---

Ralph J. Marra
Thomas R. Calcagni
Eric T. Kanefsky
CALCAGNI & KANEFSKY, LLC
1085 Raymond Blvd., 14th Floor
Newark, NJ 07102
(862) 397-1796
rmarra@ck-litigation.com

Michael A. Doornweerd (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Defendant*
*Bath Iron Works Corporation*

Dated: January 31, 2020

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

ARGUMENT ......................................................................................................................9

I.     Mr. Milmoe's Testimony Regarding The Intent Of The 1986 Transactional
Documents Does Not Constitute "At-Issue" Waiver. ..........................................9

      A.     In Fairness, There Is No Waiver. .............................................................9

      B.     There Was No Testimony Regarding Attorney Advice, Thus No Privilege
Waiver. ....................................................................................................15

      C.     Testifying About Facts Does Not Waive Privilege. ................................18

II.    No Waiver Occurred, Thus A Full Subject Matter Waiver Is Not Appropriate. ...............21

CONCLUSION ..................................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Astrazeneca LP v. Breath Limited*,
  2010 WL 11428457 (D.N.J. Aug., 26, 2010) ........................................................16

*Aysseh v. Lawn*,
  186 N.J. Super. 218 (1982) .................................................................................19

*Blattman v. Siebel*,
  No. CV 15-530-GMS, 2017 WL 5953303 (D. Del. Dec. 1, 2017)..................18, 19

*EMC Ins. Co. v. Zicolello*,
  2014 WL 123687 (M.D. Pa. Jan. 14, 2014) .........................................................15

*Emmanouil v. Roggio*,
  No. CIV.06-CV-01068(GEB), 2009 WL 961275 (D.N.J. Apr. 7, 2009) ...............22

*George v. Siemens Indus. Automation, Inc.*,
  182 F.R.D. 134 (D.N.J. 1998).......................................................................1, 9, 15

*Glenmede Tr. Co. v. Thompson*,
  56 F.3d 476 (3d Cir. 1995).............................................................................3, 17

*IMC Chems., Inc. v. Niro Inc*,
  2000 WL 1466495 (D. Kan. July 19, 2000) ..........................................................19

*In re AT & T Access Charge Litig.*,
  451 F. Supp. 2d 651 (D.N.J. 2006) .....................................................................16

*In re County of Erie*,
  546 F.3d 222 (2d Cir. 2008)................................................................................18

*In re G-I Holdings Inc.*,
  218 F.R.D. 428 (D.N.J. 2003) .............................................................................16

*In re Human Tissue Products Liability Litigation*,
  255 F.R.D. 151 (D.N.J. 2008)........................................................................17, 19

*In re MIG, Inc.*,
  No. 09-12118 KG, 2009 WL 8662897 (Bankr. D. Del. Dec. 18, 2009)....................18, 19, 20

*Jurgensen v. Rolex Watch U.S.A., Inc.*,
  No. CIV.A. 85-5605, 1989 WL 6210 (E.D. Pa. Jan. 19, 1989) ........................18, 19

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,*
 619 F.2d 1001 (3d Cir. 1980) ................................................................................20

*NJ Manuf. Ins. Co. v. Brady,*
 No. 3:15-CV-02236, 2017 WL 264457 (M.D. Pa. Jan. 20, 2017) ..........................17

*Praxair, Inc. v. ATMI, Inc.,*
 445 F. Supp. 2d 473 (D. Del. 2006) ........................................................................16

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,*
 32 F.3d 851 (3rd Cir. 1994) ............................................................................3, 16

*Ritchie Risk-Linked Strats. Trading (Ireland), Ltd. v. Coventry First LLC,*
 273 F.R.D. 367 (S.D.N.Y. 2010) ............................................................................18

*Upjohn Co. v. United States,*
 449 U.S. 383 (1981) ..............................................................................................10

*V. Mane Fils S.A. v. Int'l Flavors & Fragrances, Inc.,*
 249 F.R.D. 152 (D.N.J. 2008) ................................................................................21

*Wachtel v. Guardian Life Ins. Co.,*
 No. 01-4183, 2006 WL 1286188 (D.N.J. May 8, 2006) ..........................................19

**OTHER AUTHORITIES**

Fed. R. Evid. 502(a) ..........................................................................................21, 22

Defendant Bath Iron Works Corporation ("BIW") respectfully submits this Opposition to Defendant Congoleum Corporation's ("Congoleum") Motion to Compel production of privileged documents and deposition testimony ("Motion").

## INTRODUCTION

Congoleum's request for a finding of subject matter waiver should be denied. The attorney-client privilege is one of the "most fundamental tenets of the attorney-client relationship . . . It is only in the most extreme circumstances that an exception will apply." *George v. Siemens Indus. Automation, Inc*., 182 F.R.D. 134, 138 (D.N.J. 1998). This is not one of those extreme situations as there was no waiver. Congoleum's Motion is instead a misguided venture, as demonstrated by Congoleum's positions (which have changed and are hypocritical) and some key inaccuracies.

When Congoleum first raised this issue on September 23, 2019, it sought "production of every privileged document on [Skadden Arps Slate Meagher & Flom LLP's ("Skadden")] privilege log," as well as certain entries on BIW's privilege log, and "reserve[d] the right to re-call Mr. Milmoe to question him regarding those documents, and his privileged conversations with his former client, Congoleum Industries, Inc. ("CII")." (Marra Decl., Ex. 1, September 23, 2019 Letter from Congoleum to BIW.) Congoleum admitted at the time that its demand was based on an unsubstantiated "possibility" that Mr. Milmoe, a highly regarded, former Skadden partner, had committed perjury, stating: "To put it bluntly . . . because there exists the possibility that Mr. Milmoe told his client one thing, and told the parties another at his deposition, Congoleum is entitled to test Mr. Milmoe's veracity and memory by reviewing the privileged communications, and if necessary, re-deposing him." (*Id*.) In an effort to ease Congoleum's baseless fears (and without agreeing that there was a waiver), BIW offered to "produce" (and not merely make available for review, as Congoleum misstates), *all* of the documents that Congoleum requested.

