Ralph J. Marra
Thomas R. Calcagni
Eric T. Kanefsky
CALCAGNI & KANEFSKY, LLC
1085 Raymond Blvd.
14th Floor
Newark, NJ 07102

Michael A. Doornweerd (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484

*Attorneys for Defendant*
*Bath Iron Works Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| DVL, INC. and DVL KEARNY HOLDINGS, LLC, | : | Civil Action No. 17-4261 (KM) (JBC) |
| | : | |
| | : | **DECLARATION OF RALPH J.** |
| Plaintiffs, | : | **MARRA IN SUPPORT OF BATH** |
| | : | **IRON WORKS CORPORATION'S** |
| v. | : | **MOTION FOR LEAVE TO FILE** |
| | : | **MOTION TO STRIKE EXPERT** |
| CONGOLEUM CORPORATION and | : | **AND EXTEND TIME TO** |
| BATH IRON WORKS CORPORATION, | : | **RESPOND PENDING OUTCOME** |
| | : | **OF MOTION TO STRIKE** |
| Defendants. | : | |
| | : | |

RALPH J. MARRA, of full age, hereby declares as follows:

1.     I am an attorney-at-law of the State of New Jersey and senior counsel in the firm

of Calcagni & Kanefsky, LLP.  Our firm is counsel of record for Defendant Bath Iron Works

Corporation ("BIW") in the above-captioned matter.

2.      I submit this declaration in support of BIW's Motion For Leave to File Motion to Strike Congoleum Corporation's ("Congoleum") Expert David Bronner and to Extend Time to Respond Pending Outcome of Motion to Strike.

3.      Attached hereto as Exhibit 1 is a true copy of a Congoleum's Expert Report of David Bronner, dated February 24, 2020.

4.      Attached hereto as Exhibit 2 is a true and correct copy of a trial transcript excerpt from *United States v. Collin*s (Collins Trial 1), No. 07 CR 1170 (S.D.N.Y.), dated June 16, 2009.

5.      Attached hereto as Exhibit 3 is a true and correct copy of a trial transcript excerpt from *United States v. Collins* (Collins Trial 2), No. 07 CR 1170, Dkt. No. 218 (S.D.N.Y. November 5, 2012).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.


                                        */s/ Ralph J. Marra*
                                        RALPH J. MARRA

Dated: April 3, 2020

2

# EXHIBIT 1

Case 2:17-cv-04261-KM-JBC   Document 174-1   Filed 04/03/20   Page 27 of 62 PageID: 7319

# EXHIBIT 2

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           07 CR 1170

5    JOSEPH P. COLLINS,

6                   Defendant.

7    ------------------------------x

8
                                           June 16, 2009
9                                          9:30 a.m.

10
     Before:
11
                      HON. ROBERT P. PATTERSON,
12
                                           District Judge
13

14                            APPEARANCES

15   LEV L. DASSIN
          Acting United States Attorney for the
16        Southern District of New York
     BY:  CHRISTOPHER GARCIA
17        NICHOLAS S. GOLDIN
          Assistant United States Attorneys
18
     COOLEY GODWARD KRONISH LLP
19        Attorneys for Defendant
     BY:  WILLIAM J. SCHWARTZ
20        JONATHAN P. BACH
          DANIEL M. HIBSHOOSH
21        REED A. SMITH

22

23

24

25
```

```
1              (Trial resumed)

2              (In open court; jury not present).

3        THE COURT:  I have considered the papers on what was

4    said yesterday and the papers on the issue of the expert

5    witness that the defense wants to call.

6              In the first place, it seems to me from my reading of

7    the record that Judge Sand stated that he was disinclined to

8    permit the expert testimony, but my review confirms that

9    conclusion.

10             The government has indicated that it is not going to

11   argue that Mr. Collins deviated from general practices of

12   corporate transactional lawyers, and the subject of the

13   expert's proposed testimony does not appear to me to be really

14   relevant to the critical issues in this case; and the charge of

15   the Court that is being proposed covers those issues, which

16   pertain to the role of attorneys in a case such as this.

17             It seems to me that the offering of such testimony is

18   apt to confuse the jury as to what the issues in the case are

19   and confuse the issues and may mislead them as to what the

20   issues are.  Under those circumstances, I am going to rule

21   under 403 that the testimony should be excluded.

