

Ralph J. Marra, Jr., Senior Counsel
862.208.1819   rmarra@ck-litigation.com

March 10, 2021

**VIA ECF**

Honorable James B. Clark, III
United States Magistrate Judge
King Fed. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

    Re:    *DVL, Inc., et al. v. Congoleum Corporation, et al.*
             **Civil Action No. 2:17-cv-4261-KM-JBC**

Dear Magistrate Judge Clark:

Per your Letter Order (Dkt. No. 203), this joint letter sets forth the respective positions of Bath Iron Works Corporation ("BIW") and DVL Inc. and DVL Kearny Holdings LLC (collectively "DVL") regarding their Electronically Stored Information ("ESI") dispute.

**BIW's Initial Position**

BIW requests that the Court compel DVL to produce responsive documents from two limited word searches related to one of BIW's Requests for Production ("RFP").  This limited search hit on 356 documents within DVL's already-collected ESI.  BIW is <u>not</u> seeking more documents requests or depositions, nor is it requesting that DVL collect additional documents.  As explained below, BIW only just learned in December 2020 that this request was necessary.

BIW's position has always been that, pursuant to the Bankruptcy Court's 2010 Confirmation Order ("2010 Confirmation Order") in Congoleum Corporation's ("Congoleum") first bankruptcy proceeding (the "First Congoleum Bankruptcy"), BIW has no responsibility for the liabilities of the Congoleum Flooring Business, including the environmental liabilities stemming from Congoleum's former property in Kearny, New Jersey.  The 2010 Confirmation Order is a final order and binding on all parties to that bankruptcy, including known and unknown creditors (like DVL).  BIW made this position clear in its motion to dismiss. (Dkt. No. 24-1.)  In response, DVL argued that it was not a party to the First Congoleum Bankruptcy and, as such, res judicata was not appropriate. (Dkt. No. 32.)  In 2018, Judge McNulty did not decide what the 2010 Confirmation Order meant or who was bound by it, but denied the motion to dismiss after DVL and Congoleum argued that discovery was needed. (Dkt. 63.)

Two years later, Congoleum filed for bankruptcy again.  BIW filed an adversary proceeding in the Bankruptcy Court asserting, again, that the 2010 Confirmation Order means what it says and that all creditors who were noticed – either actually or via publication – are bound by that order.  Subsequently, Congoleum and BIW negotiated a settlement agreement but DVL objected, raising the new argument that it was not bound to the 2010 Confirmation Order because it did not have

ck-litigation.com   862.397.1796   862.902.5458

One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, NJ 07102
*Preferred Mailing Address*

85 Broad Street
Suite 17031
New York, NY 10004

notice.[1]  In response, at the December 30, 2020 settlement hearing, BIW questioned Alan Casnoff, DVL's President since 1993 and an attorney who lists "bankruptcy" as a practice on his law firm biography, if DVL was aware of Congoleum's bankruptcy during its seven-year bankruptcy proceedings.  (Ex. 1, Settlement Hearing Tr. at 60:6-22, 63:6-17.)  Mr. Casnoff testified DVL did not have any knowledge of the high-profile proceedings.  (*Id*.)  Yet, in 2001, DVL communicated to the NJDEP that Congoleum was the former owner of its property in Kearny and that this property was contaminated.  (*Id*. at 61:7-62:13; Ex. 2, Oct. 19, 2001 NJDEP MOU Letter.)  Ultimately, while the Bankruptcy Court in 2021 ruled that it was *not* making any ruling on the merits of arguments presented by any of the parties (including DVL), it held that it could not approve the settlement agreement between BIW and Congoleum.  (*In re Congoleum*, Case No. 20-18488 (MBK) (Bankr. D.N.J.), Dkt. No. 619.)