1

(Marra Decl., Ex. 2, October 23, 2019 Email from W. Thomson to K. Weber; Motion at 23 n.10.) Congoleum refused BIW's offer. (Marra Decl., Ex. 3, October 24, 2019 Email from W. Thomson to K. Weber.) Having had its bluff called, Congoleum broadened its request that BIW produce not only all historical documents previously requested, but also any communications Mr. Milmoe may have had at any time with counsel at Skadden (deal counsel to CII during the 1986 transactions) or Jenner & Block (current litigation counsel to BIW), and asserted new allegations as to why BIW allegedly waived privilege. (Dkt. Nos. 148, 154.) In an effort to save time and resources, and avoid burdening the Court, BIW again offered, as memorialized in a letter to this Court, to "*produce*" the originally requested documents to Congoleum. (Dkt. No. 154 at 5, emphasis added.) And again, Congoleum refused. (*Id*.) Now, for a third time, Congoleum rejects BIW's reasonable proposed resolution of producing the requested contemporaneous materials, which is all Congoleum really needs given its expressed fear of testing Mr. Milmoe's testimony against the contemporaneous documents.

Congoleum's refusal to take "yes" for an answer is a clear sign that it is posturing with its Motion. But the legal and logical flaws in the Motion go far beyond that. ***First***, although Congoleum claims unfairness on the ground that BIW was supposedly allowed to question Mr. Milmoe about his intent during the 1986 transactions, Congoleum was allowed to – *and did* – ask the very same type of intent questions of Mr. Milmoe. Congoleum's intent questions, and Mr. Milmoe's answers to those questions, take up pages of deposition transcript. (*See, e.g.,* Marra Decl. Ex. 4, Milmoe Dep. Tr. at 124:21-24, 138:20-23, 144:3-6, 145:23-24, 146:18-20.) BIW invoked privilege in response to precisely two questions, which did not concern the 1986 transactions, but rather the substance of Mr. Milmoe's contemporaneous conversations with his current counsel. (*Id*. at 112:15-114:7; 137:16-138:23.) The notion that Congoleum needs to re-

depose Mr. Milmoe to ask the questions it already did ask or could have asked about the 1986 transactions is meritless.

**Second**, BIW did not elicit testimony about privileged communications.  BIW's questions asked about the "business's" intent regarding the 1986 transactions.  (*See, e.g.*, Marra Decl. Ex. 4, Milmoe Dep. Tr. at 33:2-6, 66:15-20.)  As the leading privilege case in the Third Circuit has held, that kind of information is doubly not-privileged: it is not the substance of a lawyer-client communication and it is factual.  *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 865 (3rd Cir. 1994) (explaining that "protection of the privilege extends only to communications and not to facts.") (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981)).

**Third**, it is remarkable that Congoleum would assert waiver based on the questioning to Mr. Milmoe when it has repeatedly sought to elicit its own testimony regarding the intent of relevant documents in the case.  Congoleum elicited testimony from its own clients about intent of 1986 transactional documents – even asking its client about conversations with its deal lawyer about the 1986 transactions – while at the same time refusing to produce the privileged documents related to that testimony.  Similarly, Congoleum told the Court on *multiple* occasions that Congoleum can elicit testimony on intent of final agreements while still withholding documents related to that testimony as privileged.

Congoleum acknowledges that one of the "keystone" inquires for the subject matter waiver it requests is "fairness."  The history of this particular dispute demonstrates that fairness dictates that Congoleum's Motion should be denied.

## BACKGROUND

Congoleum Corporation operates a resilient flooring business currently headquartered in Mercerville, New Jersey and previously headquartered in Kearny, New Jersey, where it had operated for over a hundred years since at least 1886 (the "Resilient Flooring Business").  The

Resilient Flooring Business has a lengthy corporate history dating back to at least the 1820s. Today, Congoleum continues to operate the Resilient Flooring Business, which it assumed from its namesake and former parent, Congoleum Industries Inc. ("CII"), in 1986.[1]  BIW is a ship-building company in Maine, founded in 1884.  BIW has never operated in New Jersey, nor has it ever manufactured flooring products.  Today, BIW continues to build destroyers for the United States Navy at its Bath, Maine, shipyard.

Congoleum and BIW were once owned by a common corporate parent, before it spun off those businesses (and others) to separate buyers in a series of transactions in 1986.[2]  During those transactions, Congoleum was assigned the assets of the Resilient Flooring Business, and assumed the liabilities of the historic flooring business, including all flooring business liabilities that were "unknown" at the time of the 1986 transactions.  Congoleum also agreed to indemnify all other formerly related entities, including BIW, against any liability of the flooring business.  Congoleum lived by the plain language reading of the 1986 transactional documents for thirty years following the transactions, even telling the bankruptcy court during its bankruptcy proceedings in 2006, via sworn declaration, that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business" formerly headquartered in Kearny, and that, with respect to the Congoleum

---

[1] Although Congoleum was incorporated in 1986 to allow for the corporate transfer of the entire Resilient Flooring Business from its parent to a new corporate entity, Congoleum continued operations of the same historic business, and took with it all historic flooring liabilities related to that business.  Accordingly, the date of Congoleum's incorporation has no bearing on the assumption of liabilities at issue in this matter.

[2] This corporate restructuring process occurred by virtue of numerous assignments, mergers, name changes and other corporate transactions, which BIW refers to collectively herein as the 1986 transactions and/or 1986 transactional documents.

Flooring Business, "Congoleum is the successor in interest." (Dkt. No. 33 at 8; Dkt. No. 145-1 at 6; Marra Decl., Ex. 5, 2006 Feist Decl. at 6-7.)

It was not until this action, in 2016, that new management at Congoleum created a new interpretation of the effect of the 1986 transactions after Plaintiffs DVL, Inc. and DVL Kearny Holdings, LLC (collectively, "DVL") sued Congoleum based on alleged contamination of the DVL parcel, part of the former Congoleum flooring facility in Kearny. Congoleum brought BIW into this action (and DVL followed suit) on Congoleum's new theory that BIW – and not Congoleum – was the successor to any Kearny environmental liabilities. (See Dkt. No. 24 at 1-2.) The dispute between Congoleum and BIW in this action boils down to the competing interpretations of the 1986 transactional documents, which both parties maintain are unambiguous.