22             I haven't got -- I guess I do have Rule 403.  I am not

23   used to the bench here.  I think, as Rule 403 says, evidence

24   may be excluded if its probative value is substantially

25   outweighed by the danger of unfair prejudice, confusion of the
```

3924

1    issues or misleading the jury, or by consideration of undue

2    delay and waste of time or needless presentation of cumulative

3    evidence.

4           I am ruling under the substantially outweighed by the

5    danger of unfair prejudice and confusion of issues or

6    misleading the jury and not on the second consideration.

7    Although it would take time, I did not take that into

8    consideration in my determination.

9           MR. SCHWARTZ:  Your Honor, I am not going to argue.  I

10   just ask that the letter that contained the expert notice that

11   the Court reviewed --

12          THE COURT:  Yes.  Let me make a record of those

13   documents that I reviewed.

14          MR. SCHWARTZ:  Yes.

15          Thank you very much, your Honor.

16          THE COURT:  The June 11, 2009 letter to Mr. Garcia and

17   Mr. Goldin from the Cooley firm, Mr. Koral; the government's

18   letter of May 8, 2009; the government's motion to exclude the

19   defendant's proffered expert testimony and motion to admit

20   testimony of certain government fact witnesses, that's dated

21   April 27; and defendant Joseph Collins' opposition to the

22   government's motion to exclude expert testimony dated May 15,

23   2009.

24          I think that covers the documents that were relevant

25   to the motion.  Am I correct?

```
 1              MR. GOLDIN:  From the government, yes.

 2              MR. SCHWARTZ:  I think so, your Honor.  Yes.

 3              THE COURT:  So I'm right, aren't I?  I couldn't hear

 4    the answer?

 5              MR. SCHWARTZ:  Yes.

 6              The important thing for us, your Honor, was that the

 7    last letter be made a part of the record, and I think your

 8    Honor just did that.

 9              THE COURT:  OK.

10              Is there anything else to take up?

11              MR. BACH:  Judge, a very minor point.  I think

12    yesterday the Court suggested to the jury that the trial would

13    end this week.  There is also a significant possibility that it

14    won't.

15              THE COURT:  All right.  We will deal with that today.

16              We will find out today, I hope, and I will take the

17    blame as being new on the job if it's going to go longer.

18              MR. BACH:  Thank you, Judge.

19              THE COURT:  All right.

20              MR. GARCIA:  Your Honor, the government handed to

21    Judge Sand's clerk a letter for the Court's consideration

22    relating to the role-of-attorneys instruction.  I just wanted

23    to make the Court aware that we submitted that.

24              THE COURT:  I haven't seen it.

25              MR. GARCIA:  I gave it to Mr. Chopra.
```

3026

```
 1                THE COURT:  Our chambers do not adjoin.

 2                THE LAW CLERK:  Judge, I believe this is it.

 3                THE COURT:  OK.  I will have to look at these, and

 4      I'll take them up in connection with the charge.

 5                MR. GARCIA:  Yes, your Honor.  That makes sense.

 6                THE COURT:  I hope to have a charge for you.  When do

 7      we think now?

 8                THE LAW CLERK:  Midday.

 9                THE COURT:  I went over Judge Sand's draft, and I have

10      made changes in it, not significant changes.  I think they were

11      just some things, articulation that I thought ought to be

12      clarified in some cases, but there's no real change in the

13      substance of the charge.  It is just a matter of making certain

14      things clear.

15                For instance, I didn't think that it was clear that

16      the overt acts have to be -- that the object of the conspiracy

17      found when you consider the first element had to be the same

18      object that the defendant participated in and that the overt

19      act had to be in furtherance of the same object that you found

20      with respect to the conspiracy and with respect to the

21      defendant's participation.

22                I think that has to be, at least it's my practice to

23      make that as clear as possible, because I think as drafted in

24      some other charges that I have seen that it is not as clear as

25      it should be.  That is the sort of change that I made in going
```

1    over it, but I am sure you will have requests and suggestions

2    all the same.  I just do it at more length than some judges do,

3    I think.  I have not ever been before any of the present judges

4    on the court.  It is a little hard to say.  But from what I

5    have seen of the charges, I think that's the case.

6          MR. SCHWARTZ:  Your Honor, with respect to the

7    charging conference, which I know the Court is intending to

8    have today, we received the draft fairly late last night, and I

9    am not sure we're going to have time to fully review it.

10         THE COURT:  Do you think that we could blackline any

11   part of the changes that I made?

12         MR. SCHWARTZ:  We have never seen --

13         THE COURT:  I have gone through the charge, but not

14   completely through the charge.

15         MR. SCHWARTZ:  We have never seen Judge Sand's draft

16   so the blackline --

17         THE COURT:  What you got was his draft basically.  I

18   made changes in the beginning because of the unique situation.

19   I couldn't say that I, for instance, observed the jury

20   throughout the trial and noted how diligent they have been in

21   performing their duties.  So I had to change language of that

22   sort and make it clear that it wasn't in the singular.  It had

23   to be adapted in those ways.

24         I did that earlier, but I only got partially through

25   the substantive charges, and I didn't give those to the clerks.