Thus, the issue of whether or not DVL had notice of the First Congoleum Bankruptcy (2003-2010) – either actually or by publication – will now be a key issue.  Either actual notice *or* publication notice would bind DVL to the 2010 Confirmation Order.  *See, e.g., In re Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983) (inquiry notice and actual notice is "notice of everything").[2]  Given that DVL was communicating to the NJDEP about Congoleum around the time of the First Congoleum Bankruptcy, it seems unlikely that DVL had no knowledge about the bankruptcy.  Accordingly, in February 2021, BIW requested that DVL conduct additional searches on its already-collected ESI using the search terms "Bankr*" and "chapter 11," for the years 2003-2010.  (Ex. 3, Feb. 18-19, 2021 Email to E. Blanc.)  These new searches are responsive to BIW's original RFP 25, requesting "any and all documents related to the [First] Congoleum Bankruptcy Proceedings."[3]  DVL confirmed that those searches hit on 356 documents within DVL's ESI that were *not* previously produced; yet DVL refuses to review them.  (*Id*., Feb. 24, 2021 Email from E. Blanc.)  The burden of reviewing these documents is minimal, but necessary, in light of DVL's new argument.

Courts have broad discretion to reopen discovery.  *See, e.g., Yarus v. Walgreen Co.*, No. CIV.A. 14-1656, 2015 WL 4041955, at *4 (E.D. Pa. July 1, 2015) (reopening discovery for limited purpose).  This Court has previously granted a party's motion to re-open fact discovery for a limited purpose.  *See Virginia St. Fidelco, L.L.C. v. Orbis Prod. Corp*., No. 2:11-CV-2057-KM-JBC, (D.N.J. May 30, 2017), ECF 171, at 5-6.  In determining whether to reopen, the Court analyzed (1) whether there was any prejudice to the opposing party, (2) whether the limited discovery would disrupt the order and efficiency of the proceedings, (3) whether there was bad faith or willfulness on behalf of the requesting party in failing to comply with the Court's scheduling orders, and (4) the importance of the evidence the party seeks.  *Id*. Those factors support

---

[1] While DVL opposed BIW's motion to dismiss in 2018 arguing that it was not a party to the First Congoleum Bankruptcy, it did not assert that (1) it did not receive notice of the relevant bankruptcy hearing; (2) publication notice was insufficient; or (3) that it had no knowledge of the bankruptcy.  These assertions were raised in December 2020, *well after fact discovery closed in this action*.

[2] While DVL asserts that this case is not binding, BIW's request here is not asking the court to decide a contested question of bankruptcy law, but rather to decide a discovery dispute, for which relevance is broad.

[3] RFP 25 was included in BIW's original RFPs to prove that a specific finding of fact within the 2010 Confirmation Order meant what it said; it was not included to prove that DVL knew or had notice of the bankruptcy.  This issue of notice became an issue in December 2020, **after** DVL raised it in response to the proposed settlement agreement.

Letter to Magistrate Judge Clark, Tuesday, March 10, 2021
Page 3 of 5

BIW's request. Reopening discovery for BIW's very limited purpose: (1) will not prejudice DVL, (2) will not disrupt the order or efficiency of the proceedings (as summary judgment is months away), (3) there is no bad faith as BIW only recently learned that actual notice would be a hotly-contested issue and diligently issued the limited search terms to DVL, and (4) any responsive documents in the 356 hits would be highly relevant to a defense that DVL recently made critical.

### **DVL's Position:**

BIW attempts to re-open discovery and require DVL to ingest and review documents, **which do not even mention Congoleum**, based on the illogical premise that those documents nonetheless might relate to the prior Congoleum Bankruptcy. BIW's request should be denied and discovery should not be re-opened, first and foremost because any bankruptcy notice received by DVL, or any other document in its possession relating to Congoleum's prior bankruptcy, undoubtedly would have identified Congoleum as the bankrupt debtor, and searches performed months ago during fact discovery confirmed that no such documents exist. Those prior searches are entirely consistent with Mr. Casnoff's testimony – which BIW baselessly tries to discredit – that DVL was unaware of Congoleum's bankruptcy during the seven years it was pending. At this late stage of the proceedings, DVL should not be required to interrupt its expert discovery work to indulge an untimely and meaningless fishing expedition by BIW, premised on unfounded credibility concerns, with zero chance of uncovering relevant documents.