Congoleum has taken position that "context" and "intent" testimony concerning unambiguous agreements is permissible. Specifically, prior to depositions, Congoleum told this Court that the parties can elicit testimony regarding intent of final agreements, and that discovery about intent and context of a final agreement was necessary. (Dkt. No. 33 at 20-21.) (*See also* Dkt. No. 147 at 2 (emphasis added), stating that "Congoleum believes its witnesses can testify about the context, **intent**, and purpose of the final and publicly filed settlement agreements without violating any of the confidentiality orders."; Dkt. No. 100 at 3 (emphasis added), April 9, 2019 Letter to Judge Clark, which states that "Congoleum indicated that it believes it can elicit testimony regarding the **intent** and purpose of the settlements without running afoul of its obligations to not reveal settlement communications/negotiations/draft documents.") Notwithstanding this position on "intent," Congoleum is withholding, under the basis of attorney-client privilege, documents concerning the negotiations of those same final agreements. (*See* Dkt. No. 145.) Based on Congoleum's position concerning "intent," and in the event that the Court finds the contractual

5

language at issue ambiguous, intent is relevant. Accordingly, *both* parties have elicited testimony regarding intent.

Over a year before Mr. Milmoe was deposed, Congoleum subpoenaed CII's former law firm, Skadden, indicating Congoleum's attempt to uncover extrinsic evidence from the contracts' drafter. Subsequently, *Congoleum* noticed and deposed witnesses with knowledge of the 1986 transactions. BIW followed suit and *both* parties ultimately noticed and deposed Gregory Milmoe, a former Skadden partner who represented *CII* during the 1986 transactions and who drafted the 1986 transactional documents. Congoleum incorrectly asserts that Mr. Milmoe is BIW's former attorney. (*See* Motion at 1.) In 1986, during the 1986 transactions, *i.e.* the restructuring of BIW's and Congoleum's shared parent entity, BIW had its own counsel, attorneys at Pierce Atwood LLP. Through a series of mergers, transactions, and name-changes, BIW ultimately inherited the privilege from its former corporate parent, CII, which merged with and into BIW *after* all assets and liabilities relating to the Resilient Flooring Business were transferred to the entity that is now Congoleum. (*See* Marra Decl. Ex. 4, Milmoe Dep. Tr. at 50:4-22, explaining that after the assets from Congoleum had already been assumed by a separate entity, it merged into BIW; 113:18-11:7, Counsel for BIW explaining that Bath Iron Works inherited the privilege of Congoleum Corporation and Congoleum Industries Inc.)

During the September 11, 2019 deposition of Mr. Milmoe, BIW and Congoleum had equal time for questioning the witness.[3] Following Congoleum's position that the parties can elicit testimony regarding intent and context of final agreements (while maintaining privilege of attorney-client communications concerning the negotiations of the final 1986 transactional

---

[3] Notably, Congoleum only used approximately two of its allotted three and a half hours to question Mr. Milmoe. Now, by way of its Motion, it seeks to re-depose this witness despite having ample time to continue questioning him during the deposition.

documents), BIW questioned Mr. Milmoe about the intent and business purpose of the 1986 transactions and related transactional documents.  During Congoleum's examination, Congoleum also inquired about intent of the 1986 transactions and transactional documents.  BIW *did not once object* on the basis of privilege to Congoleum's questions about intent of the 1986 transactions and transactional documents.  In fact, BIW objected to Congoleum's questions *only twice*, and only in response to questions that sought attorney work product and/or attorney-client communications.  (Marra Decl. Ex. 4, Milmoe Dep. Tr. at 112:15-114:7; 137:16-138:23.)  Mr. Milmoe's testimony confirmed that the intent and business purpose of the 1986 transactions aligns with the plain reading of those documents: (1) Congoleum assumed the historic environmental liabilities associated with its former Kearny, New Jersey property; and (2) Congoleum agreed to indemnify BIW for any costs associated with these liabilities.

After Mr. Milmoe's deposition, Congoleum continued to elicit additional affirmative deposition testimony regarding the intent of the 1986 transactions and transactional documents from its own side of that transaction.  Congoleum noticed and deposed both John Irwin and Edward Bramson, formerly of Hillside Capital, the entity that purchased the Congoleum Resilient Flooring Business in 1986 from CII, which is now Defendant Congoleum.  At both of these depositions, Congoleum explicitly asked its own former corporate owners about the intent of the 1986 transactions.  (*See* Marra Decl. Ex. 4, Irwin Dep. Tr. at 26:4-9 ("Q: Is it fair then to say if your **intent** and understanding was that you were not going to sell the environmental liability then there would be no need to do environmental due diligent on those sites?" (emphasis added)); Marra Decl. Ex. 7, Bramson Dep. Tr. at 31:10-16 ("Q: [D]id Hillside have any **intention** of assuming environmental liabilities for properties other than the ones it was acquiring?" (emphasis added).)[4]

---

[4] Neither witness confirmed Congoleum's interpretation of the 1986 transactions.

In addition, counsel for Congoleum even inquired about conversations Mr. Bramson had with its *outside deal counsel*, David Griffin, from the former Battle Fowler law firm (now Paul Hastings LLP), which represented Congoleum's side in the 1986 transactions.  (*See* Marra Decl. Ex. 7, Bramson Dep. Tr. at 11:2-3: "Q: And have you spoken to David Griffin regarding this lawsuit?"; *Id*. at 11:17:  "Q: And what did Mr. Griffin tell you?")

Despite the fact that ***both*** parties elicited testimony regarding the intent and business purpose of the 1986 transactions, Congoleum incorrectly asserts that BIW did so in order to support its position that the 1986 transactional documents are ambiguous.  (*See* Motion at 2, 12-13: "BIW's legal strategy is based on a claimed ambiguity that necessitates parol evidence to resolve.")  This is not true.  BIW has not once made this assertion.  In fact, it is BIW's position, like Congoleum's, that the 1986 transaction documents are unambiguous.  And deposition testimony from the primary draftsman confirms BIW's plain language reading of the documents.