```
1    So you've got basically his draft.

2             MR. SCHWARTZ:  The only thing I am asking, your Honor,

3    is, given the fact that we have really not had time to review

4    it in detail, and I don't know about the government, whether it

5    makes sense to postpone the conference for a day to give us the

6    opportunity to review the charge so that we have substantive

7    comments about it.

8             THE COURT:  I would like to get your ideas.  I really

9    am open minded on charges because I know the lawyers think the

10   jury really follows the charge.  I am not sure they do, but

11   nevertheless I do think so, and I think it's particularly hard

12   when you have a charge as long as this to be assured that they

13   follow the charge.

14            MR. GARCIA:  Your Honor, for the government's part, we

15   are prepared whenever the Court is inclined to proceed.

16            THE COURT:  I really think we should have it tonight,

17   but I would like to hear your thoughts.  I don't know, I

18   haven't had you before me, but I have had Mr. Garcia in one

19   case and Mr. Goldin on another case, and I think they have sat

20   through longer charging conferences than they do in some other

21   courts.

22            MR. SCHWARTZ:  Your Honor, I appreciate the desire to

23   have our comments, and we would like to give them.  The only

24   question is, given the hour at which we received the draft

25   charge and given the fact that we are now all in court for the
```

```
 1    rest of the day, it may be hard for us to have substantive

 2    comments.

 3              THE COURT:  We are going to blackline what you

 4    received last night to assist you.  I have trouble with

 5    last-minute changes.

 6              I have one problem, and that is that my wife has

 7    Alzheimer's and I am the night nurse; so I can't say here until

 8    10:00, 11:00 at night because I don't have people to take care

 9    of her on a regular basis.  So I have to think of their

10    schedule as well as your schedules.

11              If we do it Tuesday, and maybe we will have to have

12    another charging conference, I don't know, but I hope to

13    incorporate whatever changes that are correct that you request.

14              Anything else to take up?

15              MR. GARCIA:  Nothing from the government, your Honor.

16              THE COURT:  I see Mr. Greenfield is in the back of the

17    courtroom.  I think he had to sit through -- I don't know that

18    he had to sit through a long charging conference.

19              MR. GREENFIELD:  I was there with Mr. Garcia.

20              THE COURT:  That's right.  You were on the other side

21    from Mr. Garcia.

22              MR. GARCIA:  Hello, Mr. Greenfield.

23              THE COURT:  All right.

24              (Recess)

25              MR. GARCIA:  Your Honor?
```

```
 1              THE COURT:  Yes.

 2              MR. GARCIA:  The government was asked to hand up a

 3    letter to you from the Wilmer Hale firm.  The second witness

 4    the government is going to call this morning, his name is

 5    George Stephanakis, he is a lawyer and partner with the law

 6    firm of Cravath Swain & Moore.  As the letter that I handed up

 7    indicates, he was a lawyer affiliated with banks that were part

 8    of an underwriting syndicate in connection with offerings by

 9    Refco.

10              Ms. Martin, Ms. Laurie Martin, a partner at the Wilmer

11    Hale firm, who is standing there dressed in white, is present

12    today to assert the privilege if necessary.

13              The government fully anticipates that we will not even

14    approach anything of the nature of privileged communications on

15    direct examination, and I don't imagine that they will come up

16    on cross.  But in the event that such privilege needs to be

17    asserted, Ms. Martin wanted to make her presence known.

18              MS. MARTIN:  Thank you.

19              THE COURT:  All right.  Thank you.

20              Bring in the jury.

21           (Jury present)

22        (Continued on next page)