Fact discovery commenced in April of 2018 and ended on September 29, 2019, nearly eighteen (18) months ago. *See* ECF No. 89. During discovery, the Parties agreed to and utilized search terms in regard to each Party's collected ESI in order to determine what ESI was to be reviewed. The Parties engaged in a laborious months-long search term process during which multiple iterations of terms were proposed, "hit" numbers to those terms were determined and exchanged, and terms were discussed and modified based on the hit results. On October 5, 2018, DVL came to an agreement with BIW regarding the search terms to be utilized. One of the search terms DVL agreed to utilize was the term "Congol*", meaning that any document containing a word that began "Congol" would be "hit" and therefore processed for review and potential production by DVL. This ensured any document which contained the name Congoleum – including any document mentioning Congoleum's prior bankruptcy - would have been included in DVL's ESI and reviewed for production.

On February 14, 2021, over sixteen months after the expiration of discovery, BIW requested DVL run an additional search for the term Bankrupt* and Congol* by erroneously speculating that DVL's response to RFP 25 "might be incomplete." *See* Wayne February 9, 2021 e-mail, Exhibit 3. DVL pointed out that because the word "Congol*" was an initial search term, any document containing BIW's proposed terms would have already been hit and reviewed. *See* E. Blanc 2/14/21 Email, Exhibit 3. DVL further confirmed that it utilized the proposed terms to confirm no documents responsive to RFP 25 were withheld. *Id.* Undeterred, BIW requested DVL run the term "Bankr*" alone, and then a day later also requested the term "chapter 11" be run. *See* Wayne February 18 and 19, 2021 e-mails, Exhibit 3. However, these terms alone, untethered to Congoleum and therefore unrelated to Congoleum's prior bankruptcy, could not possibly yield relevant documents. DVL accordingly did not, and does not, agree that it should be burdened with ingesting and reviewing the documents which "hit" on those terms.

First, forcing DVL to process and review the additional documents is completely unnecessary. BIW claims the documents are "highly relevant" and "responsive," but that is not so. While DVL has not reviewed the documents, what is clear is that **none of the documents includes the word Congoleum.** By contrast, every DVL ESI document including the word Congoleum was already ingested and reviewed, and BIW cannot seriously argue that documents which do not include the word Congoleum could conceivably relate to Congoleum's bankruptcy. DVL is not fighting this issue because there are documents that undermine its defense, as BIW suggests. It is fighting the issue to avoid the burden and expense of proving the exact opposite when there is no legitimate reason to suggest that further inquiry is warranted.

Second, BIW's request is untimely. Whether the prior bankruptcy order (the meaning of which remains in dispute) could be binding on DVL has been at issue in this matter since its early stages. *See e.g.,* ECF No. 32 at pp. 13-20. BIW has known since the beginning of this case that for the prior bankruptcy order to conceivably be binding on DVL, due process considerations must have been met. DVL's arguments at the recent bankruptcy hearing merely amplified what BIW knew, or should have known, from the outset. BIW is now scrambling to address the fact that the "publication notice" on which it relies was for a prior bankruptcy plan and confirmation hearing over two years before the final confirmation hearing in the First Congoleum Bankruptcy. *See* BIW Motion to Dismiss Appendix, ECF 24-2 at Exhibit 12.[4]

The need to seek discovery regarding the bankruptcy was always apparent to BIW. In fact, BIW specifically requested documents related to Congoleum's First Bankruptcy Proceedings. *See* BIW's description of BIW RFP 25, *supra.* BIW might now claim that the intent behind RFP 25 was limited, but the request itself was anything but and DVL responded accordingly. Regardless, BIW had sufficient opportunity during discovery to address any alleged issues. And if it had legitimate concerns that searching "Congol*" might have missed acronyms or misspellings, its team of e-discovery attorneys could have done something about it at the time. To the extent BIW now believes it failed to be more careful and specific, it has only itself to blame. BIW's admitted lack of diligence factors against re-opening discover. *See J.G. v. C.M.,* 2014 U.S. Dist. LEXIS 56143, *5 (D.N.J. 2014) (discussing four factors which can be considered by the Court). DVL should not be forced to pay the price of BIW's own perceived shortcomings.