BIW only elicited testimony regarding intent *after* Congoleum told the Court (on multiple occasions) that the parties may elicit such testimony while maintaining privilege over the negotiation communications with counsel.  Now, after *both* parties elicited deposition testimony regarding the factual intent and business purpose of the 1986 transactions and documents, and with no witnesses confirming Congoleum's new interpretation of the 1986 transactional documents (that somehow BIW is responsible for historic flooring liabilities), Congoleum is desperate to try to find something, somewhere, from some time, to discredit Mr. Milmoe.  But the facts show Congoleum was given a very fair opportunity to examine Mr. Milmoe and his contemporaneous documents; therefore, its Motion should be denied.

**ARGUMENT**

I.    **Mr. Milmoe's Testimony Regarding The Intent Of The 1986 Transactional Documents Does Not Constitute "At-Issue" Waiver.**

A.   **In Fairness, There Is No Waiver.**

BIW agrees with Congoleum's statement that fairness is indeed "the keystone" of the waiver analysis.  (*See* Motion at 10 citing *Hoffmann-La Roche, Inc. v. Roxane Labs., Inc.*, No. CIV.A. 09-6335 WJM, 2011 WL 1792791, at *10 (D.N.J. May 11, 2011).)  The privilege between attorneys and clients is one of the "most fundamental tenets of the attorney-client relationship . . . It is only in the most **extreme circumstances** that an exception will apply." *George*, 182 F.R.D. at 138 (emphasis added).  This is not one of those extreme circumstances, and fairness does not require any finding of waiver.  *See id.*  In fact – and for at least the following four reasons – there has been nothing unfair about the situation at hand.

First, the deposition of Mr. Milmoe was as much Congoleum's deposition as it was BIW's deposition.  Congoleum's counsel cross-noticed Mr. Milmoe and was given equal time to question him.  In fact, Congoleum's counsel freely examined Mr. Milmoe for approximately two hours on the same topics as BIW, including inquiring about the intent of the contracts at issue:

- "Q: As of this date in February of 1986, was it the **intent** for old Congoleum to rid itself of all its assets and liabilities?"  (Marra Decl. Ex. 4, Milmoe Dep. Tr. at 124:21-24, emphasis added);

-  "Q: In drafting this assignment agreement, did you have any **intent** to transfer liabilities related to wartime products?"  (*Id*. at 138:20-23, emphasis added);

- "Q: If your **intent** was to say -- to transfer all liabilities of the flooring business, why not just say 'all liabilities of the flooring business'?"  (*Id*. at 144:3-6, emphasis added);

- "Q: Sir, was the **intent** of this provision to be a catchall?"  (*Id*. at 145:23-24, emphasis added);

-  "Q: So your **intent** was that this paragraph would be unnecessary because there shouldn't be any liabilities left?"  (*id*. at 146:18-20, emphasis added).

BIW's counsel *never* asserted privilege in response to questions regarding intent, as those questions elicited factual, non-privileged information.  *See Upjohn*, 449 U.S. at 395 ("[t]he privilege only protects disclosure of communications; it does not protect disclosure of underlying facts by those who communicated with the attorney").  Indeed, BIW's counsel only made *two* privilege objections during the entire deposition.   Both privilege objections were in response to questions that would have revealed the substance of BIW's attorney work product or confidential communications with Mr. Milmoe's former client.  (Marra Decl. Ex. 4, Milmoe Dep. Tr. at 112:15-114:7, when counsel for Congoleum inquired about the "documents [Mr. Milmoe] review[ed]" with BIW counsel in preparation for his deposition; and 137:16-138:23 when counsel for Congoleum inquired regarding "discussions with [Mr. Milmoe's] client.")   Congoleum has completely failed to make a record of any questions during the entire day of the deposition of Mr. Milmoe where Congoleum's counsel was precluded from getting answers to questions about the intent of the 1986 transactions and corresponding documents.

Second, to the extent Congoleum truly needs to see the limited set of withheld historical communications to make things "fair" (which it does not), BIW offered "to produce" the originally requested documents to Congoleum multiple times.  (Marra Decl., Ex. 2, October 23, 2019 Email from W. Thomson to K. Weber, stating that "BIW is willing to provide to Congoleum next week the requested documents on Skadden's privilege log and the requested entries from BIW's privileged log if production of those documents from the privilege logs will resolve this dispute over 'at issue' waiver (and Congoleum will not argue that the production is a waiver)."; Dkt. No. 148 stating that "BIW attempted to avoid burdening the Court with this issue by offering Congoleum production of all the privilege log documents Congoleum requested (without agreeing

that there was a waiver or that another deposition of Mr. Milmoe was justified without additional cause shown from those additional documents), but Congoleum declined the offer.")

Apparently recognizing that the withheld historical communications would not justify Congoleum's original and purportedly "conceivable" theory that Mr. Milmoe perjured himself, Congoleum changed its demand to seek the extreme remedy of invading the privilege for not only historical communications between CII and its 1986 deal counsel (Skadden), but also communications with BIW's present day litigation counsel (Jenner & Block). (Dkt. No. 154 at 2-4.)  BIW again confirmed to both Congoleum and the Court that it would "produce" the originally requested documents, without agreeing that such production constituted a waiver. (*Id*. at 5.)

Thus, the "keystone" inquiry of fairness does not require a finding of waiver.  Congoleum was given a fair chance to examine Mr. Milmoe at his deposition, and Congoleum could have reviewed the documents it claimed it needs, which would have eased its stated concern.  Now, Congoleum goes so far as to argue that BIW's offer for "production" was somehow only an offer to allow Congoleum to "review" the documents. (*See* Motion at 23 n.10.)  That clearly was not the offer, but for the sake of clarity, BIW, for a fourth time, here puts in writing that it is willing to "produce" the documents to Congoleum (while not conceding any waiver).  There is simply is no need for the Court to grant the extreme remedy Congoleum seeks given what BIW has offered.