23     EARL MELAMED, resumed.

24

25
```

# EXHIBIT 3

CB5PCOL1                          Trial

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                           07 Cr. 1170 (LAP)

 5    JOSEPH P. COLLINS,

 6              Defendant.

 7    ------------------------------x
                                            November 5, 2012
 8                                          10:03 a.m.
      Before:
 9
                    HON. LORETTA A. PRESKA,
10
                                            District Judge
11
                         APPEARANCES
12
      PREET BHARARA
13         United States Attorney for the
           Southern District of New York
14    BY:  HARRY A. CHERNOFF
           MICHAEL A. LEVY
15         EDWARD A. IMPERATORE
              Assistant United States Attorneys
16
      COOLEY LLP
17         Attorneys for Defendant
      BY:  WILLIAM SCHWARTZ
18         JONATHAN BACH
           LAUREN GERBER LEE
19
              - also present -
20
      Robert Clark,
21         Postal Inspectors, U.S. Postal Inspection Service

22    Gary Smith,
           Paralegal, U.S. Attorney's Office
23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     materiality.  As we went forward, the testimony that was

2     permitted was testimony from, as Mr. Levy said, the buyer, as

3     to what was important to a buyer.  And although I think I

4     recall that Mr. Schoen might be a lawyer, he wasn't testifying

5     as such.  He was testifying as the head business guy for the

6     buyer.

7              The other pieces of testimony that might be considered

8     to fall in this category were the individuals who testified

9     that they said to Mr. Collins that the PPA had to be disclosed.

10    Accordingly, neither side -- and I will note also that the

11    government asked to put in additional, what they said was lay

12    testimony, but to the same effect, that the PPA should have

13    been disclosed, that it was material and the like, and that

14    evidence did not come in.

15             At this point, in my view, such expert testimony would

16    be intruding into the jury's realm.  The question of whether or

17    not the PPA was important or material certainly is something

18    within the jurors' ken because they have Mr. Schoen's

19    testimony, and they will have the instructions on the law.  My

20    fear about expert testimony on this point is that it will be

21    essentially putting in an additional summation and will not be

22    helpful to the jury on this point.  These matters are not that

23    complicated, and the jury is certainly able to make its way

24    through these matters.

25             With respect to the other portions of testimony that

 1    were proffered on behalf of the defense by Mr. Bronner, again,

 2    these did not seem to me to be issues that were beyond the

 3    jury's ken.  And, moreover, I felt it would be unduly confusing

 4    to the jury and intrude into their sphere.  As pointed out

 5    earlier, the -- whether or not the PPA or something like it was

 6    important to the buyers is something that could have been

 7    cross-examined through Mr. Schoen.  The meaning of the contract

 8    is not so difficult.

 9            With respect to lawyers' practices, again, this is not

10    something that is beyond the jury.  The fact that multiple

11    lawyers in a law firm are working on multiple Refco matters is

12    something any juror can understand.  The fact that the billing

13    lawyer for the client might not read each and every line of

14    material is something easy to understand.  They don't need

15    another lawyer to tell them about it.

16            I also note that Mr. Bronner really isn't this kind of

17    lawyer.  He is a corporate lawyer, but I don't think he has an

18    expertise in private equity.  Also, much of the general

19    practice of lawyers is not at all controversial and, again,

20    it's something that's not really in dispute and we don't need

21    expert testimony about.

22            MR. SCHWARTZ:  Your Honor, just for the record, I will

23    say that Mr. Bronner is a mergers and acquisitions lawyer, who

24    I understand has had a great deal of experience in dealing with

25    transactions involving private equity.

1          THE COURT:  All right.  There were various other items

2    that were proffered in Mr. Bronner's testimony.  I can go

3    through them if you want, but I thought that the gist of the

4    proffer was materiality and practices in general with corporate

5    lawyers.  Is there anything else in particular you want to deal

6    with?

7          MR. SCHWARTZ:  Your Honor, I think the proffer speaks

8    for itself.

9          THE COURT:  All right.  To the extent that Mr. Bronner

10   was going to testify that outside transactional lawyers often

11   have only partial knowledge of the client's business

12   transactions, financial conditions and the like, seems to me we

13   don't need testimony about that because, at the end of the day,

14   the government has the burden of proving Mr. Collins'

15   knowledge.

16         To the extent Mr. Bronner was going to testify that an

17   outside transactional lawyer relies primarily on the client for

18   information about the client and the business, again, this is

19   not really relevant here.  The government has the burden of

20   proof, and the question is what information Mr. Collins did

21   receive, could have learned or could have intuited from the

22   individuals with whom he dealt.

23         To the extent that Mr. Bronner was going to testify

24   that an outside transactional lawyer does not investigate the