Finally, DVL would be unnecessarily burdened by having to incur ESI processing costs followed by legal fees to review the documents which do not mention Congoleum. All at a time when DVL's resources should be committed to expert discovery and not to an exercise that, if appropriate at all, could have been addressed in the normal course over a year ago when fact discovery was still open.

In light of the above, the "importance of the evidence" factor and the "burden" and "prejudice" factors all weigh against re-opening discovery.

---

[4] DVL strongly disagrees that BIW's cited out of jurisdiction case somehow overrules applicable Third Circuit Caselaw directly contrary to the proposition stated in BIW's letter regarding inquiry notice. While not before the Court at this time, Third Circuit precedent makes clear that the failure to provide any notice to DVL of the confirmation hearing (whether direct or by publication), is fatal to BIW's arguments that the prior Confirmation Order can be binding on DVL. *In re Mansaray-Ruffin,* 530 F.3d 230, 239-240 (3d Cir. 2008); *In re Harbor Tank Storage Co.,* 385 F.2d 111, 114-116 (3d Cir. 1967).

There is ample case-law in this jurisdiction establishing that this Court can, and should, deny the motion to re-open discovery because of BIW's belated attempts to investigate issues that should have been investigated during fact discovery. *Sivovella v. AXA Equitable Life Ins. Co.,* 2015 U.S. Dist LEXIS 122604, *5-7 (D.N.J. 2015) (denying motion to re-open discovery where fact discovery had been concluded 16 months before motion and there was insufficient explanation why the discovery was not sought during the discovery period); *Dean v. Deptford Twp.,* 2015 U.S.Dist LEXIS 59633, *13-14 (D.N.J. 2015) (motion to re-open discovery affirmed where the issue was identified well before the close of discovery and should have been the subject of discovery within the discovery period.); *J.G. v. C.M.,* 2014 U.S. Dist. LEXIS 56143, *5 (D.N.J. 2014) ("where a party has had an adequate opportunity to investigate, prejudice requires something significantly more substantial than the discovery of some evidence that might be helpful.") (internal citations omitted).

For the foregoing reasons, DVL respectfully submits that BIW's request to re-open fact discovery should be denied.

**BIW's Reply:**

BIW clearly meets the test to reopen discovery for this very limited purpose. First, there is nothing unduly burdensome about reviewing 356 hits – indeed DVL could have already done so much more efficiently than fighting this request. The fact that DVL is fighting so fervently suggests that there are documents that undermine its defense within the 356 hits. Second, reviewing 356 hits would not at all prejudice DVL: expert discovery is open for another four months and only one expert deposition has been scheduled thus far – and not until June 23. DVL's prejudice argument does not pass the straight face test. Third, despite DVL's assertion that its prior search terms "ensured" that all responsive documents would have been produced, it is more than conceivable— it is likely—that the terms used missed responsive documents. For example, "Congoleum" could have been misspelled, or referred to by an acronym or short-hand (like "CC" or "Cong"), or not been referred to by name in communications about its bankruptcy. Fourth, the cases cited by DVL are not at all analogous. Fifth, DVL criticizes BIW for not surmising in 2018 DVL's 2020 arguments about notice, but DVL does not and cannot show BIW engaged in any "bad faith" or "willfulness" that would defeat BIW's request. Sixth, as a practical matter, BIW could make this same request in a separate, but related proceeding where fact discovery is still open, so DVL is standing on ceremony. At the end of the day, DVL is fighting over reviewing 356 ESI hits in a case where over 1 million pages have produced, and while the parties are months away from summary judgment – this is a form over substance position. BIW respectfully requests that DVL be ordered to produce responsive documents from the 356 hits.

Respectfully submitted,

/s/ Ralph J. Marra                                   /s/ Anthony R. Twardowski
Ralph J. Marra                                       Anthony R. Twardowski
Eric T. Kanefsky                                     Eitan D. Blanc
Calcagni & Kanefsky LLP                              Zarwin Baum
*Counsel for BIW*                                    *Counsel for DVL*