<u>Third</u>, Congoleum's waiver argument flies in the face of its previous arguments in this very action.  Congoleum told this Court that "Congoleum believes its witnesses can testify about the context, intent, and purpose of the final and publicly filed settlement agreements," (while maintaining privilege over attorney-client communications regarding negotiations and drafting of those agreements) which is exactly the type of testimony Mr. Milmoe provided regarding the final 1986 transactional documents. (Dkt. No. 147 at 2; *see also* Dkt. No. 100 at 3; Marra Decl. Ex. 4,

11

Milmoe Dep. Tr. at 97:17-24, "A: In the totality of the 1986 transactions, the intent and what we think we accomplished was to allocate the assets and liabilities of the separate businesses to the separate corporations which were then acquired by separate buyers who had no desire to have anything to do with each other going forward.")

In fact, Congoleum witnesses affirmatively testified about, and Congoleum counsel affirmatively elicited testimony about, the "intent" of *two* final agreements, including the 1986 transactions and its own 2006 bankruptcy settlement agreements. For example, Congoleum's former Chief Financial Officer, and corporate designee, Howard Feist, testified in both his personal and corporate representative capacity about the intent of both the 1986 transactional documents as well as the intent of the 2006 Congoleum bankruptcy settlement agreements (while making clear that Congoleum's outside attorneys were intimately involved those settlements), during his depositions at least sixteen times. For example:

- 1986 transactional documents: "Q: as you sit here today, do you have an understanding that the **intent**, the **intent** at the time as it relates to liabilities for those four units, if any? . . . A. There would -- I mean there would have been a very specific understanding in that there were assets and liabilities transferred from an accounting standpoint from the parent company down to the subsidiary company.") (Marra Decl. Ex. 8, Feist Dep. Tr. at 25:8-21, emphasis added);

- 2006 settlement agreements: "A: Yeah. I mean, like I said, I signed the settlement agreement that -- I can tell you what the **intent** was . . . I understand the words of the settlement agreement too…" (Marra Decl. Ex. 9, Congoleum 30(b)(6) Dep. Tr. of Feist at 115:8, emphasis added).

While allowing Mr. Feist to be questioned about the intent of the 2006 settlement agreements, Congoleum was withholding documents concerning the negotiations for that settlement agreement (including drafts, etc.) on the basis of attorney-client privilege. Congoleum's privilege log also demonstrates that it is withholding numerous 2006 negotiation documents that relate to Congoleum's environmental liabilities (the key issue in the present litigation) on the basis of

attorney-client privilege.  (*See* Marra Decl., Ex. 10, Congoleum Privilege Log.)  For example, Congoleum is withholding Entry 2056, a July 25, 2006 email from its outside counsel to Mr. Feist with the subject line: "Re: Excess coverage and environmental exposures."  (*Id.*)  This document is clearly relevant to key issues of this litigation, namely, which corporate entity is liable for environmental contamination at Congoleum's former Kearny property, and Congoleum's representations to the bankruptcy court that it, not BIW, was responsible.  (*See id.*)  Yet, Congoleum maintains privilege over this document (and others like it) after having told this Court that it is proper to elicit testimony concerning the "intent" and "context" of the 2006 settlement agreements.  Congoleum cannot have it both ways.[5]

In addition, counsel for Congoleum <u>elicited</u> affirmative deposition testimony regarding the intent of the 1986 transactions from witnesses on its own side of 1986 transaction.  As referenced above, Congoleum noticed and elicited testimony from both Messrs. Irwin and Bramson regarding intent concerning environmental liabilities and the 1986 transactions:[6]

- "Q: Is it fair then to say if your **intent** and understanding was that you were not going to sell the environmental liability then there would be no need to do environmental due diligence [sic] on those sites?" (Marra Decl., Ex. 6, Irwin Dep. Tr. at 26:4-9, emphasis added);

- "Q: [D]id Hillside have any **intention** of assuming environmental liabilities for properties other than the ones it was acquiring?" (Marra Decl., Ex. 7, Bramson Dep. Tr. at 31:10-16, emphasis added).

---

[5] In the same vein, there is nothing unfair about BIW withholding the documents on Skadden's and its privilege log.  As the Court might recall, a similar issue was the basis for BIW's prior motion to compel filed after Congoleum refused to produce relevant documents after telling this Court that discovery of their "context" was "required."  (Dkt. No. 145.)

[6] Congoleum even noticed the deposition of a witness on its own side of the 1986 transactions, Mr. Irwin, prior to BIW noticing Mr. Milmoe, to testify about the 1986 transactions.

Thus, Congoleum has elicited this affirmative testimony concerning "intent" from its *own side* of the 1986 transactions.  (Dkt. No. 147 at 5.)  Nonetheless, when BIW followed suit and questioned a witness regarding intent and business purpose of the 1986 transactions, Congoleum claims BIW waived privilege.  Fairness is not on Congoleum's side.

<u>Fourth</u>, to combat Congoleum's use of intent testimony, BIW had little choice outside of Mr. Milmoe.  As Congoleum states, "[m]ost of the critical witnesses involved in these transactions are no longer alive."  (Motion at 17.)  Indeed, while Congoleum had access to Messrs. Bramson and Irwin (and deposed them), BIW could not call the principal business negotiators of the 1986 transactions from the CII side, as they are deceased. Thus, to demonstrate the "intent" and the "business purpose" of the contracts, BIW *and* Congoleum noticed and deposed Mr. Milmoe – one of the only witnesses alive and available to testify about the "intent" and "business purpose" of the 1986 transactions.

And <u>fifth</u>, and rather surprisingly given Congoleum's strident position about waiver, during the deposition of Mr. Bramson, counsel for Congoleum elicited testimony about conversations Mr. Bramson had *<u>with its outside deal counsel</u>*, Mr. Griffin:

- "Q: And have you spoken to David Griffin regarding this lawsuit?"  (Marra Decl., Ex. 7, Bramson Dep. Tr. at 11:2-3);

-  "Q: And what did Mr. Griffin tell you?"  (*Id.* at 11:17).