25   client unless specifically asked to, again, if we're talking

1    about a formal investigation, sure, but again, the government

2    has the burden of proof of what Mr. Collins knew or was privy

3    to.

4             To the extent that Mr. Bronner was going to testify

5    that an outside transactional lawyer would assume that audited

6    financial statements fairly represent the financial condition

7    of the company in all material respects is, first, not

8    particularly controversial, but, second, not particularly

9    relevant here because, again, government has the burden of

10   proving what Mr. Collins knew.

11            Similarly, to the extent that Mr. Bronner would have

12   testified that an outside transactional lawyer would not

13   necessarily receive copies of all documents executed by the

14   client in connection with the transaction, and first of all,

15   this is hardly the basis for scientific or expert testimony,

16   but again, the government has the burden of showing what

17   Mr. Collins did or did not receive.

18            To the extent Mr. Bronner would have testified that

19   the senior partner is not expected to have detailed knowledge

20   of all documents, communications and disclosures related to the

21   deal, again, this is irrelevant.  The government has the burden

22   of proof here.

23            To the extent Mr. Bronner would have testified that

24   individual members of a deal team may not have knowledge of all

25   elements of the deal or all deal documents, again, this is not

1  particularly subject to expert testimony.  The government has

2  the burden of proof, and perhaps more importantly here, there's

3  no dispute that Mr. Collins had knowledge of the PPA.

4         To the extent that Mr. Bronner was going to testify

5  that it was not unusual for a senior attorney, at a client's

6  request, to limit other attorneys access to certain information

7  about the client or the transaction, I'm not sure how that

8  lends itself to expert testimony.  And, here, it is undisputed

9  that the PPA was not disclosed to other members of the Mayer

10 Brown deal team.  The motive is what the issue is, and that

11 certainly is not subject to expert testimony.

12        MR. SCHWARTZ:  Your Honor, just --

13        THE COURT:  Mr. Schwartz?

14        MR. SCHWARTZ:  I'm not sure it's undisputed.  I think

15 Mr. Collins' testimony that we just heard was that he did not

16 remember.

17        THE COURT:  Okay.  Then there's no contrary evidence.

18        MR. SCHWARTZ:  There is evidence from Angela Lang,

19 that was an e-mail that referenced Mr. Collins, that said "I'll

20 call you about this issue."

21        THE COURT:  Right, and that's the one that caused the

22 reaction.

23        MR. SCHWARTZ:  Mr. Collins writes to Mr. Bennett, and

24 he also writes to Angela Lang.

25        THE COURT:  Yeah, "I'll call you when I get back from

1    the funeral."

2              MR. SCHWARTZ:  Yes.

3              THE COURT:  And he doesn't.  I don't think there was

4    testimony that he did.

5              MR. SCHWARTZ:  I don't think there's any testimony

6    that he didn't at all.

7              THE COURT:  No testimony that he did?

8              MR. SCHWARTZ:  There is no testimony that he did.

9    There is no testimony that he didn't.

10             THE COURT:  All right.

11             MR. SCHWARTZ:  There is an e-mail that says that he

12   will.

13             THE COURT:  Right.  But there's certainly a lot of

14   testimony to the effect that Mr. Collins instructed folks not

15   to tell the other side of the deal team about the PPA.

16             MR. SCHWARTZ:  There is testimony that Mr. Collins

17   asked Mr. Berger to not discuss the PPA with other members of

18   the Mayer Brown team, that is correct.

19             THE COURT:  Okay.  The other topics that I believe

20   Mr. Bronner was going to testify to, that lawyers representing

21   different parties interpret documents differently and might

22   have a different view of the legal effect of a particular

23   documents is obvious.  We don't need an expert to tell us that.

24             To the extent that he was going to tell us that

25   lawyers attempt to draft documents in a way favorable to their

1    clients, we don't need an expert to tell us that.  So on

2    balance, I do not believe we need expert testimony or that it

3    would be helpful to the jury, but more importantly, I believe

4    it would intrude into the fact-finding sphere of the jury, be

5    confusing, and amount to a second summation.  And, thus,

6    Mr. Bronner's testimony is precluded.

7             What else, gents?

8             MR. SCHWARTZ:  Your Honor, thank you for giving us the

9    time now.  The only thing, which maybe I should talk to the

10   government about and we can do it at another point, is just a

11   couple of record cleanup points before the record is closed.

12            THE COURT:  Okay.  You people work it out.  Whatever

13   it is, it is.

14            MR. CHERNOFF:  Your Honor, I'm just thinking about the

15   time, and I'm wondering if the voir dire of Miss Cassidy would

16   exceed even her direct examination.  I think it will.  If the

17   defense has other read backs that they'll be doing and

18   Miss Cassidy is the only remaining witness, the jury will be

19   going home early no matter what, it seems we should do the voir

20   dire after they leave.

21            THE COURT:  Is that all right?  How much of read back

22   do you have?

23            MR. SCHWARTZ:  We have two fairly short witnesses,

24   your Honor.

25            MR. CHERNOFF:  There's a live witness, your Honor.