While Congoleum claims that "[i]t is impossible to separate Mr. Milmoe's understanding of the intent, his client's understanding of the intent, and the attorney-client communications or advice regarding that same intent," it attempts to gain the same information from its client side of the transaction.  (*See* Motion at 12.)  Again, Congoleum cannot have it both ways.

Accordingly, there is nothing unfair about the withholding of a limited set of privileged attorney-client communications on the BIW side.  Skadden is withholding less than 5% of the

responsive Skadden documents and, in addition, the recent communications between Mr. Milmoe and attorneys at Skadden and/or Jenner & Block are minimal, not responsive to discovery requests, and, again, to the extent they contain anything substantive, such information is privileged and covered by the work product doctrine.  For all of the reasons demonstrated above, this is not one of those extreme circumstances where a finding of waiver is appropriate.  *See George Inc.*, 182 F.R.D. at 138.  However, if the Court were to rule that BIW has put "at issue" all communications at any time about the intent of the 1986 transactions, then it should in fairness rule that Congoleum has also put all such communications (including those involving any litigation counsel) concerning the 1986 transactions "at issue," as well as those relating to Congoleum's 2006 settlement agreement.

**B.   There Was No Testimony Regarding Attorney Advice, Thus No Privilege Waiver.**

Notwithstanding that the fairness analysis should prevent a finding of waiver, there was no waiver of privileged information in the first place.  Congoleum is correct that the Court need "look no further than . . . the deposition transcript itself."  (*See* Motion at 11.)  As the transcript makes clear, no waiver occurred.

First, if a party neither discloses nor describes their attorney-client advice, there is no "at issue" waiver.  *See EMC Ins. Co. v. Zicolello*, 2014 WL 123687, at *5-6 (M.D. Pa. Jan. 14, 2014).  Mr. Milmoe's testimony, throughout the entirety of the deposition, does not reveal any "advice" from lawyer to client; rather, it demonstrates the witness testifying about factual (and non-privileged) information.  For example:

- "Q: So what, if anything, did you do to accomplish the **business purpose** you just described?  A: A very early step was to separate the businesses that were in divisional or corporate solution into separate subsidiaries."  (Marra Decl., Ex. 4, Milmoe Dep. Tr. at 20:6-12, emphasis added);

- "Q: What was the **business purpose** in doing that?  A: To have the businesses separate, so that prospective purchasers could buy a single business without involvement with any of the other businesses." (*Id*. at 20:22-21:3, emphasis added);

- "Q: Generally, can you describe to us the **business purpose** of this agreement?  A: Yes. The buyer was acquiring the floor tiling business, now known as Congoleum." (*Id*. at 66:15-20, emphasis added.)

BIW does not rely – nor has it ever asserted that it will rely – on any advice from Mr. Milmoe to his former client, CII, for any of BIW's claims and/or defenses.  The Third Circuit has held that even though an attorney's advice might be *relevant* to the matters in issue, when the advice of counsel is not an *essential* element of a claim in a case, there is no waiver.  *Rhone-Poulenc*, 32 F.3d at 865 (finding no waiver of attorney-client privilege).  The deposition transcript makes clear that BIW *does not* rely upon any advice Mr. Milmoe gave to his client for any of its claims or defenses.

Thus, the case law that Congoleum relies upon to make this argument is inapplicable.  (*See* Motion at 12-15 citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995) (finding waiver where the plaintiff stipulated to waiving privilege and where "reliance on the advice of counsel . . . [was raised] as an affirmative defense to the [] claims."); *In re G-I Holdings Inc.*, 218 F.R.D. 428, 433 (D.N.J. 2003) (finding that the Debtors waived any previously asserted privilege by voluntarily placing the advice of their counsel at issue after raising "reliance on counsel" as a defense.)[7]

---

[7] Congoleum also relied upon *Praxair, Inc. v. ATMI, Inc*., 445 F. Supp. 2d 473, 480 (D. Del. 2006), for the proposition: "For the purpose of waiver, a difference exists between testifying that a conversation occurred and testifying as to the substance of the conversation. In the first instance, privilege is not waived; in the second, it is."  However, the *Praxair* court further explains that the privilege was waived because the attorney "testified as to the substance of a conversation as opposed to merely the existence of the conversation." *Id*.  Again, Mr. Milmoe did not testify as to the substance of any conversation.

Even if Mr. Milmoe's advice was the subject of BIW's deposition questions (which it was not), because that advice is not an essential element of a claim, there is no waiver.  *See, e.g, In re AT & T Access Charge Litig.*, 451 F. Supp. 2d 651, 656 (D.N.J. 2006) (holding that where the defendant was not claiming that he relied on advice of counsel, the advice of counsel was not placed at issue); *Astrazeneca LP v. Breath Limited*, 2010 WL 11428457, at *6 (D.N.J. Aug., 26, 2010) (declining to find an implied waiver when a party has not asserted that it relied upon the advice of counsel as an "essential element" of its defense); *NJ Manuf. Ins. Co. v. Brady*, No. 3:15-CV-02236, 2017 WL 264457, at *12 (M.D. Pa. Jan. 20, 2017) (holding the party did not waive because the testifying attorney did not divulge the content of confidential communications nor did the party attempt to prove a claim or defense by disclosing or describing an attorney-client communication).  Congoleum points to no deposition testimony that reveals advice that Mr. Milmoe gave his client.  In fact, there is no testimony about privileged advice or the substance of privileged communications.  (*See generally* Milmoe Dep. Tr.)

Congoleum states that the "testimony certainly was not 'unambiguously limited' to his own personal intent and interpretation."  (Motion at 15.)  This is also belied by the transcript.  Mr. Milmoe's testimony was clearly focused on the facts underlying the 1986 transactions, the overall business purpose of the transactions, and his personal intent and word choices.  (*See, e.g.,* Milmoe Dep. Tr. at 33:2-6: "Q: What was the intent of using those words in this document?  A: "To describe the business that was being conveyed, the floor tile business, Resilient Floor business."; *id*. at 66:15-20: "Q: Generally, can you describe to us the **business purpose** of this agreement?  A: Yes. The buyer was acquiring the floor tiling business, now known as Congoleum." (emphasis added).)  Again, because there was *no* testimony regarding attorney advice (and because an attorney's advice is not an essential element of a claim or defense), no waiver occurred.

**C.  Testifying About Facts Does Not Waive Privilege.**

Congoleum fails to recognize that an attorney can testify about aspects of a deal without waiving privilege.  (*See* Motion at 12, citing *Aysseh v. Lawn*, 186 N.J. Super. 218, 230-32 (1982).) As the court in *In re Human Tissue Products Liability Litigation* (a case Congoleum relies upon) explained, testimony and/or communications regarding business advice, rather than legal advice, are not protected.  255 F.R.D. 151, 160 (D.N.J. 2008) (in a case about a business obtaining proper consent forms from clients, the court determined that the retained counsel was not providing legal advice; rather it was retained solely for the investigation of facts, and thus, the advice was "purely business [] advice" and not protected).  *See, e.g., Jurgensen v. Rolex Watch U.S.A., Inc*., No. CIV.A. 85-5605, 1989 WL 6210, at *3 (E.D. Pa. Jan. 19, 1989) (finding that no waiver of privilege occurred, even after noting that the plaintiff had made intent of the contract an issue in the litigation, explaining that "if we were to find waiver of attorney-client privilege whenever intent was at issue in a case, we would radically limit the scope of the privilege."); *Blattman v. Siebel*, No. CV 15-530-GMS, 2017 WL 5953303, at *1 (D. Del. Dec. 1, 2017) (in a case alleging breach of contract, *inter alia*, the court held that the designation of its outside counsel "to testify regarding the *non-privileged* communications does not constitute a waiver of privileged communications . . . An attorney may testify as a percipient witness about *non-privileged* facts without any waiver occurring." (Emphasis in original)); *In re MIG, Inc*., No. 09-12118 KG, 2009 WL 8662897, at *2 (Bankr. D. Del. Dec. 18, 2009) ("[I]f a lawyer testifies as to facts within her personal knowledge, there is no waiver of privilege.").[8]

---

[8] Other federal courts also hold that attorneys may testify about facts without waiving privilege. *See, e.g., Ritchie Risk-Linked Strats. Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010) (in a breach of contract case, holding "defendants did not—and, indeed, could not—waive their attorney-client privilege by having one of their attorneys testify at deposition about non-privileged communications, or by summarizing in 'conclusory and

Mr. Milmoe did not testify about privileged communications nor did he testify about legal advice.  Mr. Milmoe testified about the intent and business purpose of the 1986 transactions and transactional documents, which does not waive privilege and which is why BIW did not object to those questions.  *See In re Human Tissue*, 255 F.R.D. at 160. *See also Wachtel v. Guardian Life Ins. Co.*, No. 01-4183, 2006 WL 1286188, at *1 n.1 (D.N.J. May 8, 2006) (quoting *Upjohn*, 449 U.S. at 395 ("[t]he privilege only protects disclosure of communications; it does not protect disclosure of underlying facts by those who communicated with the attorney").

Despite Congoleum's heavy reliance on *Aysseh* for the proposition that an attorney's testimony would be so "inextricably connected to privileged communications that such testimony would constitute a waiver of the attorney-client privilege" (Motion at 14-15 (citing 186 N.J. Super at 228)), federal courts, including the courts in this circuit, hold that attorneys may testify about facts – because facts are not privileged – without waiving privilege.[9]  *See, e.g., In re Human Tissue*, 255 F.R.D. at 160; *Jurgensen*, 1989 WL 6210, at *3; *Blattman*, 2017 WL 5953303, at *1; *In re MIG*, 2009 WL 8662897, at *2.  For instance, the *IMC Chems., Inc. v. Niro Inc* court, which Congoleum relies upon, explicitly stated: "If such knowledge came through non-privileged communications, then [the attorney] could freely testify to the intent of plaintiff without fear of

---

unrevealing terms' certain advice or impressions of their counsel" and finding that defendants did not "waive privilege by placing the advice of their counsel 'at issue,' since they do not purport to rely on any such privileged communications."); *cf. In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (holding that "a party must *rely* on privileged advice from his counsel to make his claim or defense" to place that advice at issue in the litigation (emphasis in original)).

[9] In addition, Congoleum places undue reliance on *Aysseh*. (*See* Motion at 13-15.)  First, *Aysseh* is not controlling law.  Second, everything Congoleum cites in *Aysseh* is dicta, as the case was decided on other grounds.  Finally, the case is distinguishable in several respects, including that the parties were in an adversarial proceeding regarding a contested mortgage foreclosure and a contested modification to that mortgage and, when the attorney was deposed, the defending party objected to relevant questions on the basis of attorney-client privilege throughout.  *Id*. at 221.  Here, the 1986 transactions were not adversarial.  Further, as previously explained, BIW did not object to relevant, non-privileged questions on the basis of privilege.

waiver." 2000 WL 1466495, at *12 n.3 (D. Kan. July 19, 2000). Unlike *IMC*, where the attorney testified about changes to a contract that he had suggested to his client (and the intent behind those suggested changes), Mr. Milmoe did not testify about suggestions for and/or changes to the transactional documents. *See id.* at *3. Instead, Mr. Milmoe only testified as to the intent and business purpose of the final documents – all of which is non-privileged information. *See id*. Accordingly, BIW did not place privileged material "at issue."

Notwithstanding that an attorney testifying about facts – and not legal advice – does not waive privilege, testifying about intent of a contract is also permitted. As the Third Circuit has explained, "[i]n construing a contract, a court's paramount consideration is the intent of the parties . . . English is often a difficult and elusive language, and certainly not uniform among all who use it. External indicia of the parties' intent other than written words are useful, and probably indispensable, in interpreting contract terms." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009-10 (3d Cir. 1980). Mr. Milmoe testified about the business purpose and/or the intent, as the drafter, of the 1986 transactional documents. A representative exchange, and one cited by Congoleum as BIW putting privileged "advice" at issue states as follows: "Q: What was the **intent** of that sentence in [the April 18, 1986 Instrument of Assignment and Assumption between 1984 Congoleum and Resilco, Inc.]? A: To vest in the newly-created subsidiary all of the assets used in the business of Congoleum. Q: And so what assets were vested in the subsidiary? A: Anything and everything that was there in connection with this part of the transaction." (Marra Decl., Ex. 4, Milmoe Dep. Tr. at 30:10-31:17, emphasis added.) This exchange does not demonstrate privileged material; rather it demonstrates a witness to a deal testifying about the purpose and intent of that deal, which is permitted. In addition, and as previously explained, Congoleum also elicited testimony about the intent of the same transactional documents from

several witnesses, including Mr. Milmoe.  This testimony is, again, not advice, and thus not privileged and no waiver occurred.

## II.   No Waiver Occurred, Thus A Full Subject Matter Waiver Is Not Appropriate.

Notwithstanding the above – that no waiver of privileged material occurred during Mr. Milmoe's deposition – the Court can quickly dispose of Congoleum's second request, for a full subject matter waiver, for the following reasons.

First, as previously mentioned, BIW elicited such testimony regarding intent and context only after Congoleum made assertions to the Court that it believes the parties can do so without waiving privilege.   If Congoleum is allowed to elicit such testimony – while withholding communications with its attorneys about the intent of the deals – then BIW, in fairness, must be allowed to do the same.

Second, Congoleum's reliance on the sword and shield doctrine is misplaced, and the cases that it relies upon are clearly distinguishable.  For instance, in *V. Mane Fils S.A. v. Int'l Flavors & Fragrances, Inc*., the party disclosed a written *communication* from attorneys which analyzed United States law and explicitly provided a legal opinion on the issue.  249 F.R.D. 152, 154–55 (D.N.J. 2008).  As previously explained, Mr. Milmoe did not disclose the contents of any attorney-client communications during his deposition nor was any privileged information elicited during the deposition.  While BIW maintains privilege over the limited set of documents, it has not once relied upon those documents or used those documents to its advantage.  For instance, BIW has not put forth any arguments or assertions which involve privileged information.  In addition, and as previously explained, Congoleum fully and fairly questioned Mr. Milmoe on the same topics.  BIW did not object to any of Congoleum's questions regarding intent of the 1986 transactions and

21

transactional documents.[10] And finally, if waiver applies to BIW under these circumstances, it should equally apply to Congoleum, for the reasons already stated.

Third, and a point Congoleum underscores, the waiver must be "intentional." Fed. R. Evid. 502(a). (*See* Motion at 18-20.) Even if BIW waived privileged (and it did not), it certainly did not do so intentionally. In fact, BIW intentionally tried to *not* waive privilege by properly objecting during the deposition on the few instances necessary. (Marra Decl., Ex. 4, Milmoe Dep. Tr. at 112:15-114:7; 137:16-138:23.) During BIW's deposition of Mr. Milmoe, BIW did not once inquire about attorney-client communications between Mr. Milmoe and his former client and/or any other privileged information. Nothing that BIW has said or done demonstrates an intentional act to waive privilege as required by Rule 502(a). Again, if BIW's questions regarding intent of the deal demonstrate an intentional act to waive privilege (which BIW confirms it does not), then Congoleum's questions to Messrs. Feist, Bramson, and Irwin did the same.

Finally, and contrary to Congoleum's assertions, BIW has never attempted to limit the scope of this alleged waiver (as it has never agreed there was a waiver). When Congoleum first raised this issue, BIW offered to "produce" every requested document to ease Congoleum's fears (without agreeing that there was a waiver or that another deposition of Mr. Milmoe was justified without additional good cause shown from those additional documents) and to avoid unnecessary motion practice. (*See* Marra Decl., Ex. 2, October 23, 2019 Email from W. Thomson to K. Weber.) Congoleum declined the offer and enlarged its request. (*See* Marra Decl., Ex. 3, October 24, 2019 Email from K. Weber to W. Thomson; Dkt. No. 154 at 3-5.) However, even if the Court were to determine that there was some intent to waive (which there was not), any waiver should be limited

---

[10] Likewise, BIW is not using any documents that have not been produced or are not publicly available to support its claims and/or defenses in this action, therefore BIW did not wield any "sword."

to the communications at the time of the 1986 transactions (which were already offered to Congoleum), because those are the specific communications at issue for Congoleum's "conceivable" theory that it needs to be able to test Mr. Milmoe's veracity concerning his intent at that time of the 1986 transactions. *See Emmanouil v. Roggio*, No. CIV.06-CV-01068(GEB), 2009 WL 961275, at *3 (D.N.J. Apr. 7, 2009) ("even in instances where a client has waived the attorney-client privilege, the waiver is limited to the specific communications and disclosure at issue in the claim or defense.")

## CONCLUSION

*Both* parties asked a non-party witness, Mr. Milmoe, about the intent of the 1986 transactions.  BIW never objected once on the basis of attorney-client privilege when Congoleum asked questions about intent, so Congoleum fairly obtained Mr. Milmoe's testimony on that topic. To resolve further disputes about waiver, BIW offered to produce to Congoleum *all* the contemporaneous withheld documents concerning the 1986 transactions.  *Both* parties also asked *Congoleum's* deal makers about the intent of the 1986 transactions.  There is no unfairness here other than the claim that a non-party, highly respected attorney lied under oath for no reason, which was Congoleum's purported basis for seeking the withheld documents (which have been repeatedly offered to Congoleum in an effort to reasonably resolve this dispute).

Accordingly, BIW respectfully requests that this Court deny Congoleum's Motion.

Dated: January 31, 2020                          /s/ Ralph J. Marra
                                                 Ralph J. Marra
                                                 Thomas R. Calcagni
                                                 Eric T. Kanefsky
                                                 CALCAGNI & KANEFSKY, LLC
                                                 1085 Raymond Blvd., 14th Floor
                                                 Newark, NJ 07102
                                                 (862) 397-1796
                                                 rmarra@ck-litigation.com

23

Michael A. Doornweerd (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Defendant*
*Bath Iron Works Corporatio*n